No. # 25-5513

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

JANE DOE,
*Plaintiff-Appellant,*

v.

JOHN ROE ; XYZ, LLC ;
*Defendants-Appellees.*

_____

On Appeal from the United States District Court
For the Middle District of Tennessee
No. 3:25-cv-00249-RJJ

_____

**BRIEF OF APPELLANT JANE DOE**

_____

WADDEY ACHESON LLC

Chanelle R. Acheson
W. David Bridgers
G. Edward Powell III
Waddey Acheson LLC
1030 16th Avenue South
Nashville, TN 37205
Telephone: (615) 839-1100
*Counsel for Appellant Jane Doe*

Dated:  July 28, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. ii

TABLE OF AUTHORITIES ...................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ................................. 1

JURISDICTIONAL STATEMENT ............................................. 2

PERTINENT STATUTORY AND REGULATORY PROVISIONS ......... 5

STATEMENT OF THE CASE ................................................. 9

    I.    Congressional Purpose & Policy Backdrop .......................... 10

    II.   Factual Background ........................................................ 13

    III.  Course of Proceedings and Disposition Below ...................... 15

SUMMARY OF ARGUMENT .................................................. 19

STANDARD OF REVIEW ...................................................... 22

ARGUMENT ...................................................................... 23

    I.    Introduction .................................................................. 23

    II.   The District Court Erred in Denying Pseudonymity ........... 24

        A.    Section 6851 Authorizes Pseudonymity
              Independent of *Porter*. ............................................. 25

        B.    Section 6851 Categorically Protects
              Pseudonymity. ........................................................... 31

        C.    Doe Prevails Even Under *Porter* ................................ 41

    III.  The District Court's Error Requires Reversal or
          Vacatur on Each Issue ................................................... 50

CONCLUSION .................................................................... 52

CERTIFICATE OF COMPLIANCE...........................................................54

CERTIFICATE OF SERVICE................................................................55

ADDENDUM: DESIGNATION OF RELEVANT DISTRICT
    COURT DOCUMENTS PURSUANT TO 6TH CIR. R. 30(B).......56

ADDENDUM: UNPUBLISHED DISPOSITIONS .................................57

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barnhart v. Thomas,*
  540 U.S. 20 (2003) ............................................................ 27

*Bowles v. Sabree,*
  121 F.4th 539 (6th Cir. 2024) ........................................ 30

*C.V. v. Carminucci,*
  No. 2:24-CV-2096, 2024 WL 3983007 (D.N.J. Aug. 28, 2024) ....... 29, 38

*Carlisle v. United States,*
  517 U.S. 416 (1996) ........................................................ 26

*Cohen v. Beneficial Indus. Loan Corp.,*
  337 U.S. 541 (1949) .......................................................... 2

*D.E. v. Doe,*
  834 F.3d 723 (6th Cir. 2016) ......................................... 22

*Doe v. BlueCross BlueShield of Illinois,*
  2025 WL 1648757 (S.D. Ohio June 11, 2025) ................. 41

*Doe v. FedEx Ground Package Sys., Inc.,*
  No. 3:21-cv-00395, 2021 WL 5041286 (M.D. Tenn. Oct. 29, 2021) ....................................................................... 41

*Doe v. Fellows,*
  927 F.2d 608 (9th Cir. 1991) ......................................... 43

*Doe v. Ghiorso,*
  No. 2:24-CV-57, 2024 WL 3511641 (S.D. Ga. July 23, 2024) ................. 38

*Doe v. Maloit,*
  No. 24-CV-02383-PAB-KAS, 2025 WL 358134 (D. Colo. Jan. 31, 2025) .................................................................. 38, 39

*Doe v. Mass. Inst. of Tech.,*
  46 F.4th 61 (1st Cir. 2022) ................................... 2, 26, 34

*Doe v. McCoy,*
  No. 1:23-CV-3169-MLB, 2024 WL 843908 (N.D. Ga. Feb. 28, 2024) ............................................................................ 38

*Doe v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee,*
  No. 3:20-cv-01023, 2022 WL 2293898 (M.D. Tenn. June 24, 2022) ....................................................................... 25, 42

*Doe v. Middlesex Cnty.*,
  No. cv 20-8625 (MAS) (ZNQ), 2021 WL 130480, at *5 (D.N.J.
  Jan. 14, 2021) ............................................................................ 49

*Doe v. Parsons*,
  No. 2:24-CV-00075, 2024 WL 5705632,n.1 (M.D. Tenn. Dec.
  16, 2024) ............................................................................ 29, 38

*Doe v. Porter*,
  370 F.3d 558, 560 (6th Cir. 2004) ........................................... passim

*Doe v. Rutgers Univ.*,
  No. 2:18-cv-12952-KM-CLW, 2019 WL 1967021 (D.N.J. Apr.
  30, 2019) ............................................................................ 42

*Doe v. Serpa*,
  No. 3:25-CV-0057-X, 2025 WL 975334 (N.D. Tex. Apr. 1,
  2025) ............................................................................ 38, 39

*Doe v. Stegall*,
  653 F.2d 180 (5th Cir. 1981) ............................................... 44

*Doe v. Stevenson*,
  No. 1:24-CV-02778, 2025 WL 1165660 (N.D. Ill. Apr. 3, 2025) ........... 38

*Doe v. Sutton*,
  No. 4:23-cv-01312-SEP, 2025 WL 871656 (E.D. Mo. Mar. 20,
  2025) ............................................................................ 22, 42, 46

*Doe v. Unknown Party*,
  No. cv-24-00252-PHX-DLR, 2024 WL 492231 (D. Ariz. Feb.
  7, 2024) ............................................................................ 38, 47

*Doe v. Willis*,
  2023 WL 6907100 (D. Colo. Sept. 22, 2023) ........................... 37, 43, 46

*Doe v. Willis*,
  No. 23-CV-02171-REB-SBP, 2023 WL 6903016, (D. Colo. Sept. 22,
  2023) ............................................................................ 38

*Doe Williams v. Williams*,
  No. 3:24-CV-165-DPJ-ASH, 2024 WL 2805642 (S.D. Miss.
  May 31, 2024) ............................................................................ 38

*Fears v. Kasich (In re Ohio Execution Protocol Litig.)*,
  845 F.3d 231 (6th Cir. 2016) ............................................... 22

*Flowers v. S. Reg'l Physician Servs. Inc.*,
  247 F.3d 229 (5th Cir. 2001) ............................................... 32

*Fortin v. Comm'r of Soc. Sec.*,
  112 F.4th 411 (6th Cir. 2024) ............................................... 26

*Free Speech Coal., Inc. v. Paxton*, No. 23-1122,
 606 U.S. __, slip op. at 14 (2025) ................................................ 29

*Gertz v. Robert Welch, Inc.*,
 418 U.S. 323 (1974)........................................................................ 46

*Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig*,
 976 F.2d 487 (9th Cir. 1992) ......................................................... 28

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
 681 F.3d 1323 (Fed. Cir. 2012) ..................................................... 31

*In re Jackson Masonry, LLC*,
 906 F.3d 494 (6th Cir. 2018) ......................................................... 27

*Jama v. ICE*,
 543 U.S. 335 (2005)........................................................................ 28

*Mad Mobile, Inc. v. Meijer Great Lakes Limited Partnership*,
 No. 1:23-cv-1020, 2023 WL 8435143 (W.D. Mich. Oct. 6,
 2023) ................................................................................................ 49

*Perrigo Co. v. United States*, 1:17-cv-737 2018 WL 6684706
 (W.D. Mich. 2018).......................................................................... 50

*Plaintiff B v. Francis*,
 631 F.3d 1310 (11th Cir. 2011) ..................................................... 44

*Roe v. Penns Grove-Carney's Point Reg'l Sch. Dist.*,
 No. CV 24-10827 (CPO)(EAP), 2025 WL 723606 (D.N.J. Mar.
 5, 2025) ........................................................................................... 38

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance
 Co.*, 559 U.S. 393 (2010) .......................................................... 35, 36

*Small v. Memphis Light, Gas & Water*,
 952 F.3d 821 (6th Cir. 2020) ......................................................... 32

*Smith v. Doe*,
 No. 2:23-cv-05033-WLH-RAO, 2024 WL 4800083 (C.D. Cal.
 Sept. 9, 2024) ................................................................................. 47

*Strike 3 Holdings LLC v. Doe*, 2025 WL 1189759 (W.D. Mich.
 2025)................................................................................................ 50

*St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt.
 Agency*,
 556 F.3d 307 (5th Cir. 2009) ......................................................... 32

*T.K. v. K.N.*,
 No. 23-cv-5441 (ARR)(LB), 2024 WL 4796621 (E.D.N.Y. June
 26, 2024)......................................................................................... 47

STATUTES

28 U.S.C. § 1292(a)(1) ...................................................................... 2
28 U.S.C. § 2072 ......................................................................... 8, 25
Cal. Civ. Code § 1708.85 ..............................................................12,32
15 U.S.C. § 6851 .................................................................... passim
Pub. L. No. 119-12, 139 Stat. 55 (2025) ................................... 13

RULES

Fed. R. App. P. 4(a)(1)(A) ................................................................ 3

OTHER AUTHORITIES

Jane Anderson, *The Internet & Intimate Partner Violence*,
  Strategies, Issue 16, at 2–3 (2016) .................................... 11
Danielle Keats Citron & Mary Anne Franks, *Criminalizing
  Revenge Porn*, 49 Wake Forest L. Rev. (2014) ................. 11
Amanda Lenhart, Michele Ybarra, & Myeshia Price-Feeney,
  *Nonconsensual Image Sharing: One in 25 Americans Has
  Been a Victim of "Revenge Porn,"* Data & Soc. Res. Inst., 4
  (2016) .................................................................................... 10
National Association of Attorneys General, *An Update on the
  Legal Landscape of Revenge Porn* (2021) ......................... 10
National Conference of Commissioners on Uniform State Laws,
  Uniform Civil Remedies for Unauthorized Disclosure of
  Intimate Images Act (2018) ............................................... 12
Dave Paresh, *Google's Nonconsensual Explicit Images Problem
  Is Getting Worse*, Wired (Jul. 8, 2024) .............................. 11
Unif. Civil Remedies for Unauthorized Disclosure of Intimate
  Images Act § 5 cmt. (Unif. L. Comm'n 2018) .................... 33
The Federalist No. 44, p. 285 (C. Rossiter ed. 1961) (J.
  Madison) ............................................................................... 29

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully submits that oral argument is warranted, as this appeal presents an issue of first impression among the courts of appeals, and oral argument will assist the Court in considering the issues.

# JURISDICTIONAL STATEMENT

This lawsuit arises from Defendant Roe's disclosure of Plaintiff Doe's intimate visual depictions on public websites and social media platforms, in violation of 15 U.S.C. § 6851 (the federal "revenge porn" statute). Jurisdiction over Doe's § 6851 claim is proper under 28 U.S.C. § 1331.

This appeal is based on the district court's denial of Doe's motion to litigate under a pseudonym as provided under § 6851. The appeal conclusively determines if Doe's suit can continue without disclosing her identity to the public, is unrelated to the merits of Doe's case, and would be moot if Doe were forced to wait until the final judgment on the merits of her case before appealing. Therefore, jurisdiction for this appeal lies under 28 U.S.C. § 1292(a)(1). *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949). The US Courts of Appeals for every circuit to have considered the issue have concluded that orders denying pseudonymity are immediately appealable under the collateral order doctrine. *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 65–66 (1st Cir. 2022) (collecting cases).

The order denying Doe's motion for pseudonymity was entered May 19, 2025, and Doe filed a notice of appeal within thirty (30) days, on May 22, 2025. Thus, this appeal is timely. Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF ISSUES FOR REVIEW

1. Whether the district court committed legal error in a case brought under 15 U.S.C. § 6851—a federal statute enacted to protect victims of nonconsensual intimate imagery (NCII)—which expressly contemplates and authorizes pseudonymous litigation by empowering courts to grant relief "maintaining the confidentiality of a plaintiff using a pseudonym," by applying a common-law balancing test to deny Plaintiff Jane Doe's request to proceed pseudonymously.

2. Whether, in the alternative, the district court abused its discretion by denying pseudonymity under the traditional balancing test, where it characterized Plaintiff's NCII case as "not a paradigm revenge porn case," disregarded undisputed evidence of severe emotional and psychological harm, and failed to recognize that forcing public identification would inflict the very injury the lawsuit seeks to prevent and render the purpose of the lawsuit moot.

3. Whether the district court erred in denying Plaintiff's requests for a protective order maintaining her confidentiality and for leave to file the summons, which identifies Defendants, under seal.

# PERTINENT STATUTORY AND REGULATORY PROVISIONS

**15 U.S.C. § 6851. Civil action for nonconsensual disclosure of intimate images**

(a) Definitions

In this section:

. . .

(2) Consent

The term "consent" means an affirmative, conscious, and voluntary authorization made by the individual free from force, fraud, misrepresentation, or coercion.

. . .

(5) Intimate visual depiction

The term "intimate visual depiction"—

(A) means a visual depiction, as that term is defined in section 2256(5) of title 18, that depicts—

(i) the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual; or

(ii) the display or transfer of bodily sexual fluids—

(I) on to any part of the body of an identifiable individual;

(II) from the body of an identifiable individual; or

(III) an identifiable individual engaging in sexually explicit conduct and

(B) includes any visual depictions described in subparagraph (A) produced while the identifiable individual was in a public place only if the individual did not—

(i) voluntarily display the content depicted; or

(ii) consent to the sexual conduct depicted.

. . .

(b) Civil Action

(1) Right of Action

(A) In general

Except as provided in paragraph (4), an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who

knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief as set forth in paragraph (3).

. . .

(3) Relief

(A) In general

In a civil action filed under this section—

(i) an individual may recover the actual damages sustained by the individual or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred; and

(ii) the court may, in addition to any other relief available at law, order equitable relief, including a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction.

(B) Preservation of anonymity

In ordering relief under subparagraph (A), the court

may grant injunctive relief maintaining the confidentiality of

a plaintiff using a pseudonym.

**Federal Rule of Civil Procedure 10. Form of Pleadings**

(a) Caption; Names of Parties. Every pleading must have a caption

with the court's name, a title, a file number, and a Rule 7(a) designation.

The title of the complaint must name all the parties; the title of other

pleadings, after naming the first party on each side, may refer generally

to other parties.

**28 U.S.C. § 2072. Rules of procedure and evidence; power to prescribe**

. . .

(b) Such rules shall not abridge, enlarge or modify any substantive

right. All laws in conflict with such rules shall be of no further force or

effect after such rules have taken effect.

## STATEMENT OF THE CASE

Plaintiff Jane Doe is an entertainer and performing artist who performs at family-friendly venues under a stage name. Complaint, RE 1, Page ID # 2, 3. Doe and Defendant John Roe were romantically involved from 2009 to 2020 and took nude photos and videos—some ("Artistic Depictions") featuring artistic nudity, but others ("Private Depictions") reflecting their private moments. *Id*. at 3, 5. Doe permitted Roe to display Artistic Depictions on occasion, but only when she reviewed the depiction beforehand, her face was not visible, and her name was not used. *Id*. After the end of their relationship, Roe began posting identifiable Private Depictions of Doe, never intended for public release, on photo- and video-sharing sites, with captions identifying her by her real and stage names. *Id*. at 6, 7. Doe has repeatedly requested that Roe take down the images and videos, but Roe has continued to post identifiable nude images and videos of Doe, including within the last two years. *Id*. at 6, 8, 9. To date, these photos and videos have not become associated with Doe's identity in the perception of the public at large. The purpose of this suit is to prevent such identification, take down the

"revenge porn" content, and compensate Doe for the harm caused by Roe's unlawful disclosures.

## I.     Congressional Purpose & Policy Backdrop

"Revenge porn" or "nonconsensual intimate imagery" (NCII) is a form of nonconsensual pornography where sexually graphic or intimate photos of an individual are distributed without their consent. Danielle Keats Citron & Mary Anne Franks, *Criminalizing Revenge Porn*, 49 Wake Forest L. Rev. 345, 346 (2014). Empirical studies reveal one in every 25 internet users is a victim of nonconsensual pornography. Amanda Lenhart, Michele Ybarra, & Myeshia Price-Feeney, *Nonconsensual Image Sharing: One in 25 Americans Has Been a Victim of "Revenge Porn,"* Data & Soc. Res. Inst., 4 (2016). Women, young people, and LGBTQ individuals are disproportionately affected by actual or threatened NCII disclosures. *Id.* at 4–5 (1 in 14 for young people aged 15-29, 1 in 10 women under 30, and 1 in 7 among LGBTQ internet users); see also National Association of Attorneys General, *An Update on the Legal Landscape of Revenge Porn* (2021) (more recent surveys suggest that 1 in 8 people under 30 have been victims). The stakes are high: victims lose their jobs, suffer depression and suicidal thoughts or are

driven to self-harm or suicide, and face increased threats of stalking, harassment, and violence. Citron & Franks, *Criminalizing Revenge Porn*, 49 Wake Forest L. Rev. at 350–54 (2014).

Public disclosure of a NCII victim's identity predictably amplifies attention to—and re-circulation of—the images: studies show such images are "often posted alongside personally-identifying information," which triggers additional harassment and threats from strangers who then seek out and share the material. Data & Soc. Res. Inst., *supra*, at 4; *see also* Jane Anderson, *The Internet & Intimate Partner Violence*, Strategies, Issue 16, at 2–3 (2016). Once a name is public, search engines and platforms algorithmically surface the NCII, forcing victims into a cycle of repeated efforts to get the content taken down. *See* Paresh Dave, *Google's Nonconsensual Explicit Images Problem Is Getting Worse*, Wired (Jul. 8, 2024).

As part of the Violence Against Women Reauthorization Act of 2022, Congress addressed the growing epidemic of NCII for the first time. One section of that Act, 15 U.S.C. § 6851, authorizes civil suits when a person's identifiable nude or sexually explicit imagery is disclosed and the defendant knows or should have known that the depicted person did

not consent to the disclosure. In addition to authorizing damages and fees, the statute empowers courts to grant equitable relief, such as a restraining order or preliminary or permanent injunction requiring the defendant to cease disclosure or display of the imagery. To avoid requiring plaintiffs seeking this remedy to re-victimize themselves by having their identities publicly associated with the "revenge porn" material, Congress provided that "the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym." 15 U.S.C. § 6851(b)(3)(B).

Congress modeled § 6851 on a revenge-porn provision of California's Civil Code and model legislation drafted by the Cyber Civil Rights Initiative. *Compare* 15 U.S.C § 6851 *with* Cal. Civ. Code § 1708.85 (near-identical phrasing in sections on equitable relief and the use of pseudonyms); *see* National Conference of Commissioners on Uniform State Laws, *Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act* (2018) (the "Uniform Act"). Like § 6851, both models contemplate the use of pseudonyms during litigation to maintain a plaintiff's confidentiality. See Cal. Civ. Code § 1708.85(f)(1) ("a plaintiff .

. . may proceed using a pseudonym"); Uniform Act § 5 ("a plaintiff may proceed using a pseudonym").

Since passing § 6851, Congress has continued to legislate to protect NCII victims. The TAKE IT DOWN Act, passed earlier this year, criminalizes the knowing publication of NCII as defined in § 6851 and requires online platforms to take such content down on the depicted person's request. Pub. L. No. 119-12, 139 Stat. 55 (2025).

## II. Factual Background

Plaintiff Jane Doe is a Nashville performing artist and resident of Tennessee. Complaint, RE 1, Page ID # 2. For more than twenty years, Doe has performed at venues and events under a distinctive Performer Name, including at family-friendly shows. *Id*. at 2, 3.

In 2009, Doe began a romantic relationship with John Roe. *Id*. at 3. During their relationship, Doe took intimate photos and videos, some personal and others artistic (referred to as the "Private Depictions" and "Artistic Depictions" in the Complaint). *Id*. at 5. Doe *never* consented to *any* distribution of the Private Depictions. Doe permitted Roe (and his wholly owned LLC, referred to in the Complaint as XYZ, LLC) to display Artistic Depictions taken for that purpose only when she reviewed the

proposed display with the agreement that her name would not be used and her face would not be visible. Complaint, RE 1, Page ID # 5, 6.

At Roe's request, Doe signed a release for *one* movie project (the "Original Audiovisual Work") that she understood to authorize limited use of her likeness, without explicit nudity or identifiable images of her face, and credited to her legal name, not her Performer Name. *Id.* at 4. She signed while intoxicated, based on Roe's assertion that the release was a formality and limited to the Original Audiovisual Work. *Id.*

Doe ended her romantic relationship with Roe in March 2020. Within weeks, Roe uploaded identifiable intimate images of Doe to an online photo-sharing platform. *Id.* at 6. When Doe informed Roe that he did not have her permission to post these images and begged him to stop, Roe blocked Doe from being able to view his activity on the photo sharing platform and continued to upload identifiable nude photos, including both Private and Artistic Depictions, for distribution without Doe's consent. *Id.* Several of these images were uploaded after October 1, 2022, and identifiably depict Doe's face and genitals. *Id.* at 6, 7. Within the last year, Roe has also posted modified versions of the Original Audiovisual Work that include identifiable nude images and videos of Doe, in

conjunction with both her legal and Performer Name in the written description. Complaint, RE 1, Page ID # 8.

In 2024, Doe performed at multiple events where attendees approached her and told her they had seen the intimate images of her uploaded by Roe. *Id*. at 7. Despite Doe's repeated demands, Defendants have continued distributing the images and profiting from their association with her Performer Name. *Id*. at 8, 9. As of today, several of the Private Depictions, which Defendants uploaded in violation of § 6851, are still accessible from Defendants' page on a video-sharing site, and Plaintiff's real name and Performer Name are used in conjunction with the depictions.

If Doe is publicly linked to the dispute over these images, as will happen if she is required to litigate under her legal name, this publicity will cause her severe emotional distress and make it difficult for her to maintain her suit without incurring substantial emotional and psychological harm. Declaration of Jane Doe, RE 40, Page ID # 230-232.

## III.   Course of Proceedings and Disposition Below

Jane Doe filed her Complaint in March of this year against John Roe and XYZ, LLC, requesting injunctive relief and damages under §

6851, and alleging related causes of action under state law. Complaint, RE 1, Page ID # 1-15. Doe requested permission to litigate pseudonymously, as the statute expressly provides, and requested a protective order that would protect her confidentiality by requiring the use of pseudonyms for both her and Defendants and by prohibiting disclosure of the names or identifying information of the parties. Plaintiff's Motion to Proceed Under Pseudonym, RE 16, Page ID # 50-51. In response, Defendants intentionally filed Doe's identifying information on the public docket, apparently trying to moot her request for pseudonymity and for a confidentiality-maintaining protective order. Plaintiff filed an emergency motion to seal, which was granted quickly. Defendants' Response in Opposition to Motion for Leave to File Under Seal, RE 20, Page ID # 62-71. Plaintiff's Emergency Motion for Sealing, RE 22, Page ID # 104-105. Plaintiff's Supplemental Emergency Motion for Sealing, RE 23, Page ID # 106-107. Order Provisionally Granting RE 20, RE 24, Page ID # 108-109. Order Granting Plaintiff's Motion for Sealing, RE 25, Page ID # 110-111.

The District Court ordered supplemental briefing on Doe's motion. Nevertheless, the District Court denied Doe's request for pseudonymity

and a protective order maintaining her confidentiality, relying heavily on "the presumption of open judicial proceedings." Order Denying Plaintiff's Motion for File Under Seal, Motion to Proceed Under Pseudonym, and Granting Defendant's Motion for a More Definite Statement, RE 45, Page ID # 260. The Court further reasoned that "this is not a paradigm revenge porn case" because Doe had previously permitted specific artistic nude images (where she was not identifiable) to be displayed. *Id.* at 261. In every authorized display, Doe was not identifiable, her face was not visible, and her name was not used. The District Court's order required Plaintiff to file an amended complaint under her real name by June 20.

Plaintiff timely appealed. Notice of Appeal, RE 47, Page ID # 270-271. The very next day, after business hours on a holiday weekend, Defendants again filed Plaintiff's identifying information on the public docket in a second attempt to moot Plaintiff's request for confidentiality. Defendants' Motion for Partial Summary Judgment, RE 48, Page ID # 272-274. Defendants' Statement of Undisputed Material Facts, RE 49, Page ID # 275-282. Defendants' Memorandum in Support of Motion for Partial Summary Judgment, RE 50, Page ID # 329-341. Plaintiff filed an emergency motion to seal the information, which was again granted

quickly, and a motion to stay the Court's order denying pseudonymity (and all other proceedings in the District Court) pending appeal. Plaintiff's Emergency Motion to Seal Defendants' Motion and Supporting Documents, RE 51, Page ID # 342-347. Order Granting Plaintiff's Emergency Motion to Seal, RE 52, Page ID # 350-351. Plaintiff's Motion to Stay Proceedings Pending Appeal, RE 56, Page ID # 359-361. The Court granted the motion to stay and has stayed the entire case pending the resolution of this appeal. Order Granting Motion to Stay, RE 71, Page ID # 469.

## SUMMARY OF ARGUMENT

The District Court erred by assessing Plaintiff's request to litigate her 15 U.S.C. § 6851 claim pseudonymously under the common-law *Porter* balancing test. Congress designed § 6851 to provide effective relief to NCII victims, recognizing that the identification of the individuals in the images is itself a core harm. Subparagraph (b)(3)(B)—titled "Preservation of anonymity"—authorizes courts to grant injunctive relief "maintaining the confidentiality of a plaintiff using a pseudonym." The clear language of the statute entails that a § 6851 plaintiff may file and litigate under a pseudonym, and the court is empowered to preserve the status quo of pseudonymity. Read alongside its California model—where victims may proceed under a pseudonym and courts must keep the name confidential—§ 6851 affords categorical, or at minimum presumptive, pseudonymity to plaintiffs asserting § 6851 claims.

That reading avoids conflict with the Rules Enabling Act. Pseudonymity is a statutory remedial protection. Fed. R. Civ. P. 10(a), which requires the caption to name the parties, is procedural and cannot "abridge" a statutory remedial protection. Pseudonymity is a part of § 6851's substantive remedy and forecloses layering a separate, judge-

made balancing test as an additional prerequisite. The proper inquiry is the ordinary equitable standard for injunctive relief under § 6851; if satisfied, the court should both halt dissemination and preserve anonymity so relief remains both possible and meaningful.

The District Court erred by subjecting a § 6851 claim to *Porter*, declaring this case "not a paradigm revenge porn case," and requiring public identification as the price of seeking protection. The Court's application of *Porter* was a legal error and therefore a *per se* abuse of discretion. District courts applying § 6851 overwhelmingly permit pseudonymity. Only two cases have denied pseudonymity, and the two contrary decisions are distinguishable, as both involved situations with diminished need for confidentiality.

If the *Porter* test were appropriate, it would also warrant reversal. This case involves information "of the utmost intimacy," a concrete risk of retaliation and professional harm from name-linked search and recirculation, no prejudice to defendants (who already know Doe's identity), and undisputed evidence of harm to Doe if required to litigate under her real name.

The Court should reverse and remand with instructions to allow Jane Doe to proceed under a pseudonym and to reconsider Doe's other requests. At minimum, the Court should hold that § 6851 plaintiffs are entitled to proceed pseudonymously through resolution of their merits requests for confidentiality-maintaining injunctive relief, with any deviation reserved for exceptional circumstances not present here.

## STANDARD OF REVIEW

The District Court's conclusions of law are reviewed de novo. *Fears v. Kasich (In re Ohio Execution Protocol Litig.)*, 845 F.3d 231, 235 (6th Cir. 2016). Its denials of Plaintiff's pseudonymity motion, protective order, and motion to seal are reviewed for abuse of discretion. *See D.E. v. Doe*, 834 F.3d 723, 728 (6th Cir. 2016); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004); *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016). Legal error is a *per se* abuse of discretion. *Fears*, 845 F.3d at 235.

## ARGUMENT

## I.        Introduction

This case presents two related issues of first impression among the courts of appeals, both regarding the construction of 15 U.S.C. § 6851, the first Congressional enactment to specifically address NCII or "revenge porn."  First, does 15 U.S.C. § 6851(b)(3)(B) authorize courts to allow § 6851 plaintiffs to proceed under pseudonym, regardless of whether the customary balancing test for pseudonymous litigation, as announced by decisions such as *Doe v. Porter*, is satisfied?  The answer to this question is yes: courts can authorize plaintiffs alleging violations of § 6851 to proceed under pseudonym, regardless of whether the plaintiff satisfies the *Porter* balancing test.  Second, what standard should govern the court's determination of whether a § 6851 plaintiff should be allowed to proceed under pseudonym?  The statute provides the answer: pseudonymity is *categorically* protected for § 6851 plaintiffs. Only in exceptional cases, such as when a request for a confidentiality-maintaining injunction would patently be moot, or when the harm of identification in conjunction with the revenge porn images is unusually attenuated, might it be appropriate for courts to override Congress's

policy judgment protecting pseudonymity. As this case instead presents compelling grounds for maintaining Plaintiff's privacy, the District Court's contrary order, applying *Porter* in denying leave to proceed under pseudonym, should be reversed.

## II. The District Court Erred in Denying Pseudonymity

The District Court's denial of Plaintiff's pseudonymity motion was legal error and an abuse of discretion, requiring reversal. Plaintiff sued under § 6851, which expressly anticipates pseudonymous plaintiffs and authorizes courts to maintain NCII victims' confidentiality. Protecting the privacy of NCII victims is the main purpose of the statute. Instead of following the statute, the District Court denied pseudonymity by misapplying *Porter*'s common-law balancing test, under which pseudonyms are presumptively prohibited. The District Court failed to recognize that revenge-porn plaintiffs are not subject to the *Porter* test, since Congress specifically carved out NCII victims from *Porter* by including pseudonymity protections in § 6851. This was legal error.

Even if *Porter* did govern (it does not), the District Court's application of the standard was an abuse of discretion. Plaintiff's suit requires disclosing information "of the utmost intimacy," and litigating

under her real name would incur the precise harm she is litigating against: her identity being tied to the revenge porn material. Plaintiff also presented undisputed evidence of severe emotional and psychological harm that she would incur if forced to litigate under her real name, which the District Court failed to consider entirely. This was an abuse of discretion.

### A. Section 6851 Authorizes Pseudonymity Independent of *Porter.*

In evaluating motions for leave to proceed under pseudonym, courts in this Circuit generally apply the *Porter* test. 370 F.3d 558, 560 (6th Cir. 2004). This test begins with a presumption of open judicial proceedings, as reflected in Rule 10(a)'s requirement that all parties be named in the caption. But a plaintiff may proceed pseudonymously in "certain circumstances," where their "privacy interests substantially outweigh the presumption" of openness. *Id*. Courts typically evaluate factors such as whether the suit challenges governmental activity, compels disclosure of information "of the utmost intimacy," risks criminal prosecution for the plaintiff, or involves minor plaintiffs. *Id*. The *Porter* factors are not exhaustive, and courts retain discretion to consider other special circumstances warranting pseudonymity. *Doe v. Metro. Gov't of Nashville*

*& Davidson Cnty., Tennessee*, No. 3:20-cv-01023, 2022 WL 2293898, at \*4 (M.D. Tenn. June 24, 2022).

The *Porter* test, and analogous balancing tests applied by the various Courts of Appeals, have the status of judge-made federal common law, designed to enforce a background presumption against the use of pseudonyms in civil litigation. *Mass. Inst. of Tech.*, 46 F.4th at 68. This background presumption "has no footing in the United States Code" and "is not perfectly traceable to any federal constitutional provision or rule." *Id*. at 67. It therefore has the status of federal common law, stemming specifically from courts' "inherent power to 'formulate procedural rules not specifically required by the Constitution or the Congress.'" *Id*. at 68 (quoting *Carlisle v. United States*, 517 U.S. 416, 426 (1996)). "[B]ecause statutory text supersedes the common law . . . when Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears." *Fortin v. Comm'r of Soc. Sec.*, 112 F.4th 411, 425 (6th Cir. 2024) (citation omitted).

Section 6851 displaces the *Porter* balancing test for pseudonymity, and the underlying federal common-law presumption against

pseudonymity, in cases brought under the statute. To see why this is true, "[w]e begin, as we must, with the text" of § 6851. *In re Jackson Masonry, LLC*, 906 F.3d 494, 497 (6th Cir. 2018). Section 6851(b)(3)(B) is entitled "Preservation of anonymity" and empowers courts to grant injunctive relief "maintaining the confidentiality of a plaintiff *using a pseudonym*." § 6851(b)(3)(B) (emphasis added). "[U]sing a pseudonym" is a present-participial adjective phrase immediately following "plaintiff," (*id.*), so by "the grammatical 'rule of the last antecedent,'" it should "be read as modifying [] the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). The statute thus means that the court may keep the identity of the plaintiff, who is proceeding under a pseudonym, confidential. Accordingly, the statute expressly presupposes that a plaintiff will be using a pseudonym, as plaintiffs often do in § 6851 cases, and empowers the court to protect the identity of the plaintiff who is using that pseudonym, via the court's equitable power. "In light of this express authorization, courts have consistently granted requests to proceed under pseudonym in cases brought pursuant to 15 U.S.C. § 6851." *Doe v. Sutton*, No. 4:23-cv-01312-SEP, 2025 WL 871656, at *4 (E.D. Mo. Mar. 20, 2025) (collecting cases).

There is no indication in the statutory text that a plaintiff would need to be authorized to use a pseudonym under a separate source or provision of law before becoming eligible for confidentiality-maintaining relief under § 6851. A "plaintiff us[es]" a pseudonym when she invokes the cause of action under § 6851 pseudonymously; at that point, courts are empowered to "[p]reserve[e] . . . anonymity" by granting such injunctive relief as is justified by the plaintiff's showing. 15 U.S.C. § 6851(b)(3)(B). If Congress meant that a plaintiff would have to be authorized under other law to use a pseudonym prior to becoming eligible for confidentiality-maintaining relief under the statute, the phrase "using a pseudonym" is a poor fit for that meaning. Courts should not infer a separate, atextual authorization requirement from Congressional silence. "[I]t is difficult to assume that Congress, when it 'set out the elements of the federal cause of action, would intend for additional and unstated elements to be also considered necessary . . . .'" *Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig*, 976 F.2d 487, 496 (9th Cir. 1992) (cleaned up); *see also Jama v. ICE*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply . . . .").

Once a plaintiff is using a pseudonym, § 6851 provides the court with the power to protect the confidentiality of that pseudonym. Inherent in that power is the power to authorize the plaintiff to proceed under her chosen pseudonym, which is necessary for administering the case while protecting the plaintiff's confidentiality. "No axiom is more clearly established in law, or in reason, than that . . . wherever a general power to do a thing is given, every particular power necessary for doing it is included." *Free Speech Coal., Inc. v. Paxton*, No. 23-1122, 606 U.S. __, slip op. at 14 (2025) (*quoting* The Federalist No. 44, p. 285 (C. Rossiter ed. 1961) (J. Madison)). Since § 6851 provides this power, courts can grant permission to proceed under pseudonym in § 6851 cases without applying the federal common-law balancing test that applies to pseudonymous suits brought without express statutory authority. *Doe v. Parsons*, No. 2:24-CV-00075, 2024 WL 5705632, at *2 n.1 (M.D. Tenn. Dec. 16, 2024) ("Given that the Court can exercise its discretion to allow Plaintiff to proceed pseudonymously under 15 U.S.C. § 6851(b)(3)(B), it does not examine the *Doe v. Porter* factors."); *C.V. v. Carminucci*, No. 2:24-CV-2096 (JXN) (SDA), 2024 WL 3983007, at *2 (D.N.J. Aug. 28, 2024) ("[T]he Court finds good cause to allow Plaintiff to proceed under a pseudonym.

First, Plaintiff's lawsuit seeks relief under 15 U.S.C. § 6851, which expressly provides that a plaintiff may proceed in litigation using a pseudonym. Second, even if the statute did not provide for such protection, the Court is also satisfied that the *Provident Life* Factors weigh in favor of proceeding under a pseudonym.").

The District Court concluded that the *Porter* balancing test governed the pseudonymity inquiry and held that Plaintiff's privacy interests did not "substantially outweigh the presumption in favor of open judicial proceedings . . . ." Order, RE 45, Page ID # 260 (internal quotation marks omitted). The District Court erred in applying *Porter* as the exclusive test, instead of recognizing that § 6851's express text displaced the common-law balancing test and authorized pseudonymity independent of *Porter*. "A district court abuses its discretion when it applies the wrong legal standard . . . ." *Bowles v. Sabree*, 121 F.4th 539, 548 (6th Cir. 2024). As the District Court applied the wrong legal standard, the order below must be reversed, or at least vacated and remanded for application of the correct legal standard.

## B.    Section 6851 Categorically Protects Pseudonymity.

So what is the correct standard?  Again the statutory text, as interpreted in context, provides the answer: "a plaintiff using a pseudonym" is a plaintiff who has elected, at her option, to proceed under a pseudonym. The structure of the statute confirms this reading: as the protection of confidentiality is part of the substantive relief available under the statute, a plaintiff alleging a § 6851 claim should be afforded an orderly opportunity to prove her entitlement to that relief and should not be required to "prove [she] is entitled to relief at the pleading stage" in order to be allowed to bring the claim. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1342 (Fed. Cir. 2012). Courts should thus categorically authorize § 6851 plaintiffs to proceed under pseudonyms—at least until the plaintiffs' requests for confidentiality-maintaining relief are adjudicated in the ordinary course. Any other rule would require § 6851 plaintiffs to prove their case for substantive confidentiality-maintaining relief at the pleading stage, rather than being permitted to plead this claim and have it adjudicated in an orderly manner after an opportunity for discovery and litigation on the merits.

Parallel provisions and statutory structure confirm that pseudonymity is categorically protected. California Civil Code § 1708.85, enacted the year before § 6851, served as a model for and includes the same operative phrase as § 6851. That statute provides that "[t]he court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym as provided in subdivision (f)," where subdivision (f) provides that "[a] plaintiff . . . may proceed using a pseudonym" and "[t]he court shall keep the plaintiff's name . . . confidential." Cal. Civ. Code § 1708.85 (West). In other words, "a plaintiff using a pseudonym" is a plaintiff who has elected her statutory right to use a pseudonym.

As a matter of statutory interpretation, "in determining the meaning of a particular statutory provision, it is helpful to consider the interpretation of other statutory provisions that employ the same or similar language." *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 320 (5th Cir. 2009) (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 233 n.4 (5th Cir. 2001)). This comparative approach helps to "make sense rather than nonsense out of the *corpus juris*." *Small v. Memphis Light, Gas & Water*, 952 F.3d 821, 827-28 (6th Cir. 2020) (Thapar, J., concurring, joined by Kethledge, J.)

(citation omitted). The California statute is clear as to the meaning and purpose of "maintaining the confidentiality of a plaintiff using a pseudonym": the court has the power to protect the plaintiff's right to use a pseudonym from the outset of the case through completion. By borrowing California's language, Congress granted the same power to federal courts for the same reason: plaintiffs alleging § 6851 violations have the right to use a pseudonym, and federal courts are empowered to issue necessary orders—including granting the motion to proceed pseudonymously itself—to *maintain* that confidentiality throughout the proceedings.

The Uniform Act, which served as a model for § 6851 in many respects, contemplates the same meaning. The Uniform Act explicitly recognizes the unique vulnerability of victims of NCII disclosure, noting that "[t]he fear of further notoriety or abuse deters many victims from pursuing legal remedies." Unif. Civil Remedies for Unauthorized Disclosure of Intimate Images Act § 5 cmt. (Unif. L. Comm'n 2018). To mitigate this pervasive fear and ensure access to justice, the Uniform Act includes a dedicated section on "Plaintiff's Privacy," allowing for pseudonymous litigation. *Id.* at § 5. These provisions guarantee plaintiffs

the option to proceed pseudonymously, allowing them to assert their claims without incurring further, compounding harm. Section 6851's reference to pseudonymity serves the same purpose and should be interpreted to authorize pseudonymity broadly in § 6851 litigation.

The structure of the statute compels the same conclusion. Since a confidentiality-maintaining injunction is part of the substantive relief that a § 6851 plaintiff can receive, courts should not moot that request by denying leave to proceed under pseudonym on procedural grounds. The District Court relied on the general presumption of openness, as supported by Fed. R. Civ. P. 10(a), to override the specific substantive statutory protection describing the relief—a confidentiality-maintaining injunction—available to a plaintiff who proves their entitlement to such relief. This use of Rule 10 cannot be correct, as 1) it is inconsistent with the traditional practice of the courts when evaluating requests to proceed under pseudonym and 2) it violates the Rules Enabling Act.

Rule 10's requirement that the caption must name the parties cannot be construed as a per se rule against pseudonyms. "[I]t is less than obvious that a party's 'name' in this context [i.e., Rule 10] means his true name, to the exclusion of a pseudonym." *Mass. Inst. of Tech.*, 46 F.4th at

67. "[I]f the Civil Rules should be read to mandate that a complaint state the parties' true names, it would be odd that courts have converted this command into a rebuttable presumption." *Id*. The Rule thus provides a legal "toehold for the presumption against the use of pseudonyms," but no more. *Id*. And this presumption, like all federal common law, is subject to displacement by statute.

The Rules Enabling Act compels the same conclusion: it explicitly provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). As the Supreme Court clarified in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, a procedural rule "governs only the manner and the means by which the litigants' rights are enforced . . . ." 559 U.S. 393, 407 (2010) (plurality opinion) (cleaned up). If a Federal Rule "alters the rules of decision by which the court will adjudicate" a right, it violates the Act. *Id*. (cleaned up).

Here, the ability to obtain a confidentiality-maintaining injunction under § 6851 is a substantive component of the comprehensive remedial scheme Congress created for victims of NCII. Congress specifically designed this relief to address the unique harm where public

identification itself is a re-victimization. By requiring Doe to satisfy the separate, judicially created *Porter* test as a prerequisite to seeking this statutorily provided relief, the District Court effectively used a federal common-law procedural rule—the presumption against pseudonyms as supported by Rule 10—to "abridge" or "modify" her substantive statutory right. This application alters the "rules of decision" for vindicating her statutory right to confidentiality. The proper interpretation is that § 6851 creates a statutory exception to Rule 10(a)'s general requirement, allowing plaintiffs to vindicate their rights without forfeiting the very privacy the statute was designed to protect. "Congress . . . has ultimate authority over the Federal Rules of Civil Procedure; it can create exceptions to an individual rule as it sees fit . . . by enacting a separate statute overriding it in certain instances." *Shady Grove*, 559 U.S. at 400 (plurality opinion). To the extent Rule 10 militates against pseudonyms, therefore, § 6851's substantive relief provision requires a different, pseudonymity-protective rule of decision.[1]

---

[1] It is beyond dispute that Congress intended to override contrary provisions of the Federal Rules of Civil Procedure by enacting § 6851(b)(3)(B). For example, Rule 65(d)(1)'s specificity requirement for injunctions is generally interpreted to require an order granting an

A categorical rule in favor of pseudonymity for § 6851 plaintiffs also vindicates Congress's policy judgment. The core purpose of § 6851 is to provide a remedy for the profound privacy violation inherent in NCII disclosures. For victims like Doe, the identification *is* the harm. Publicly linking a victim's name to NCII inflicts the very injury the lawsuit seeks to remedy. Forcing a plaintiff to file under her real name would compel Doe to re-victimize herself as a condition of seeking justice, mooting the confidentiality-preserving relief Congress specifically authorized. This understanding is why federal courts have almost uniformly granted pseudonymity in § 6851 cases; they recognize that denying anonymity would "compound the very harm" the plaintiff "already allegedly has suffered as a result of defendants' alleged disclosures." *Doe v. Willis*, No. 23-CV-2171, 2023 WL 6907100, at *2 (D. Colo. Sept. 22, 2023). Denying Plaintiff the ability to proceed pseudonymously awards Defendants a victory on a key component of the statutory remedy before litigation on the merits has even begun.

--------

injunction to name the beneficiary, even if the beneficiary is proceeding under pseudonym. *Doe v. Lee*, No. 3:23-CV-00592, 2023 WL 7646546, at *1 (M.D. Tenn. Nov. 14, 2023).  Section 6851(b)(3)(B) patently overrides that requirement.

In light of the categorical solicitude for pseudonymity under the statute, the district courts are nearly uniform in granting permission to proceed under pseudonym in § 6851 cases.[2] The District Court's reliance on the only two counterexamples, *Doe v. Serpa*, No. 3:25-CV-0057-X, 2025 WL 975334 (N.D. Tex. Apr. 1, 2025), and *Doe v. Maloit*, No. 24-cv-02383-PAB-KAS, 2025 WL 358134 (D. Colo. Jan. 31, 2025), is misplaced. These cases, which are the rare instances where pseudonymity has been denied in a § 6851 action, are factually and legally distinguishable.

In *Serpa*, the court denied pseudonymity because the intimate images were disclosed privately to a potential employer via LinkedIn, not publicly. 2025 WL 975334 at *1–3. Sealing the image itself (and enjoining any further distribution) was deemed sufficient to address the harm; the

---

[2] *See Doe v. Willis*, No. 23-CV-02171-REB-SBP, 2023 WL 6903016, at *2 (D. Colo. Sept. 22, 2023); *Doe v. McCoy*, No. 1:23-CV-3169-MLB, 2024 WL 843908, at *9 (N.D. Ga. Feb. 28, 2024); *Doe v. Unknown Party*, No. CV-24-00252-PHX-DLR, 2024 WL 492231, at *4–5 (D. Ariz. Feb. 7, 2024); *Doe Williams v. Williams*, No. 3:24-CV-165-DPJ-ASH, 2024 WL 2805642, at *5 (S.D. Miss. May 31, 2024); *Doe v. Ghiorso*, No. 2:24-CV-57, 2024 WL 3511641, at *2 (S.D. Ga. July 23, 2024); *Carminucci*, 2024 WL 3983007, at *4; *Parsons*, WL 5705632, at *2; *Roe v. Penns Grove-Carney's Point Reg'l Sch. Dist.*, No. CV 24-10827 (CPO)(EAP), 2025 WL 723606, at *5 (D.N.J. Mar. 5, 2025); *Sutton*, WL 871656, at *12; *Doe v. Stevenson*, No. 1:24-CV-02778, 2025 WL 1165660, at *1 n.1 (N.D. Ill. Apr. 3, 2025).

specific re-victimization targeted by § 6851—public association with nude depictions—was not at play. And in *Maloit*, the plaintiff had taken affirmative actions that led to significant media attention and publicly undermined her pseudonym, causing the court to conclude that any damage from the case's publicization had already been incurred. 2025 WL 358134 at *3-4.

Unlike *Serpa*, Doe's case involves *public* disclosures of her intimate images (Complaint, RE 1, Page ID # 2, 6, 7, 8), so publicizing her name will directly inflict the core harm § 6851 seeks to prevent. And unlike the plaintiff in *Maloit*, Doe has diligently sought to *protect* her identity from the outset, actively fighting against public disclosure, taking no actions that would diminish her privacy interests, and naming Defendants pseudonymously to prevent indirect identification. *See id.*

To sum up: in deciding a pseudonymity request under § 6851, courts should follow the text of the statute, which expressly contemplates pseudonymity and indicates it should be available at a plaintiff's option. Even if this Court declines to approve pseudonymity in every § 6851 case, it should hold that courts assessing a § 6851 pseudonymity claim should place great weight on Congress's solicitude for pseudonymity under the

statute, since public identification in connection with the revenge porn images is the harm being litigated against. Courts should also be mindful of the need to preserve their own jurisdiction to determine whether confidentiality-maintaining relief may be needed after the merits of the case are heard, even if the need for pseudonymity does not appear pressing at the outset of the case. Courts should be conservative in making this determination, as confidentiality is a one-way street; once a plaintiff's identity is broadly publicly known in connection with a dispute, any request for confidentiality-maintaining relief would largely be moot.

Here, the District Court denied Plaintiff's request for pseudonymity, placed no weight on the fact that § 6851 expressly contemplates pseudonymous plaintiffs, and relied on its finding—based on only Plaintiff's Complaint, the submissions made in conjunction with the pseudonymity motion, and other preliminary motion practice—that "[t]his is a not a paradigm revenge porn case." Order, RE 45, Page ID # 261. This analysis improperly subordinated the text of the statute to the Court's own atextual view of what counts as a "paradigm" revenge-porn scenario. Moreover, the Court functionally disposed of Plaintiff's merits claim for confidentiality-maintaining relief under § 6851 without

requiring Defendants to respond to the Complaint, much less litigate on the merits. The District Court relied on inapt considerations and entered a ruling that threatens to moot a crucial component of Plaintiff's request for relief on the merits—not in the ordinary course, but in the context of a procedural pseudonymity motion. In doing so, it abused its discretion.

### C. Doe Prevails Even Under *Porter*.

Even absent the express authorization of § 6851, pseudonymity is warranted under *Porter*. Under *Porter*, Plaintiff's privacy interests are balanced against the presumption of openness using a list of factors, including whether prosecution of the suit will compel Plaintiff to disclose information "of the utmost intimacy." 370 F.3d 558, 560.

The *Porter* factors are not exhaustive; instead, they aid courts in determining when the circumstances of a case overcome the general rule that litigation must be conducted in the names of the parties. *Doe v. FedEx Ground Package Sys., Inc.*, No. 3:21-cv-00395, 2021 WL 5041286, at *5 (M.D. Tenn. Oct. 29, 2021); *Doe v. BlueCross BlueShield of Illinois*, No. 2:25-cv-00608, 2025 WL 1648757, at *3 (S.D. Ohio June 11, 2025). In addition to the listed factors, courts have the "discretion to consider whether any other special circumstances warrant permitting the plaintiff

to proceed under a pseudonym." *Doe v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, No. 3:20-cv-01023, 2022 WL 2293898, at *4 (M.D. Tenn. June 24, 2022). Here, circumstances strongly favor pseudonymity.

### 1. This case involves matters "of the utmost intimacy."

The second *Porter* factor asks "whether prosecution of the suit will compel the plaintiffs to disclose information 'of the utmost intimacy.'" 370 F.3d at 560. This case inherently involves such information. Plaintiff alleges, and testifies to, the nonconsensual distribution of identifiable, intimate, and explicit images and videos of her by a former romantic partner after the conclusion of the romantic relationship. Complaint, RE 1, Page ID # 2, 6,7, 9, 10; Declaration of Jane Doe, RE40, Page ID # 230-231.

### 2. Pseudonymity is necessary to protect Plaintiff from severe emotional distress.

Another circumstance weighing in favor of pseudonymity is whether the Plaintiff "will experience severe emotional distress and mental anguish if her name is revealed publicly." *Doe v. Rutgers University*, No. 2:18-cv-12952-KM-CLW, 2019 WL 1967021, at *3 (D.N.J. Apr. 30, 2019); *accord Sutton*, 2025 WL 871656, at *4 (granting

pseudonymity when plaintiff alleged "he has suffered symptoms of anxiety and depression, post-traumatic stress disorder, and severe emotional distress because of the dissemination of these images, and that proceeding in his own name 'may exacerbate his emotional distress'"). Plaintiff filed her Complaint in hopes of ameliorating the harm stemming from her name and identity being associated with these depictions. Plaintiff attests that further association of her name with her nonconsensually disclosed nude images will exacerbate the mental anguish and severe emotional distress that Defendants' actions have already caused her. Declaration of Jane Doe, RE40, Page ID # 230-231.

Forcing Plaintiff to litigate under her real name compels the public disclosure of her identity in direct connection with deeply private and sensitive depictions. This goes far beyond mere embarrassment; it replicates and magnifies the very harm the lawsuit seeks to remedy—the unwanted public association of Plaintiff's identity with nonconsensual intimate imagery. *See, e.g., Willis*, 2023 WL 6907100, at *2 (granting pseudonymity because "revealing plaintiff's identity plainly will incur, and thus compound, the very harm [s]he already allegedly has suffered as a result of defendants' alleged disclosures."); *Doe v. Fellows*, 927 F.2d

608 (9th Cir. 1991) (noting the "logic in cooperating to provide anonymity when publicity would inflict the very injury the litigant seeks to avoid by resort to the courts.").

The District Court's denial of leave to proceed under pseudonym did not address Plaintiff's evidence of harm at all. Order, RE 45, Page ID # 259-262. This was reversible error. *Plaintiff B v. Francis*, 631 F.3d 1310, 1317-18 (reversing denial of pseudonymity when the District Court "g[ave] short shrift to the evidence regarding the amount of harm losing anonymity would cause the Plaintiffs.")

### 3. Plaintiff faces a credible risk of retaliatory harm.

Additionally, public disclosure risks severe retaliation and harm to Doe. *See Porter*, 370 F.3d at 560 (listing factors drawn from *Doe v. Stegall*, 653 F.2d at 180, 185-86, which included risk of harassment or reprisal). Because Roe's actions indicate he will continue to post additional intimate material and continue to attempt to link such material to Doe's real name and performer name as revenge for Doe ending their relationship, publicly identifying Doe here would substantially increase the risk of retaliatory conduct.

This threat is not speculative. Defendants only began distributing and threatening to distribute identifiable, intimate, nonconsensual depictions of Doe shortly after the end of Doe and Roe's romantic relationship, with the intent to harass and intimidate Doe. Complaint, RE 1, Page ID # 6,7, 8, 9. Declaration of Jane Doe, RE 40, Page ID # 230-231. Additionally, Roe's past actions, including publicly identifying Doe on the District Court's docket (*id.* at 6, 8. Order Granting Plaintiff's Emergency Motion to Seal, RE 52, Page ID # 350, 351. Order Provisionally Granting Plaintiff's Motion to Seal, RE 24, Page ID # 108, 109) demonstrate a credible likelihood of future harassment achieved through the purposeful linking of Doe's identity with explicit depictions in retaliation for ending her relationship with Roe. Public identification will embolden further harassment or retaliation, not only from Defendants but potentially from third parties who become aware of the explicit content associated with her name.

Furthermore, public association of Doe's real name with explicit content jeopardizes her livelihood and reputation, particularly given her performing career in family-friendly venues. (Complaint, RE 1, Page ID # 3). Plaintiff's status as an artist and as an adult does not strip her of

her privacy rights concerning nonconsensual intimate images. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974) (public figure status typically requires thrusting oneself into public controversy). Performing at family-friendly venues (Complaint, RE 1, Page ID # 3) heightens the potential harm from public association with explicit content. These considerations support allowing Plaintiff to litigate pseudonymously.

### 4. Pseudonymity does not prejudice Defendants or the public.

Anonymizing Doe's name only prevents the general public from knowing her true identity. Appellees undeniably know who she is; they possess and have distributed the material at issue. Defendants' Response in Opposition to Plaintiff's Motion to Proceed Under Pseudonym, RE 27, Page ID # 135-136. A protective order covering only the images is insufficient because the harm arises from the public linking Plaintiff's name to the controversy itself. *Willis*, 2023 WL 6907100, at *2; *Sutton*, 2025 WL 871656, at *5 ("though there may be 'alternative mechanisms' to protect litigants from publication of the images themselves, at least prior to trial, the use of pseudonyms is the only way to protect them from being publicly linked to the content of those images, which is what they 'desire[] to keep private and secret.'"). Mutual pseudonymity was

requested to balance the parties' interests and prevent indirect identification. *See Doe v. Unknown Party*, No. cv-24-00252-PHX-DLR, 2024 WL 492231, at *3 (D. Ariz. Feb. 7, 2024) (permitting mutual pseudonymity in a § 6851 case to prevent indirect identification); *accord Smith v. Doe*, No. 2:23-cv-05033-WLH-RAO, 2024 WL 4800083, at *1 (C.D. Cal. Sept. 9, 2024); *T.K. v. K.N.*, No. 23-cv-5441 (ARR)(LB), 2024 WL 4796621, at *5 (E.D.N.Y. June 26, 2024). Defendants can defend the suit without any disadvantage or inability to conduct discovery.

Additionally, publicly available details of this case—namely, the factual allegations and legal theories—remain in the public domain, ensuring transparency. Concealing Doe's real name strikes a fair balance between open proceedings and legitimate privacy needs in a case where a lack of privacy will directly cause Doe harm. Doe's allegations can be adversarially tested without revealing her identity.

### 5. Pseudonymity vindicates Congress's intent under § 6851.

Allowing Doe to proceed under a pseudonym reflects the express authorization by Congress for the district courts to grant pseudonymous relief under § 6851. 15 U.S.C. § 6851(b)(3)(B). In § 6851, Congress recognized what this Court long has—claims involving sexual matters,

abuse, or intimate content justify concealing a plaintiff's identity to avoid further distress or retribution. *Porter*, 370 F.3d at 560.

In revenge porn cases, the identification of the individual depicted is the harm. Failure to protect a plaintiff's identity both exacerbates and perpetuates that harm. Unlike the employment discrimination, commercial disputes, or sexual assault cases relied on by the District Court, a § 6851 claim centers on the very act of associating an individual's identity with nonconsensual intimate images.

In a § 6851 case, the cause of action only accrues when an "identifiable individual" is depicted—non-identifying disclosures of nude images are not actionable. § 6851(a)(5)(A). Without pseudonymity, the litigation process itself, if it ties the victim's name to the disclosures, becomes a vehicle for perpetuating the specific harm of identification that the statute contemplates. That is why Congress empowered courts, in a subparagraph of the statute's "Relief" paragraph entitled "Preservation of anonymity," to "grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym." § 6851(b)(3)(B). "[C]ourts have a strong interest in incentivizing plaintiffs to litigate their claims without threat of revictimization, and as a result, there is a strong public interest in

maintaining the confidentiality of Plaintiff's identity." *Doe v. Middlesex Cnty.*, No. cv 20-8625 (MAS) (ZNQ), 2021 WL 130480, at *5 (D.N.J. Jan. 14, 2021).

The purpose of § 6851 is to protect the privacy of victims whose intimate imagery is disclosed without their consent. As originally introduced, the bill was entitled "Intimate Imagery and Privacy Protection Act of 2020." S. 4994, 116th Cong. (2020). Requiring victims in § 6851 cases to exacerbate the violation of privacy in order to remediate or prevent the same kind of violation would be nonsensical. The Title IX, assault, and hostile work environment cases relied on by the District Court, while sensitive, do not involve a fact pattern in which the relief sought would be inherently mooted by the act of public filing. Nor did any of those cases involve a federal statute specifically recognizing the unique harm of identity disclosure tied to intimate images. Similarly, commercial cases concerning trade secrets and transfer pricing involve wholly different types of sensitivity than § 6851 cases. Competitive harm, rather than deeply personal and intimate exposure, is the primary concern in commercial cases. *See Mad Mobile, Inc. v. Meijer Great Lakes Limited Partnership*, No. 1:23-cv-1020, 2023 WL 8435143, at *3 (W.D.

Mich. Oct. 6, 2023) (denying motion to seal in theft of trade secrets action); *Perrigo Co. v. United States*, No. 1:17-cv-737 2018 WL 6684706, at *1–2 (W.D. Mich. 2018) (denying motion to seal in transfer pricing action where plaintiff alleged public disclosure would result in competitive harm); *Strike 3 Holdings LLC v. Doe*, No. 1:24-cv-1327 (W.D. Mich. 2025) (denying plaintiff's motion to file documents containing personally identifying information under seal in copyright action relating to adult entertainment films, where the pseudonymous party was an alleged pirate, not a depicted individual). A different analysis is appropriate when a victim whose nude images were nonconsensually disclosed in connection to her identity seeks to avoid revictimization. The unique nature of § 6851 claims present an entirely different and far greater basis for pseudonymous litigation than in these cases.

## III. The District Court's Error Requires Reversal or Vacatur on Each Issue

For the foregoing reasons, the District Court erred in denying Plaintiff Jane Doe permission to proceed under pseudonym, and such error constituted an abuse of discretion. This Court should thus reverse that determination and remand with instructions for the District Court to permit Plaintiff to proceed under pseudonym. The District Court also

denied Plaintiff's request for a protective order intended to maintain the confidentiality of her pseudonym and her motion for leave to file the summons under seal, without separate analysis. This Court can and should reverse those determinations as well—as both of those determinations materially affect Plaintiff's confidentiality under her pseudonym, reversal is warranted for the reasons stated herein. At least, this Court should vacate those determinations and remand for the District Court's consideration of the protective order request and motion for leave to file under seal in light of Plaintiff's entitlement to use a pseudonym and seek confidentiality-maintaining relief on the merits.

**CONCLUSION**

For the reasons set out above, the district court's May 19, 2025 order (Order Denying Plaintiff's Motion for File Under Seal, Motion to Proceed Under Pseudonym, Granting Defendant's Motion for a More Definite Statement, and Ordering Plaintiff to File an Amended Complaint, RE 45, Page ID # 259-262) misconstrued the governing statute, applied the wrong legal standard, and therefore constituted an abuse of discretion.

Accordingly, Jane Doe respectfully asks this Court to:

1. REVERSE the order denying her motion to proceed under pseudonym;

2. VACATE the orders denying a protective order and denying leave to file the summons under seal;

3. REMAND with instructions to permit Plaintiff to proceed under her chosen pseudonym, and to reconsider the protective order and sealing determinations in light of the pseudonymity authorization; and

4. AWARD such further relief as this Court deems just and proper, including taxable costs on appeal and the reasonable attorney's fees authorized by § 6851(b)(3)(C).

Respectfully submitted,

WADDEY ACHESON LLC

/s/ *Chanelle R. Acheson*
Chanelle R. Acheson
W. David Bridgers
G. Edward Powell III
Waddey Acheson LLC
1030 16th Avenue South
Nashville, TN 37205
Telephone: (615) 839-1100
*Counsel for Appellant Jane Doe*

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C), the Brief of Appellant Jane Doe uses a serif font that is proportionately spaced, has a typeface of 14 point and contains 9,925 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

# CERTIFICATE OF SERVICE

I, Chanelle R. Acheson, hereby certify that I electronically filed the foregoing Brief for Appellant Jane Doe with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on July 28, 2025, which will send notice of such filing to all registered CM/ECF users.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Chanelle R. Acheson*
Chanelle R. Acheson

# ADDENDUM: DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS PURSUANT TO 6TH CIR. R. 30(B)

| RECORD ENTRY NUMBER | DESCRIPTION OF ITEM | FILING DATE | PAGE ID # |
|---|---|---|---|
| 1 | Complaint | 3/4/2025 | 1-15 |
| 16 | Plaintiff's Motion to Proceed Under Pseudonym | 3/17/2025 | 50-51 |
| 20 | Defendant's Response in Opposition to Motion for Leave to File Documents Under Seal | 3/18/2025 | 62-71 |
| 22 | Plaintiff's Emergency Motion for Sealing | 3/18/2025 | 104-105 |
| 23 | Plaintiff's Supplemental Emergency Motion for Sealing | 3/18/2025 | 106-107 |
| 24 | Order Granting Motion | 3/18/2025 | 108-109 |
| 25 | Order Granting Motion | 3/18//2025 | 1110-111 |
| 27 | Defendants' Response in Opposition to Plaintiff's Motion to Proceed Under Pseudonym | 3/24/2025 | 135-136 |
| 40 | Declaration of Jane Doe | 5/8/2025 | 230-232 |
| 45 | Order Denying Motion for Leave to File Under Seal, Motion to Proceed Under Pseudonym, and Granting Motion for More Definite Statement | 5/19/2025 | 259-262 |
| 47 | Plaintiff's Notice of Appeal | 5/22/2025 | 270-271 |
| 48 | Motion for Partial Summary Judgment | 5/23/2025 | 272-274 |
| 49 | Defendants' Statement of Facts Supporting Motion for Partial Summary Judgment | 5/23/2025 | 275-282 |
| 50 | Defendants' Memorandum of Law in Support of their Motion for Partial Summary Judgment | 5/23/2025 | 329-341 |
| 51 | Plaintiff's Emergency Motion to Seal Defendants' Motion for Partial Summary Judgment and Supporting Documents | 5/23/2025 | 342-347 |
| 52 | Order Granting Emergency Motion to Seal | 5/24/2025 | 350-351 |
| 56 | Motion to Stay Proceedings Pending Appeal | 6/9/2025 | 359-361 |
| 71 | Order Granting Motion to Stay | 7/17/2025 | 469 |

# ADDENDUM: UNPUBLISHED DISPOSITIONS

*C.V. v. Carminucci,*
 No. 2:24-CV-2096 (JXN) (SDA), 2024 WL 3983007 (D.N.J.
 Aug. 28, 2024)..................................................................................60

*Doe v. BlueCross BlueShield of Illinois,*
 No. 2:25-cv-00608, 2025 WL 1648757 (S.D. Ohio June 11,
 2025)..................................................................................................64

*Doe v. FedEx Ground Package Sys., Inc.,*
 No. 3:21-cv-00395, 2021 WL 5041286 (M.D. Tenn. Oct. 29,
 2021)..................................................................................................68

*Doe v. Ghiorso,*
 No. 2:24-CV-57, 2024 WL 3511641 (S.D. Ga. July 23, 2024)................77

*Doe v. Maloit,*
 No. 24-CV-02383-PAB-KAS, 2025 WL 358134 (D. Colo. Jan.
 31, 2025) ...........................................................................................80

*Doe v. McCoy,*
 No. 1:23-CV-3169-MLB, 2024 WL 843908 (N.D. Ga. Feb. 28,
 2024)..................................................................................................85

*Doe v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee,*
 No. 3:20-cv-01023, 2022 WL 2293898 (M.D. Tenn. June 24,
 2022)..................................................................................................95

*Doe v. Middlesex Cnty.*, No. cv 20-8625 (MAS) (ZNQ), 2021 WL
 130480, at *5 (D.N.J. Jan. 14, 2021) .......................................................100

*Doe v. Parsons,*
 No. 2:24-CV-00075, 2024 WL 5705632,n.1 (M.D. Tenn. Dec.
 16, 2024)............................................................................................106

*Doe v. Rutgers Univ.*,
No. 2:18-cv-12952-KM-CLW, 2019 WL 1967021 (D.N.J. Apr.
30, 2019)..................................................................................................109

*Doe v. Serpa*,
No. 3:25-CV-0057-X, 2025 WL 975334 (N.D. Tex. Apr. 1,
2025)........................................................................................................114

*Doe v. Stevenson*,
No. 1:24-CV-02778, 2025 WL 1165660 (N.D. Ill. Apr. 3, 2025)...........118

*Doe v. Sutton*,
No. 4:23-cv-01312-SEP, 2025 WL 871656 (E.D. Mo. Mar. 20,
2025)........................................................................................................124

*Doe v. Unknown Party*,
No. cv-24-00252-PHX-DLR, 2024 WL 492231 (D. Ariz. Feb.
7, 2024) ...................................................................................................136

*Doe v. Willis*,
No. 23-CV-2171, 2023 WL 6907100 (D. Colo. Sept. 22, 2023).............141

*Doe v. Willis*,
No. 23-CV-02171-REB-SBP, 2023 WL 6903016, (D. Colo. Sept.
22, 2023).................................................................................................144

*Doe Williams v. Williams*,
No. 3:24-CV-165-DPJ-ASH, 2024 WL 2805642 (S.D. Miss.
May 31, 2024)..........................................................................................146

*Mad Mobile, Inc. v. Meijer Great Lakes Limited Partnership*,
No. 1:23-cv-1020, 2023 WL 8435143 (W.D. Mich. Oct. 6,
2023)........................................................................................................152

*Perrigo Co. v. United States*, 1:17-cv-737 2018 WL 6684706
(W.D. Mich. 2018) ...................................................................................156

58

*Roe v. Penns Grove-Carney's Point Reg'l Sch. Dist.*,
No. CV 24-10827 (CPO)(EAP), 2025 WL 723606 (D.N.J. Mar.
5, 2025) ............................................................................................159

*Smith v. Doe*,
No. 2:23-cv-05033-WLH-RAO, 2024 WL 4800083 (C.D. Cal.
Sept. 9, 2024) ...................................................................................164

*Strike 3 Holdings LLC v. Doe*, 2025 WL 1189759 (W.D. Mich.
2025)...................................................................................................168

*T.K. v. K.N.*,
No. 23-cv-5441 (ARR)(LB), 2024 WL 4796621 (E.D.N.Y. June
26, 2024)............................................................................................170

2024 WL 3983007
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

C.V., Plaintiff,
v.
Lauren CARMINUCCI, a/k/a Lauren Gensinger, Defendant.

Civil Action No. 2:24-cv-2096 (JXN) (SDA)
|
Signed August 27, 2024
|
Filed August 28, 2024

**Attorneys and Law Firms**

Daniel Szalkiewicz, Daniel Szalkiewicz & Associates, P.C., New York, NY, for Plaintiff.

David T. Ercolano, Fusco & Macaluso Partners, LLC, Passaic, NJ, for Defendant.

**OPINION**

STACEY D. ADAMS, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court is a Motion by Plaintiff C.V. ("Plaintiff") for Leave to Proceed Anonymously in this litigation under a pseudonym. [ECF No. 2]. The motion is unopposed. The Court decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. Having considered the parties' written submissions, and for the reasons set forth below, Plaintiff's Motion for a Protective Order is **GRANTED.**

**I. FACTUAL BACKGROUND/PROCEDURAL HISTORY**

Plaintiff's complaint alleges that, since 2018, she has been in a group chat with four women, including Defendant Lauren Carminucci a/k/a Lauren Gensinger ("Defendant"). The group chat discussed a variety of topics, which Plaintiff fees implies the women were friends. Plaintiff used this group chat for guidance and support regarding her decision to undergo a breast augmentation. Plaintiff sent photographs of her exposed breasts during the healing process to two members of the group chat, including Defendant. According to the Complaint, Defendant secretly disseminated one of these photos to multiple third parties with comments about Plaintiff's body and false statements about Plaintiff's family. This included comments by Defendant critiquing the quality of the procedure. Plaintiff was "devasted" as a result of the photos being shared without her consent and is fearful of what Defendant will do with her images in the future.

Plaintiff's Complaint asserts several claims against Defendant including violations of 15 U.S.C. § 6851, violations of New York's and New Jersey's nonconsensual pornography statutes,[1] as well as common law claims for intentional infliction of emotional distress and invasion of privacy. Plaintiff's Complaint was filed on March 8, 2024. Plaintiff filed this Motion for a Protective Order on the same date seeking to proceed under a pseudonym. [ECF No. 2]. Defendant requested an adjournment

of the motion cycle to respond, which was granted on March 27, 2024. That date has long since passed. However Defendant has not filed any opposition. Therefore, this application is deemed unopposed.

In the instant Motion, Plaintiff certifies that she seeks to proceed anonymously for several reasons. She does not want the docket "to become a weapon" which the Defendant can use to make allegations about her husband, broadcast her insecurities, and share the subject images. If forced to proceed with her true name, she "likely would not bring this lawsuit at all." [*Id.* at ¶ 27.] Defendant's conduct has made Plaintiff "question the goodness of all of my friends and whether it's ever safe to confide in or trust people." [*Id.* at ¶ 21.]

## II. DISCUSSION

Congress provided a civil action for the disclosure of persons' "intimate visual depictions" without their consent under 15 U.S.C. § 6851, as part of the Violence Against Women Act Reauthorization of 2022. *S.S. v. Collins*, No. 23-0892, 2024 U.S. Dist. LEXIS 135664, at *12, 2024 WL 3594350 (July 31, 2024). The statute provides that, in a civil action filed under this section, "the court may grant injunctive relief maintain the confidentiality of a plaintiff using a pseudonym." 15 U.S.C. § 6851(b)(3)(B).

**\*2** Federal Rule of Civil Procedure 10(a) states that "[t]he title of the complaint must name all the parties." "Generally, lawsuits are public events and the public has a legitimate interest in knowing the pertinent facts, including the true names of the parties." *Doe v. Morrisville*, 130 F.R.D. 612, 614 (E. D. Pa. 1990). "A plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings.' " *Doe v. Megless*, 654 F. 3d 404, 408 (3d Cir. 2011) (quoting *Does I Thru XXIII v. Adv. Textile Corp.*, 214 F. 3d 1058, 1067 (9th Cir. 2000)).

Despite this, courts have allowed parties to use fictitious names when necessary to protect privacy. *Morrisville*, 130 F.R.D. at 614. A party may proceed anonymously only "in exceptional cases." *Megless*, 654 F. 3d at 408. It is not enough that a plaintiff may suffer from "embarrassment or economic harm," rather, a plaintiff must show (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable. *Id.* (citations omitted). Severe harm has been found in a variety of circumstances, including in cases involving "abortion, birth control, transexuality [sic], mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Morrisville*, 130 F.R.D. at 614.

In *Megless*, the Third Circuit adopted a balancing test promulgated by *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. (E.D. Pa. 1997). That court included factors that weigh in favor of proceeding anonymously, and those which weigh against proceeding anonymously.[2] The factors in favor of anonymity include:

(1) the extent to which the identity of the litigant has been kept confidential;

(2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;

(3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity;

(4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities;

(5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and

(6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Megless*, 654 F. 3d at 409 (quoting *Provident Life*, 176 F.R.D. at 467).

The factors against anonymity include:

(1) the universal level of public interest in access to the identities of litigants;

(2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and

(3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (quoting *Provident Life*, 176 F.R.D. at 467-68)

This is list is not exhaustive, and the court must consider other "factors which the facts of the particular case implicate." *Provident Life*, 176 F.R.D. at 468.

Here, the Court finds good cause to allow Plaintiff to proceed under a pseudonym. First, Plaintiff's lawsuit seeks relief under 15 U.S.C. § 6851, which expressly provides that a plaintiff may proceed in litigation using a pseudonym. Second, even if the statute did not provide for such protection, the Court is also satisfied that the *Provident Life* Factors weigh in favor of proceeding under a pseudonym.

**\*3** As to the first factor, Plaintiff has kept her identity confidential by not disclosing it in any court filings. *See Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (granting plaintiff permission to proceed anonymously in light of the fact that "plaintiff ha[d] taken steps to keep [plaintiff's] identity confidential"). Accordingly, this factor weighs in favor of proceeding under a pseudonym.

As to the second factor, Plaintiff seeks to avoid disclosure because (i) the lawsuit concerns the disclosure of intimate photographs of Plaintiff's breasts that she does not want made a part of the public record, and (ii) she does not want the public knowledge of this lawsuit to be weaponized against her by Defendant, causing further harm. *See Doe v. Oshrin*, 299 F.R.D. 100, 103-04 (D.N.J. 2014) (finding this factor weighed in favor of anonymity when plaintiff asserted the disclosure of her identity would "exacerbate the pain and embarrassment that Jane Doe suffers and will suffer for the rest of her life.") Plaintiff certified that she still feels violated by Defendant's alleged dissemination of her photos. Public identification of Plaintiff in court filings would exacerbate the situation, given that one of her claims is for invasion of privacy. Accordingly, this factor weighs in favor of proceeding under a pseudonym.

As to the third and fourth factors, there is a weak public interest in knowing Plaintiff's identity. The allegations in her complaint "require the Court to resolve primarily legal issues, and then to address whether, and to what extent, Plaintiff suffered specific damages." *Oshrin*, 299 F.R.D. at 104; *see also Provident Life*, 176 F.R.D. at 468 (noting that the use of a pseudonym would not interfere with the public's right to follow the proceedings). Because there is a weak public interest in knowing Plaintiff's identity, this factor weighs in favor of proceeding under a pseudonym.

As to the fifth factor, Plaintiff certifies that she will not pursue the case if she must be publicly identified. Finally, as to the sixth factor, Plaintiff does not appear to present, nor does Defendant present in opposition, ulterior motives for seeking leave to proceed under a pseudonym. Accordingly, all of the *Provident Life* factors in favor of anonymity weigh in favor of Plaintiff proceeding under a pseudonym.

Conversely, only the first factor of the *Provident Life* factors weighs against proceeding under a pseudonym. As to the first factor, "[t]here is a universal public interest in access to the identities of litigants" and "open judicial proceedings." *Megless*, 654 F. 3d at 411. This interest exists in virtually every case and, therefore, is almost always satisfied. However, an affirmative showing on the first factor, by itself, does not outweigh the balancing factors in favor of proceeding anonymously. *Doe v. N.J. State Prison*, No. 24-8290, 2024 U.S. Dist. LEXIS 141785 at *9, 2024 WL 3738538 (Aug. 9, 2024); *see also Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 551 (D.N.J. 2006) ("The only factor against Plaintiff's use of a pseudonym is the public's general interest in having access to the identity of litigants. However, this interest exists in some respect in all litigation, and does not outweigh the strength of the factors in favor of Plaintiff's use of a pseudonym.") Plaintiff is not a public figure and there is no strong interest in knowing her identity. *See N.J. State Prison*, 2024 U.S. Dist. LEXIS 141785 at *10, 2024 WL 3738538 (court did not find the second factor weighed against anonymity because it did not appear the public had an unusually strong interest in knowing the identity of a party who was a non-public figure.)

**\*4** The exceptional cases provided by *Morrisville* including abortion, mental health, and homosexuality are deeply personal. 130 F.R.D. at 614. The alleged nonconsensual dissemination of sexually intimate photos certainly falls within this deeply

personal category of cases, which warrants the Court to grant Plaintiff's request to appear under a pseudonym.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Proceed Anonymously is **GRANTED.** Plaintiff is permitted to proceed in this action under the pseudonym, C.V.

### All Citations

Slip Copy, 2024 WL 3983007

### Footnotes

[1]     *N.Y. C.L.S.* § 52-b and *N.J.S.A.* 2A:58D-1, respectively.

[2]     Hereinafter, "the *Provident Life* Factors."

       © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1648757
Only the Westlaw citation is currently available.
United States District Court, S.D. Ohio, Eastern Division.

Jane DOE, et al., Plaintiffs,
v.
BLUECROSS BLUESHIELD OF ILLINOIS, et al., Defendants.

Civil Action 2:25-cv-00608
|
Signed June 11, 2025

**Attorneys and Law Firms**

Tony C. Merry, Law Offices of Tony C. Merry LLC, Worthington, OH, for Plaintiffs.

**OPINION & ORDER**

KIMBERLY A. JOLSON, UNITED STATES MAGISTRATE JUDGE

**\*1** This matter is before the Court on Plaintiffs' Motion to Proceed Under Pseudonym. (Doc. 2). For the following reasons, the Motion is **GRANTED in part and DENIED in part**. Plaintiffs are **ORDERED** to refile their Complaint, identifying them by their first names and last initials, **within seven (7) days**.

**I. BACKGROUND**

Briefly, Plaintiffs' claims arise under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 *et seq.* (Doc. 1). As alleged, Plaintiff Jane Doe is an employe of AT&T Services, Inc. and is a participant in AT&T Umbrella Benefit Plan No. 3 (the "Plan"). (*Id.* at ¶ 1). Her dependent son, John Doe, is a beneficiary of the Plan. (*Id.* at ¶ 2). He suffers from and has been treated for mental illness for many years. (*Id.* at ¶ 9). In 2024, John Doe's condition deteriorated, and doctors recommended in-patient treatment. (*Id.* at ¶¶ 9–10 (also stating John Doe continues to be treated in some capacity for mental illness today)). Jane Doe and Defendant BlueCross BlueShield of Illinois ("BCBSI"), the claims administrator for medical benefits provided to participants and beneficiaries of the Plan, evaluated treatment facilities together. (*Id.* at ¶¶ 5, 11). Jane Doe concluded treatment at Linder Center of Hope in Cincinnati ("LCH") was the best option. (*Id.* at ¶ 11).

LCH "operates as a private pay facility and does not accept payments from insurers." (*Id.* at ¶ 12 (alleging patients pay fees in advance then seek reimbursement from their insurers or benefit plans)). It is also an out-of-network provider under the Plan. (*Id.* ¶ 13). BCBSI representatives told Jane Doe that John Doe's treatment would be deemed medically necessary, and Jane Doe's out-of-pocket cost would not exceed $15,000. (*Id.* at ¶¶ 14–17). Ultimately, John Doe's treatment at LCH lasted less than four weeks. (*Id.* at ¶ 18). The treatment cost $47,200, which Jane Doe paid in full. (*Id.* at ¶¶ 19–20). When Jane Doe submitted the LCH bill for reimbursement, BCBSI reimbursed her for "far less than the amounts it had promised." (*Id.* at ¶¶ 21–22). Jane Doe appealed the amount to BCBSI, but her appeal was denied. (*Id.* at ¶¶ 23–26).

Plaintiffs now seek, among other things, payment of the out-of-pocket costs they incurred in excess of the Plan's out-of-pocket

limitation. (*Id.* at 9; *see also id.* at ¶¶ 27–65 (bringing claims of equitable estoppel, unjust enrichment, breach of fiduciary duty, and the Mental Health Parity Act, 29 U.S.C. § 1185a)). Plaintiffs also seek to proceed under pseudonyms. (Doc. 2). The Court considers that request here.

## II. STANDARD

Generally, a complaint must state the names of all the parties. Fed. R. Civ. P. 10(a). But, in certain circumstances, the Court "may excuse [parties] from identifying themselves." *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). "In exercising its discretion, a court must balance the public's common law right of access to court proceedings against the interests of litigants in nondisclosure." *Malibu Media, LLC v. Doe*, No. 2:15-CV-2519, 2015 WL 12698036, at *1 (S.D. Ohio Aug. 26, 2015) (citing *In re Polemar Constr. Ltd. P'ship*, 23 F. App'x. 423, 425 (6th Cir. 2001)). To determine whether a party's privacy interests outweigh the presumption in favor of openness, the Sixth Circuit directs district courts to consider the following:

> **\*2** (1) whether the [party] seeking anonymity [is] suing to challenge governmental activity; (2) whether prosecution of the suit will compel the [party] to disclose information 'of the utmost intimacy'; (3) whether the litigation compels [a party] to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the [party is a child].

*Porter*, 370 F.3d at 560 (citing *Doe v. Stegall*, 653 F.2d 180, 185-86 (5th Cir. 1981)). "It is also relevant to consider whether the defendants are being forced to proceed with insufficient information to present their arguments against the plaintiff's case." *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005).

## III. DISCUSSION

According to Plaintiffs, John Doe's substantial privacy interests outweigh the presumption of disclosure of his identity. (Doc. 2). And by extension, his mother, as "John Doe's privacy interests are inextricably intertwined with his mother's." (*Id.* at 4). Plaintiffs cite the absence of prejudice, as well as the second and fourth *Porter* factors, to support their Motion. The Court considers the arguments in reverse.

Beginning with the fourth *Porter* factor, "[p]laintiffs who are children are especially vulnerable and courts routinely grant them 'a heightened protection' " via grants of pseudonymity. *Doe v. Southfield Pub. Sch.*, No. 24-10760, 2024 WL 1526084, at *1 (E.D. Mich. Apr. 8, 2024); *see also Doe v. Mechanicsburg Sch. Bd. of Educ.*, 518 F. Supp. 3d 1024, 1027 (S.D. Ohio 2021) ("Courts frequently grant protective orders to minors who challenge governmental conduct."). The same is true of parents of minor children when the child could be identified after revelation of a parent's identity. *Southfield Pub. Sch.*, 2024 WL 1526084 at *2.

Plaintiffs concede that John Doe was not a child at the time of his hospitalization at LCH—he was 19 years old. (Doc. 2 at 3). Still, Plaintiffs argue that at the time, "he was likewise not yet fully an adult." (*Id.* (citing laws restricting the sale of cigarettes, alcohol, and firearms to people under the age of 21)). Though a creative argument, the fact remains that John Doe was not a child during his hospitalization nor when he initiated this lawsuit. Plaintiffs do not provide any caselaw saying the Court may consider this factor met when the plaintiff at issue is not, in fact, a child. Therefore, this factor does not weigh in Plaintiffs' favor.

The second *Porter* factor—whether the litigation will compel Plaintiffs to disclose information of the utmost intimacy—requires more nuanced deliberation. Courts in this Circuit have noted examples of information of the utmost privacy concern include "matters of a sensitive and highly personal nature, such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families." *Doe v. UNUM Life Ins. Co., of Am.*, No. 3:22-CV-212-DCLC-DCP, 2022 WL

20686965, at *3 (E.D. Tenn. Sept. 20, 2022) (quoting *G.E.G. v. Shinseki*, No. 1:10-CV-1124, 2012 WL 381589, at *2 (W.D. Mich. Feb. 6, 2012)). While none of those are at play here, Plaintiffs argue that John Doe's "life-threatening mental health condition" and hospitalization is information of the utmost intimacy. (Doc. 2 at 3). And disclosing either Doe's identity would result in stigmatization of both John Doe and other litigants with mental illnesses. (*Id.*).

**\*3** Up front, Plaintiffs' argument does not fit neatly into the confines of the second *Porter* factor. Stigmatization of mental illness on a grand scale does not necessarily translate to John Doe's illness being "information of the utmost intimacy." And in this Circuit, stigmatization of a mental illness, even on an individual level, has generally not been enough to push the needle in analogous circumstances. *Cf. Doe v. Carson*, No. 19-1566, 2020 WL 2611189, at *2 (6th Cir. May 6, 2020) (upholding a district court's finding that "concerns about stigma and scrutiny from prospective employers do not involve 'information of the utmost intimacy' " in a case brought under the Americans with Disabilities Act); *Koe v. Univ. Hosps. Health Sys., Inc.*, No. 22-3952, 2024 WL 1048184, at *2 (6th Cir. Mar. 8, 2024); *see also UNUM Life Ins. Co., of Am.*, 2022 WL 20686965, at *3 (noting plaintiffs must generally justify pseudonym requests with more than "generalized and unspecific fears.").

At the same time, the Court does not discount that in very limited cases, certain factual and legal allegations related to a party's medical history implicate weighty privacy concerns. For example, citing "significant privacy concerns," this Court allows claimants filing cases challenging a decision of the Commissioner of Social Security—which, by nature, involve detailed discussion of sensitive medical information—under their first name and last initial only. S.D. Ohio General Order 22-01. Those same "significant privacy concerns" debatably exist here, where John Doe's history of "life-threatening" mental illness and circumstances surrounding his in-patient treatment will undoubtedly be at the forefront of this litigation. *Cf. Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) (comparing an ERISA plaintiff with severe, treatment-resistant bipolar disorder to litigants who receive abortion care or an HIV diagnosis); *Smith v. United Healthcare Ins. Co.*, No. 18-CV-06336-HSG, 2019 WL 3238918, at *7 (N.D. Cal. July 18, 2019) (allowing an ERISA plaintiff to proceed anonymously "to preserve her privacy in the sensitive area of her mental health diagnosis and treatment").

What's more, the *Porter* factors are not exclusive considerations. *See, e.g.*, *Doe v. Fedex Ground Package Sys., Inc.*, No. 3:21-CV-00395, 2021 WL 5041286, at * (M.D. Tenn. Oct. 29, 2021); *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 694 F. Supp. 3d 1040, 1043 (M.D. Tenn. 2023); *Plaintiff v. Wayne State Univ.*, No. 20-CV-11718, 2021 WL 243155, at *7 (E.D. Mich. Jan. 29, 2021). To this end, the Court also finds relevant the public's interest in "ensuring that cases like [John Doe's] are adjudicated and the rights of mental illness sufferers are represented fairly." *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997) (warning that "unscrupulous insurance companies may be encouraged to deny valid claims with the expectation that [individuals with mental illness] will not pursue their rights in court" should the plaintiff be denied leave to proceed under a pseudonym). The Court also considers that Defendants likely will not suffer any prejudice if Plaintiffs are allowed to proceed under a pseudonym because, by their own admission, Plaintiffs would promptly identify themselves to Defendants' counsel. (Doc. 2 at 4). *See Citizens for a Strong Ohio*, 123 F. App'x at 636.

On balance, this case presents a close call. Plaintiffs arguably have demonstrated only one *Porter* factor. But also weighing in their favor is the public's interest in the adjudication of this case and the lack of prejudice to Defendants. In the end, the Court finds a middle ground sufficiently balances Plaintiffs' privacy interests with the presumption in favor of open judicial proceedings. While they may not proceed as "Jane and John Doe," Plaintiffs will be permitted to proceed under their first names and last initial. *Cf. Kurt W. v. Gartner, Inc.*, No. 2:24-CV-00504, 2025 WL 589977 (D. Utah Feb. 24, 2025). The Court underscores that this decision strikes the appropriate balance between openness and privacy for this particular ERISA action. Not all ERISA actions will present the same factual or legal scenario justifying even the partial relief the Court allows here. *Cf. UNUM Life Ins. Co., of Am.*, 2022 WL 20686965, at *4 (noting that even if the Court were to consider out of circuit precedent allowing an ERISA plaintiff to proceed under a pseudonym, the plaintiff had not shown "her fears regarding her injuries carry similar stigma as someone with psychiatric disorders."). In other words, this opinion offers a measured outcome justified by the relevant considerations—not a one-size-fits-all solution.

**\*4** Plaintiffs are **ORDERED** to refile their Complaint which conforms to this Order **within the next seven (7) days**. Additionally, all parties to this action are **GRANTED** leave to, in any filing in this case, redact Plaintiffs' names so only their first names and last initials are revealed. Further, because Defendants have not been served, should they wish the Court to reevaluate this decision, they may file a brief to that end **within fourteen (14) days** of counsel entering an appearance.

As a final note, the Court reminds Plaintiffs of the other avenues available to them to address additional privacy concerns, such

as seeking protective orders or moving to seal filings from the public docket under *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016).

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Proceed Under Pseudonym (Doc. 2) is **GRANTED in part and DENIED in part**. Plaintiffs are **ORDERED** to refile their Complaint, identifying them by their first names and last initials, **within seven (7) days**.

**All Citations**

Slip Copy, 2025 WL 1648757

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 5041286
Only the Westlaw citation is currently available.
United States District Court, M.D. Tennessee, Nashville Division.

Jane DOE and JAne Roe, on behalf of themselves and all similarly situated employees and a class of employees,
Plaintiffs,
v.
FEDEX GROUND PACKAGE SYSTEM, INC. and Allied Facility Care, LLC, Defendants.

Case No. 3:21-cv-00395
|
Filed 10/29/2021

**Attorneys and Law Firms**

Charles P. Yezbak, III, N. Chase Teeples, Yezbak Law Offices, Nashville, TN, for Plaintiffs.

Wendy Lynne Longmire, Ortale Kelley Law Firm, Charles K. Grant, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Nashville, TN, Zachary S. Cate, Brown Pruitt Wambsganss Dean Forman & Moore, P.C., Southlake, TX, Sharonda Childs Fancher, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., Birmingham, AL, for Defendants.

ALETA A. TRAUGER, United States District Judge

**MEMORANDUM AND ORDER**

**\*1** Before the court is the Motion to Proceed Pseudonymously, to Permit Filing Unredacted Consent Forms Under Seal, and for Entry of Protective Order ("Motion to Proceed Pseudonymously") (Doc. No. 25), filed by the named plaintiffs in this case, identified so far only as Jane Doe and Jane Roe. For the reasons set forth herein, the motion will be granted as to Jane Doe but denied as to Jane Roe.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

**A. The Parties and Claims**

The plaintiffs are individuals who reside in Davidson County, Tennessee and who currently work, or formerly worked, for defendants Allied Facility Care, LLC ("Allied") and FedEx Ground Package System, Inc. ("FedEx"). (Doc. No. 6 ¶¶ 12, 13, 75–76, 121.) FedEx contracts with Allied for the performance of cleaning services at FedEx facilities in Nashville (the "Nashville facility") and Mount Juliet, Tennessee (the "Mount Juliet facility") (collectively, the "FedEx facilities"), and the plaintiffs worked for Allied on the premises of the FedEx facilities. (*Id.* ¶¶ 32, 38.)

The plaintiffs filed their original Complaint, naming only Allied as a defendant, on May 17, 2021; they filed their Amended Complaint (Doc. No. 6), naming both Allied and FedEx as defendants, on June 1, 2021. In the Amended Complaint, the plaintiffs assert a collective-action claim, on behalf of themselves and other similarly situated employees, against the defendants

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, for failure to pay overtime wages. (Doc. No. 6, at 18 (Count I).) They also bring a number of claims on behalf of themselves and a putative Rule 23 class comprised of "[f]oreign-born, Hispanic women who worked for Defendants at the FedEx...facilities since May 17, 2017" (*id.* at 16 ¶ 152), including claims for sexual harassment, retaliation, national origin discrimination, and race discrimination in violation of the Tennessee Human Rights Act ("THRA") and 42 U.S.C. § 1981 (Doc. No. 6 (Counts II–V)). Finally, they assert a class-action negligence claim under Tennessee common law against FedEx only. (*Id.* (Count VI).) The plaintiffs filed notices of Consent to Sue under the FLSA with their original Complaint, from which their true names have been redacted. (Doc. Nos. 1-1, 1-2.)

The plaintiffs' claims under the THRA, § 1981, and Tennessee common law are premised upon allegations that they and other Hispanic female employees of the defendants suffered "egregious and outrageous sexual assault and sexual harassment and retaliation, as well as national origin discrimination," by their supervisor Samuel Perez. (Doc. No 6 ¶ 1.) The plaintiffs allege that the defendants are liable for Perez's intentional and criminal assaults, because Perez has been employed by Allied and has supervised the cleaning staff assigned to work at the FedEx facilities since 2016; Perez was first accused of assault and offensive or provocative contact in November 2016 and charged with assault and offensive or provocative contact in September 2017; and Allied and FedEx management-level employees, including Allied manager John Ballenger, knew of these charges and knew or should have known of Perez's continuing assaults on Allied/FedEx employees. (Doc. No. 6 ¶¶ 42–47.) Perez's employment and supervisory role over cleaning staff at FedEx facilities nonetheless continued after the 2016 criminal allegations. (*Id.* ¶ 49.) Perez was allowed to continue advertising, recruiting, interviewing, hiring, supervising, and disciplining individuals hired to perform cleaning services at the FedEx facilities. (*Id.* ¶ 50.)

**\*2** Perez specifically advertised open positions in Spanish on social media, seeking Hispanic women to fill the positions. (*Id.* ¶ 51.) Applicants were instructed to appear for in-person interviews with him at the FedEx facilities, and Perez interviewed each of the named plaintiffs and similarly situated women, without supervision from Allied or FedEx representatives. (*Id.* ¶ 62.) Perez "utilizes the fears and the reticence to report of foreign-born, Hispanic women liked Named Plaintiffs to intimidate them into remaining silent about, and to groom them to accept, his sexual assaults and sexual harassment." (*Id.* ¶ 52.) "In the recruiting process and the early stages of his supervising each of the Named Plaintiffs, and other similarly situated women, Perez began to groom them to accept his sexual advances." (*Id.* ¶ 53.) He then harassed and intimidated the women he hired by, among other things, vetting them to see how badly they needed a job, repeatedly asking them to go out with him, offering to reduce their workloads if they would go out with him, threatening to increase their workloads or fire them if they would not go out with him, threatening to write them up if they did not go out with him, actually writing them up as punishment for not going out with him, and holding disciplinary write-ups and the possibility of termination over their heads to coerce them to have sex with him. (*Id.* ¶ 54.)

The plaintiffs allege generally that Perez "targets foreign-born, Hispanic women who are similarly situated to Named Plaintiffs because he believes they are more vulnerable and more easily exploitable than workers born in the United States and workers who are not Hispanic and that they will tolerate his egregious and outrageous sexual assault, harassment, and rape without reporting it to their employers or to authorities." (*Id.* ¶ 131.)

### B. Perez's Treatment of Doe and Roe

The Amended Complaint alleges that, when Jane Doe was hired to work at the Mount Juliet facility in October 2019, Perez interviewed and hired her. During the interview, he asked inappropriate questions and also told her that he did not want gossipers and would write her up if he saw her talking to others. (Doc. No. 6 ¶ 78.) Shortly after she was hired, Perez issued Doe two unwarranted write-ups and told her he would not turn them in if she "obeyed his instructions." (*Id.* ¶ 87.) He also told her he was the supervisor in control and that Doe had to do as he said if she wanted to keep her job. (*Id.* ¶ 88.) He told her that, if she "accept[ed] his conditions," including that she have sex with him "whenever [he] want[ed] it," she would have permanent status. (*Id.* ¶ 89.) He told her he had control over whether she received the hourly rate promised during her interview, $12.50, or a lower rate of $10.00 per hour. (*Id.* ¶ 90.) He then sexually fondled her, and he later began repeatedly taking her to isolated areas of the Mount Juliet facility to fondle her. On at least four occasions, he took her to a nearby hotel during work hours, where he raped her and forced her to perform sexual acts against her will. (*Id.* ¶¶ 92–96.)

Perez terminated Doe's employment the first time she refused to comply with his sexual demands. (*Id.* ¶ 97.) In order to get

her paycheck, Doe asked Perez for the contact information for HR. Perez refused to give her the number but offered her her job back. She went back to work. In the Spring of 2020, Doe was transferred to the Nashville facility. Sometime after June 2020, Perez raped Doe in the drivers' shower room at the Nashville facility.

Perez also hired Jane Roe to work at the Mount Juliet facility in October 2019. (*Id.* ¶ 121.) Doe and Roe knew each other and rode to work together. (*Id.* ¶ 122.) Roe alleges that Perez repeatedly asked her to go out with him and repeatedly sexually assaulted her by groping her, repeatedly propositioned her, including by offering her money in exchange for sex, and, when she refused to accede to his demands for sex, punished her by increasing her workload and assigning her more physically demanding and less desirable jobs. (*Id.* ¶¶ 123–29.) In April 2020, he intentionally walked in on Roe while she was in the shower area and sexually assaulted her by "groping her private areas." (*Id.* ¶ 130.)

Doe and Roe eventually went together to report the false discipline and sexual harassment to FedEx Maintenance Manager Jose Yanting and to ask to whom else they should report Perez's conduct. (*Id.* ¶¶ 96, 110–11.) Doe and Roe told Yanting that many women had experienced abuse at Perez's hands. (*Id.* ¶ 112.)

**\*3** On or around June 9, 2020, Doe also told Allied manager John Ballenger that Perez had raped her and that he was abusing and exploiting other women. (*Id.* ¶¶ 113, 116.) Yanting also called Allied managers Tim Davis and John Ballenger and told them he did not want Perez to remain at Allied and that these were not the first reports he had received about Perez's conduct. (*Id.* ¶ 114.) Perez was not fired; he was instead temporarily reassigned to the Nashville facility. (*Id.* ¶¶ 117–18.)

According to Doe's Declaration, Perez's actions caused her "severe emotional trauma," from which she is still suffering psychological and emotional pain. (Doc. No. 28 ¶ 4.) She takes medication daily to treat depression and PTSD, but her trauma is so severe that she has hallucinated that Perez is in the room with her during treatment sessions, and she is afraid that he may harm her again. (*Id.*) It is very difficult for her to talk about what happened, and doing so makes her feel "very bad and embarrassed." (*Id.* ¶ 5.) Her lawyers and psychologists are the only people who know the details about what happened to her. (*Id.*) She has told her partner some of what happened, but not the specifics. She is afraid that, if the details of what Perez did to her became public, it would damage her relationship with her partner, his family, and her family. (*Id.* ¶ 6.) She wants to remain anonymous, because she does "not want to have to worry for the rest of [her] life that the people [she] meet[s] or interact[s] with know all about what happened to [her]." (*Id.* ¶ 7.) She states that, if her name came out, "it would be like going through it all over again" and that, if she cannot proceed under a pseudonym, she will "consider dropping the lawsuit due to the trauma and embarrassment that would follow [her] name being made public." (*Id.* ¶ 8.)

Jane Roe attests in her own Declaration that she was hesitant to pursue this lawsuit, because it is humiliating and embarrassing for her to have been a victim of sexual assault. She has not told many people about it, and she wants to "control who knows that [she] was sexually assaulted." (Doc. No. 29 ¶¶ 4–5.) The only people who know in detail what happened are her attorneys. Roe does not allege that she takes medication or that she has sought psychiatric treatment in connection with the sexual assaults she experienced. She simply states that she does not want her family members and her young daughter to know what happened and that it would "really upset" her for her daughter to find out. (*Id.* ¶ 6.) She states that she would be "uncomfortable" pursuing this case if she is not permitted to remain anonymous, because "it would be embarrassing" for her. (*Id.* ¶ 7.) She does not indicate that she would drop, or consider dropping, her claims if she is not allowed to proceed under a pseudonym.

### C. The Present Motion

After the defendants answered the Amended Complaint, the plaintiffs filed their present motion and supporting Memorandum of Law, seeking the court's authorization to proceed pseudonymously and the entry of a protective order. (*See* Doc. Nos. 25, 25-1, 26.) The motion is supported by the Declarations of Jane Doe and Jane Roe.[i] The plaintiffs argue generally that they should be permitted to pursue this case under pseudonyms, because prosecution of this suit will require the disclosure of information of the "utmost intimacy"; they would be unnecessarily traumatized if required to pursue the case under their real names; and the defendants are already aware of the plaintiffs' true identities and will not be prejudiced by their pursuing their claims pseudonymously.

**\*4** The defendants filed separate Responses in Opposition to the Motion (Doc. Nos. 43, 44), both raising similar arguments:

(1) that the fact that the case involves sexual assault and, consequently, the "potential for embarrassment or public humiliation," standing alone, does not justify a request for anonymity (Doc. No. 43, at 3 (quoting *Ramsbottom v. Ashton*, No. 3:21-cv-00272, 2021WL 2651188, at *4 (M.D. Tenn. June 28, 2021) (Trauger, J.)); (2) permitting the plaintiffs to proceed under pseudonyms would be "grossly prejudicial" to the defendants, particularly because the proposed Protective Order would "hinder [the defendants] from even disclosing Plaintiffs' names to any witnesses or entities in the preparation of [their] defense," from "conduct[ing] fact investigations or routine discovery without the Plaintiffs' blessing as to whether the individual or entity may be informed of the Plaintiffs' identities," and from "disclosing any 'personally identifying information, or any other sensitive information' they obtain about Plaintiffs to 'any other party or entity' absent Court order," and would require them to disclose their attorney work-product and litigation strategies (*id.* at 6); (3) there is a compelling public interest in open and transparent litigation; (4) the plaintiffs have not established compelling grounds for a "blanket protective order," particularly in light of their collective and class claims (*id.* at 7); (5) the additional factors identified by the plaintiffs—that the plaintiffs suffered severe emotional trauma and that the defendants are already aware of their identities—does not shift the balance of the relevant factors in favor of the plaintiffs' request for anonymity (Doc. No. 44, at 5); and (6) fairness dictates that the plaintiffs be required to disclose their identities, in light of the fact that their allegations "strike directly" at the defendants' and individual employees' reputations (*id.* at 7).[2]

The plaintiffs filed a Reply Brief (Doc. No. 47) arguing that the defendants fail to show they would suffer any concrete prejudice if the plaintiffs are allowed to proceed pseudonymously. In addition, along with their Reply, the plaintiffs submitted a revised Proposed Protective Order that, they argue, cures any possible prejudice raised in the defendants' original Responses. The revised proposed Protective Order (Doc. No. 47-1) would (1) authorize Jane Doe and Jane Roe to proceed pseudonymously in public filings, while permitting them to redact their names and personally identifying information from any documents filed publicly in the court; (2) permit them to file under seal unredacted versions of the same documents, including their consent forms, and require them to provide to the defendants unredacted copies of all documents filed under seal; (3) require the defendants to refrain from filing unredacted documents containing the plaintiffs' names or identifying information and to file under seal the unredacted version of any such documents; and (4) generally authorize both parties to disclose the plaintiffs' identities to third parties, "if counsel for the parties believe in good faith that disclosure of the identities of Plaintiffs to third parties, including other entities, is necessary during discovery to investigate Plaintiffs' claims and Defendants' defenses and to fulfill their discovery obligations," so long as the third party is apprised of the provisions of the Protective Order. (Doc. No. 47-1 ¶ 8.) The revised proposed Protective Order requires either party to notify the other party of a disclosure of protected information to third parties, unless doing so will "reveal attorney work product." (*Id.*)

Second, the plaintiffs argue that they seek to protect themselves from the "secondary trauma of having their names publicly identified with the rapes and sexual assaults they suffered" and that this is different from merely trying to avoid "re-triggering the symptoms of trauma that would be an inherent risk" of pursuing this litigation. (*Id.* at 1–2.) In support of this argument, the plaintiffs submit the Declaration of Emily B. Simpson, Clinical Co-Director of the Sexual Assault Center of Nashville. Third, the plaintiffs argue that this case is distinguishable from those involving well known public figures, as were involved in *Ramsbottom* and *Rapp v. Fowler*, No. 20-CV-9586 (LAK), 2021 WL 1738349 (S.D.N.Y. May 3, 2021), an opinion on which this court relied significantly in reaching its conclusion in *Ramsbottom* to deny the plaintiff's motion to proceed under a pseudonym.

**\*5** FedEx filed a Sur-Reply (Doc. No. 52), in which Allied joined (Doc. No. 53), arguing that the court should disregard new evidence submitted with the plaintiffs' Reply, including the Simpson Declaration, particularly in light of the fact that Simpson did not meet or treat the plaintiffs.

## II. STANDARD OF REVIEW

The "general rule [is] that a complaint *must* state the names of the parties." *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005) (citing Fed. R. Civ. P. 10(a)); *see also Smith v. S.E.C.*, 129 F.3d 356, 359 n.1 (6th Cir. 1997) (noting the "strong presumption that court files will be open to the public"). This rule has "constitutional overtones," as a plaintiff's use of a pseudonym "runs afoul of the public's common law right of access to judicial proceedings, a right that is supported by the First Amendment...." *Doe v. Del Rio*, 241 F.R.D. 154, 156 (S.D.N.Y. 2006) (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000)) (internal quotation marks omitted); *see also Doe v Kamehameha Schs./Bernice Pauahi*

*Bishop Est.*, 596 F3d 1036, 1042 (9th Cir. 2010) ("The normal presumption... that parties must use their real names... is loosely related to the public's right to open courts and the right of private individuals to confront their accusers." (internal citations omitted)).

In *Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004), the Sixth Circuit identified a non-exhaustive list of factors (to which the parties refer as the "*Porter* factors") that courts may consider in determining whether "special circumstances" exist to justify an exception to the rule, including:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information of the utmost intimacy; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and

(4) whether the plaintiffs are children. *Id.* at 560 (citing *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981) (internal quotation marks omitted)). The court may exercise its discretion to consider other factors that may be relevant in a particular case, keeping in mind that the applicable standard is whether "a plaintiff's privacy interests *substantially outweigh* the presumption of open judicial proceedings." *Id.* (emphasis added). Other factors that may be considered include whether the plaintiff would risk suffering injury if identified and whether the defendant would be prejudiced by the plaintiff's proceeding anonymously. *See, e.g.*, *Plaintiff v. Wayne State Univ.*, No. 20-CV-11718, 2021 WL 243155, at *7 (E.D. Mich. Jan. 29, 2021); *Doe v. City of Detroit*, No. 18-cv-11295, 2018 WL 3434345, at *1 (E.D. Mich. Jul. 17, 2018).

## III. DISCUSSION

### A. The "*Porter*" Factors

The plaintiffs here do not challenge governmental activity; the litigation will not compel them to disclose an intention to violate the law, nor is there any suggestion that the plaintiffs are in this country illegally; and neither plaintiff is a minor. These three *Porter* factors, therefore, weigh in favor of requiring the plaintiffs to proceed under their real names.

The remaining *Porter* factor is whether prosecution of the suit will compel the plaintiffs to disclose information of the "utmost intimacy." *Porter*, 370 F.3d at 560. Courts have generally recognized that matters of rape and sexual assault involve "highly sensitive and personal subjects." *Doe v. Cabrera*, 307 F.R.D. 1, 5 (D.D.C. 2014) (collecting cases containing allegations of sexual assault in which the plaintiffs were allowed to proceed under a pseudonym). At the same time, however, as this court has already held, "the potential for embarrassment or public humiliation does not, without more, justify a request for anonymity." *Ramsbottom*, 2021 WL 2651188, at *4 (quoting *Doe v. McLellan*, No. CV 20-5997 (GRB) (AYS), 2020 WL 7321377, at *1 (E.D.N.Y. Dec. 10, 2020)); *see also Doe v. Weinstein*, 484 F. Supp. 3d 90, 94 (S.D.N.Y. 2020) (recognizing that "allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym" (collecting cases)).

### B. Other Factors

*1. Prejudice to the Defendants' Right to Mount a Defense*

**\*6** Courts considering this factor have examined "difficulties in conducting discovery," the "reputational damage to defendants," and the "fundamental fairness of proceeding anonymously," among other considerations. *Rapp v. Fowler*, No. 20-CV-9586 (LAK), 2021 WL 1738349, at \*6 (S.D.N.Y. May 3, 2021) (citations omitted).³ In *Ramsbottom*, this court noted that "concealing the name of a party could deprive a litigant and the court of the chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses." *Ramsbottom*, 2012 WL 2651188, at \*5 (quoting *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006)); *see also Roe v. Does 1-11*, No. 20-CV-3788-MKB-SJB, 2020 WL 6152174, at \*3 (E.D.N.Y. Oct. 14, 2020) ("Allowing a plaintiff to proceed anonymously may also hamper witnesses coming forward of their own volition to either bolster or refute a plaintiff's allegations.").

In *Ramsbottom*, as in *Rapp*, however, the defendants were public figures, and the possibility of unknown witnesses coming forward was not insignificant. In this case, the defendants have not indicated that any potential witnesses exist whose identity is unknown to them. Moreover, the events giving rise to the plaintiffs' claims in this case all occurred during the last two years, making the situation here very different from that in *Ramsbottom* and *Rapp*, which not only involved celebrity defendants, but also involved events that were remote in time, so that there was a real potential for unknown and unidentified witnesses to come forward that might have been hampered if the plaintiffs had proceeded under pseudonyms. These concerns are simply not at issue here.

In addition, the plaintiffs' revised proposed Protective Order appears to address all of the defendants' concerns about prejudice, as it specifically makes the confidentiality obligations apply equally to both parties and would not preclude the parties' counsel from disclosing the plaintiffs' names to third parties during discovery, as long as counsel believes in good faith that such disclosure is necessary, and the third party to whom the disclosure is made is also informed of the terms of the Protective Order. (Doc. No. 47-1 ¶ 8.) And the parties would not have an obligation to notify the other party about such disclosures if it would require them to disclose attorney work-product. (Doc. No. 43, at 6.)

The defendants' concerns about their reputations, while not insubstantial, does not shift the weight of this factor in their favor. In particular, the court notes that the defendants are business entities rather than individuals. Moreover, whatever damage this lawsuit may cause their reputations will be the same, irrespective of whether the plaintiffs are permitted to proceed anonymously.

In sum, the court finds that the defendants' concerns about prejudice during discovery and other phases of this litigation appear to be speculative at best. The court finds that allowing Jane Doe and Jane Roe to proceed anonymously would not prejudice the defendants, at least during the early stages of this litigation, including through discovery and potential settlement discussions.

### 2. The Risk of Psychological and Other Harm to the Plaintiffs

With regard to this factor, the court notes that Jane Doe and Jane Roe appear to be in significantly different situations. Jane Roe does not indicate that she has suffered serious trauma or sought psychiatric care as a result of the alleged sexual assault by Perez. She states only that she is humiliated and embarrassed about having been a victim of sexual assault and wants to "control" who knows about the assault. (Doc. No. 29 ¶¶ 4–5.) She states that it would be upsetting for her if her young daughter found out what happened and that she would be "uncomfortable" pursuing the case in her true name. (*Id.* ¶¶ 6–7.)

**\*7** The court finds that Roe's Declaration falls short of establishing that requiring her to pursue this lawsuit in her own name would cause—or exacerbate—psychological trauma of the kind that has prompted courts in other cases to permit litigants to proceed pseudonymously. *See, e.g.*, *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014) (permitting the plaintiff to proceed anonymously at least through discovery, where she had allegedly been the victim of a brutal, violent rape and alleged that she had experienced "severe anxiety and depression as a result of the assault," that she had contemplated suicide following the assault, and that she had made "significant progress in [her] treatment from the assault" but was not sure she could proceed with the lawsuit if forced to proceed under her own name, and the court found that not allowing the plaintiff to proceed under a pseudonym risked "undermining the psychological treatment the plaintiff has already undergone since the alleged incident"; *Doe v. Smith*, 105 F. Supp. 2d 40, 43–44 (E.D.N.Y. 1999) (permitting the plaintiff to proceed under a pseudonym where she

submitted medical evidence establishing that she had been diagnosed with dissociative identity disorder and opining that public disclosure of her name during the course of litigation would cause her to "decompensate [psychologically] to a point at which she could not... pursue the current legal process and would suffer severe risk to her safety and to her survival." (alterations in original)).

Generally, courts have found that a plaintiff's allegations that proceeding publicly would cause embarrassment and humiliation, standing alone, are not sufficient to justify permitting a plaintiff to proceed under a pseudonym. *Id.* at 44 (collecting cases). Plaintiff Jane Doe, however, does allege that she suffered, not simply sexual assault in the form of groping, but actual rape on a repeated basis, and she claims that she has suffered "severe emotional trauma" as a result, for which she has undergone and continues to undergo psychiatric treatment and to take medication for depression and PTSD. (Doc. No. 29 ¶ 4.) She indicates that having her name appear publicly in court filings and news stories, specifically, would cause her to worry for the rest of her life if the people she meets know about her history, causing her to continuously relive the shame and trauma of the events. (*Id.* ¶ 7.) Doe also states that she is "very fearful of being exposed publicly" and will consider dropping the lawsuit if not permitted to proceed pseudonymously. (*Id.* ¶ 8.) Although Doe has not submitted actual evidence regarding her medical treatment from her practitioners, the court finds that her own testimony regarding her symptoms and treatment is sufficient at this juncture. In addition, Doe attests that she has not shared with her partner all of what she alleges Perez did to her, for fear of damaging her relationship with her partner, as well as her relationships with his family and her own. This is a much more significant factor than simply a generalized fear of embarrassment.

Further, the plaintiffs, in responding to the defendants' arguments in their Responses in opposition to the Motion to Proceed Pseudonymously, have submitted the Declaration of Emily B. Simpson, in her role as Clinical Co-Director of, and a Licensed Clinical Therapist at, the Sexual Assault Center located in Nashville. Although Simpson never personally treated either plaintiff, she avers that she has many years of experience working as a counselor for victims of sexual trauma and has treated "hundreds of clients who were survivors of sexual assault." (Doc. No. 49 ¶ 8.) As relevant here, she attests as follows:

8. The statements Jane Doe [makes in her] declaration[ ] about wanting to be the one[ ] to determine who knows about the rape and sexual assaults [she] suffered are consistent with the experiences of sexual assault survivors I have treated.

9. As I... observed during my years of professional experience..., a foundation of the healing process... for sexual assault survivors is establishing "felt safety," or the subjective degree of safety one feels. A major component of helping survivors and victims to establish felt safety is helping them to regain control and ownership over the story of what happened to them. One very important part of regaining ownership and control is for the victim to determine with whom she shares her story.

**\*8** 10. Sexual assault victims often experience primary trauma from the initial assault and additional, secondary trauma from what happens after the assault, such as reporting to the police or filing a lawsuit. Secondary trauma is one reason why many sexual assault victims either never report what happened to them or delay in reporting their assaults.

11. In my professional experience and based on my professional training, however, there is a difference between what therapists call "natural impact," or participating in the legal process by re-telling what happened, on the one hand, and secondary trauma associated with the victim losing control of the process or caused by being named publicly, on the other hand. Although victims will experience some level of natural impact by re-telling the experience in legal proceedings, this can often be part of the healing process if the client chooses to pursue it in her own way. Secondary trauma is worse when patients lose control over their story or when they are named publicly, particularly where they are concerned about people knowing that they were sexual assault victims. If the victim is identified publicly, then she ... often worries that everyone she encounters knows about or is talking about what happened to her, even if they are not. This is especially true when the victim encounters new groups or applies for a new job; the uncertainty of whether others know about the history of sexual assault affects the interactions the victim has with others. Such secondary trauma will negatively affect the victim's mental health and set back her recovery. This should be avoided if possible.

12. From a clinical perspective, the secondary trauma described above is distinct from the natural impact a sexual assault survivor experiences due to re-telling the event as part of treatment or because she is participating in the legal process. The secondary trauma I am describing is related specifically to the victim's general feelings of safety and her interactions with others moving forward, not having to revisit the initial assault by talking about what happened.

(Doc. No. 49 ¶¶ 8–12.) Simpson's testimony serves to draw a distinction between the trauma that Jane Doe suffered as a direct

result of the (alleged) sexual assault and rape and the secondary trauma she would likely suffer, not as a result of bringing the lawsuit *per se*, but as a result of having to pursue her claims publicly under her own name.

The court finds that the evidence presented is sufficient to establish that Jane Doe suffered significant trauma from the alleged sexual assaults and rape and that requiring her to pursue this lawsuit in her own name would have a substantial likelihood of causing secondary trauma of the type described by Simpson and of irreparably harming her relationships with her partner and family members. Moreover, contrary to the defendants' assertions, the evidence presented is neither speculative or impermissibly conclusory.

This factor weighs strongly in favor of permitting Doe to proceed pseudonymously, but it does not weigh strongly in favor of permitting Roe to proceed pseudonymously.

### *3. Fundamental Fairness and the Public's Interest in Open Access to Proceedings*

Jane Roe attests in her Declaration as to her conviction that it would be "unfair" to require her to disclose her name "just to try to pursue justice." (Doc. No. 29 ¶ 7.) To the contrary, the "normal presumption" is that a plaintiff must pursue a lawsuit in her own name, *see Kamehameha Schs.*, 596 F3d at 1042, and this rule bears out in the vast majority of, for example, Title VII lawsuits in which plaintiffs contend that they suffered sexual harassment and discrimination in the employment context. Deviation from this rule requires a strong showing of "exceptional circumstances." *See, e.g., Doe v. Smith*, 105 F. Supp. 2d at 44 ("[T]he presumption of openness in judicial proceedings can be overridden in exceptional circumstances."). The defendants, for their part, argue that fairness dictates that the plaintiffs be required to disclose their identities, since their allegations impact the defendants' (and certain individual employees') reputations. (Doc. No. 44, at 7.)

**\*9** This factor is not one requiring special consideration. Rather, as the court in *Smith* noted, there is a strong presumption in favor of open proceedings, and the question before the court is whether the plaintiffs have established the existence of special circumstances that warrant overriding that presumption in favor of allowing them to proceed pseudonymously. *See Signature Mgmt. Team, LLC v. Doe*, 323 F. Supp. 3d 954, 957 (E.D. Mich. 2018) ("The public has a right to know who the parties are in almost every case before a federal district court as a matter of 'public confidence in and understanding of the judicial system.' " (quoting *Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 838 (6th Cir. 2017))).

### C. Weighing the Factors

The fact that the allegations in this case are of a highly personal nature, involving matters of utmost intimacy, weighs in favor of both plaintiffs' anonymity, but the remaining *Porter* factors do not. Specifically regarding Jane Roe, even if the court also presumes that the risk of psychological trauma if she is required to proceed under her real name weighs slightly in her favor, these two factors together, under the particular circumstances of this case, do not "substantially outweigh the presumption of open judicial proceedings." *Porter*, 370 F.3d at 560. Roe does have the option, however, of seeking to seal or redact specific court filings that contain particularly embarrassing or intimate information.

Regarding Jane Doe, the allegations of sexual assault and rape by Perez are more severe, and the plaintiff has submitted evidence that she has been severely traumatized and would be further traumatized, not simply by pursuing litigation, but by having her name associated publicly with this case. While the other *Porter* factors do not weigh in favor of granting the motion, neither have the defendants established that they would be prejudiced in conducting discovery in this matter, or otherwise, if Jane Doe is allowed to proceed under a pseudonym. In addition, they are already aware of Jane Doe's identity. The court finds that the substantial risk of trauma to Jane Doe and the likelihood of setting back whatever mental health progress she has already made in recovering from the alleged trauma, coupled with the potential risk of irreparable harm to her relationships, substantially outweigh the presumption of open proceedings, at least at this juncture. Jane Doe will be permitted to proceed anonymously.

## IV. CONCLUSION AND ORDER

Having found that plaintiff Jane Doe should be permitted to proceed pseudonymously, the court hereby **GRANTS IN PART AND DENIES IN PART** the plaintiffs' Motion to Proceed Pseudonymously, to Permit Filing Unredacted Consent Forms Under Seal, and for Entry of Protective Order (Doc. No. 25). Within **TEN DAYS** of entry of this Memorandum and Order, the plaintiff **SHALL** prepare a revised Protective Order narrowing its application to Jane Doe rather than pertaining to both named plaintiffs; plaintiff Jane Doe **SHALL** file an unredacted Notice of Consent under seal; and Plaintiff Jane Roe **MUST** submit an unredacted Notice of Consent. The Clerk **SHALL**, thereafter, update the case caption.

The court emphasizes that this ruling is preliminary in nature and does not address or resolve the question of whether Jane Doe will be permitted to proceed under a pseudonym during trial if this case proceeds to trial—an issue the parties' motion and responses do not raise. This ruling, therefore, is without prejudice to the defendants' ability to move to require Jane Doe to proceed under her own name if changed circumstances or progression in the procedural status of the lawsuit so warrant.

**\*10** It is so **ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5041286

### Footnotes

[1]    The plaintiffs filed redacted Declarations and, under seal, versions of the Declarations that are supposed to be unredacted. Both the redacted and "unredacted" versions of Jane Doe's Declaration, however, are identically redacted. (Doc. Nos. 28, 30.)

[2]    The defendants also argue that plaintiffs' counsel has "worked to broadcast the nature of the lawsuit in the news," making the plaintiff's argument against disclosing their identities "disingenuous." (Doc. No. 43, at 5.) In response, the plaintiffs' lead counsel, Charles Yezbak, submitted a Declaration explaining that he was contacted by reporter Anita Wadhwani with the *Tennessee Lookout* via email after the lawsuit was filed; he did not initiate contact with her. (Doc. No. 48 ¶ 3.) He did not supply the plaintiffs' names and would not have supplied them, even if the reporter had asked. He spoke with Wadhwani on the telephone briefly; later, the reporter emailed him a copy of FedEx's statement about the suit, and he prepared a brief written statement in response, which he emailed to the reporter. (*Id.* ¶¶ 5–6.) Neither Yezbak nor any attorney at his firm has contacted the media about the case. (*Id.* ¶ 8.) Based on this Declaration, the court cannot find that plaintiffs' counsel has "worked to broadcast" information about this lawsuit.

[3]    In *Rapp*, one plaintiff was identified by name and a second sought to proceed anonymously, in a suit alleging that defendant Kevin Spacey Fowler, better known as Kevin Spacey, sexually assaulted them decades ago, when Spacey was in his twenties and the plaintiffs were teenagers. *Rapp*, 2021 WL 1738349, at \*1.

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3511641
Only the Westlaw citation is currently available.
United States District Court, S.D. Georgia, Brunswick Division.

Jane DOE, Plaintiff,
v.
Emily Bulman GHIORSO, and Charles Ghiorso, Defendants.

CIVIL ACTION NO.: 2:24-cv-57
|
Signed July 23, 2024

**Attorneys and Law Firms**

Joseph W. Weeks, McNally Weeks, Decature, GA, for Plaintiff.

J. Daran Burns, I, Burns Smith Law, P.C., Canton, GA, for Defendants.

Charles Ghiorso, Ludowici, GA, Pro Se.

**ORDER**

BENJAMIN W. CHEESBRO, UNITED STATES MAGISTRATE JUDGE

**\*1** This Order concerns the portion of Plaintiff's Motion to Proceed Under Pseudonym and for Protective Order seeking permission to proceed anonymously in this action. Doc. 2. Defendants do not oppose Plaintiff's Motion. Docs. 24, 25. For the reasons explained below, I **GRANT** Plaintiff's Motion to Proceed Under Pseudonym.[i]

**BACKGROUND**

Plaintiff asserts claims in this case under 15 U.S.C. § 6851 concerning disclosure of intimate images. Doc. 1. Plaintiff alleges she shared an intimate image of herself with Defendant Charles Ghiorso using Snapchat. Id. at 3. Plaintiff did not intend to distribute the image to anyone other than Charles Ghiorso. Id. Plaintiff alleges Defendant Emily Ghiorso accessed Charles Ghiorso's Snapchat account and downloaded Plaintiff's private image. Id. at 4. Emily Ghiorso then posted the image on her Facebook page. Id. at 5. Plaintiff claims she did not consent to the disclosure of her image or, in the alternative, Defendants acted with "reckless disregard as to whether Plaintiff had consented to such disclosure." Id. at 6.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 10(a) requires "[t]he title of the complaint must name all the parties[.]" "Generally, parties to a lawsuit must identify themselves in their respective pleadings." Doe v. Frank, 951 F.2d 320, 322 (11th Cir. 1992) (citing S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe, 599 F.2d 707, 712 (5th Cir. 1979)). "This rule serves more

than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." Id. (citing Doe v. Rostker, 89 F.R.D. 158, 160 (N.D. Cal. 1981); and Doe v. Deschamps, 64 F.R.D. 652, 653 (D. Mont. 1974)). Thus, "[t]his [rule] creates a strong presumption in favor of parties' proceeding in their own names." Plaintiff B. v. Francis, 631 F.3d 1310, 1315 (11th Cir. 2011).

A plaintiff can overcome this presumption and proceed anonymously if the court determines "plaintiff has a substantial privacy right which outweighs the customary and constitutionally[ ]embedded presumption of openness in judicial proceedings." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 685 (11th Cir. 2001) (quoting Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992)). Personal embarrassment alone is not for leave to proceed anonymously. Doe v. Sheely, 781 F. App'x 972, 974 (11th Cir. 2019) (quoting Frank, 951 F.2d at 324). Courts must "carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." Frank, 951 F.2d at 323 (emphasis in original) (citing Wynne & Jaffe, 599 F.2d at 713).

## DISCUSSION

Plaintiff argues the disclosure of her name would expose her and her family to significant risks of substantial harm. Doc. 2 at 2. Plaintiff does not identify any specific harm in her Motion, but in her Complaint, Plaintiff claims she fears embarrassment and psychological damage if her identify were made public. Doc. 1 at 1. Plaintiff argues the statute under which she brings her claim, 15 U.S.C. § 6851, contemplates plaintiffs proceeding under pseudonyms. Doc. 2 at 2. Plaintiff also requests a protective order intended to protect her identity. Doc. 2-1.

**\*2** Plaintiff has a substantial right to privacy under 15 U.S.C. § 6851. The statute provides a right of action for plaintiffs whose intimate visual depictions are disclosed without consent. § 6851(b). Moreover, it expressly authorizes courts to provide "injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym" when a plaintiff files a civil suit under its authority. § 6851(b)(3)(B). Although general embarrassment ordinarily might not be sufficient to support anonymity, § 6851 plainly contemplates the need for anonymity during litigation when the plaintiff's intimate image is shared involuntarily. See Doe Williams v. Williams, No. 3:24-CV-165, 2024 WL 2805642, at \*5 (S.D. Miss. May 31, 2024) (granting motion to proceed under pseudonym, noting "Section 6851's very purpose is to protect against one's intimate matters being publicized[.]").

Plaintiff shall be permitted to proceed anonymously in these circumstances. Defendants do not oppose Plaintiff proceeding anonymously, and no one has identified any particular public interest in Plaintiff's identity. Disclosing Plaintiff's identity could link her to factual details about her intimate image and its unauthorized distribution, further threatening the rights § 6851 seeks to protect. See, e.g., Doe v. McCoy, No. 1:23-CV-3169, 2024 WL 843908, at \*9 (N.D. Ga. Feb. 28, 2024) (granting motion to proceed anonymously, finding the disclosure of the plaintiff's identity in a § 6851 case "would plainly compound the harm she has already purportedly suffered as result of Defendants' alleged conduct."). Therefore, Plaintiff's substantial right to privacy outweighs the customary presumption she would proceed in her own name. Accordingly, I **GRANT** Plaintiff's Motion.

## CONCLUSION

For the reasons explained above, I **GRANT** Plaintiff's Motion to Proceed Under Pseudonym.

**SO ORDERED**, this 23rd day of July, 2024.

## All Citations

Slip Copy, 2024 WL 3511641

## Footnotes

1    The Court will address the portion of Plaintiff's Motion seeking a protective order separately.

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 358134
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

Jane DOE, Plaintiff/Counter Defendant,
v.
Frank Daniel MALOIT, Defendant/Counter Claimant.

Civil Action No. 24-cv-02383-PAB-KAS
|
Signed January 31, 2025

**Attorneys and Law Firms**

Andrew C. Lang, Joseph Anthony O'Keefe, Baker Law Group, LLC, Colorado Springs, CO, for Plaintiff/Counter Defendant.

Christopher S. Maciejewski, Jeffrey Alan Springer, Keith Richard Scranton, Springer and Steinberg, P.C., Denver, CO, for Defendant/Counter Claimant.

**ORDER**

ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA

**\*1** This matter is before the Court on Plaintiff's **Motion for Leave to Proceed Under Pseudonym** [#33] (the "Motion"), which she filed pursuant to the Chief District Judge's November 14, 2024 Order [#32]. Defendant filed a Response [#36] in partial opposition to the Motion [#33]. No reply briefs were filed and the time to do so has elapsed. The Motion [#33] was referred to the undersigned. *See Memorandum* [#44]. The Court has reviewed the briefing, the entire case file, and the applicable law. For the following reasons, the Motion [#33] is **DENIED WITHOUT PREJUDICE**.

**I. Background**

Plaintiff and Defendant were married from 2006 to 2018. *See Compl.* [#1], ¶ 10. In April or May 2022, Plaintiff "began receiving phone calls and emails at her place of employment – a school – from strangers, who informed Plaintiff that there were compromising photographs of her online." *Id.*, ¶ 14. Some had been taken by Defendant, others by Plaintiff of herself, all while they had been married. *Id.*, ¶ 16. They were taken for her and Defendant's private use, and she never consented to their broader disclosure. *Id.*, ¶ 18. At some point between May and August 2022, Defendant admitted that he had previously posted the photographs to a website called RedClouds, where users can share pornographic content. *Id.*, ¶ 19. The photographs then spread to other websites, some of which posted them alongside Plaintiff's name, employment information, and work contact information. *Id.*, ¶¶ 20, 22. Plaintiff had to bring the matter to her employer's attention and hired a lawyer to attempt to get the photographs removed from various websites, but only some of the websites have complied. *Id.*, ¶¶ 24-25, 27-30. Plaintiff alleges that Defendant disclosed her photographs online. *See, e.g., id.*, ¶¶ 43, 55. She lodges three claims against Defendant: (1) disclosure of intimate images, in violation of 15 U.S.C. § 6851; (2) unauthorized disclosure of intimate images, in violation of Colo. Rev. Stat. § 13-21-1401 *et seq.*; and (3) a request for permanent injunctive relief against Defendant. *Id.*, ¶¶ 36-66.

Defendant denies wrongdoing, alleging that Plaintiff participated in and consented to the posting of the photographs online. *See Answer & Counterclaims* [#9] at 4-5, ¶ 15. He "assisted Plaintiff, with her knowledge, with trying to take some photographs down since 2022." *Id.* at 7, ¶ 23. He assisted her in hiring an attorney to attempt to remove photos that had spread beyond RedClouds, but not all websites complied. *Id.*, ¶ 25.

Defendant has also asserted counterclaims against Plaintiff. *Id.* at 19-34. He alleges that he and Plaintiff were consumers of RedClouds content from 2006 to 2009, and that in 2009 or 2010, they "began using RedClouds as both content consumers and content creators." *Id.* at 20-21, ¶¶ 10-18. Plaintiff allegedly "explicitly consented" to posting various photographs to RedClouds, initially with her face blacked out but eventually with her face visible. *Id.* at 21, ¶¶ 19-20, 27. Defendant alleges that the parties continued to engage in erotic photography content creation until 2022, when they were no longer married. *Id.* at 23, ¶¶ 37, 44. Around that time, the parties began having disagreements over parenting and custody, disputes which continued through August 2024. *Id.* at 24-26, ¶¶ 69-72, 78, 91. Ultimately, Defendant decided to run for office, which he announced on August 29, 2024. *Id.* at 28, ¶¶ 109, 114. Given the timing of Plaintiff's Complaint [#1], which she filed on August 29, 2024, Defendant believes his children told her about his run for office and she "timed the filing of this action to coincide with [Defendant's] announcement" in a bid to harm his reputation. *Id.*, ¶¶ 117-22. Defendant lodges two counterclaims against Plaintiff: abuse of process and extreme and outrageous conduct. *Id.* at 30-33.

**\*2** On September 25, 2024, Plaintiff filed a Motion for Alternative Dispute Resolution and to Seal Filings [#10] (the "ADR Motion"), in part moving to seal "the Complaint, Civil Cover Sheet, Summons ... and any further filings during the ADR period (including Defendant's anticipated answer and counterclaims)" and "stipulat[ing to] allowing Defendant to proceed under the pseudonym 'John Doe' until the disposition of this litigation." *ADR Motion* [#10] at 2, ¶¶ 6, 7. On November 14, 2024, the Chief District Judge found that the parties had not sufficiently briefed the pseudonymity issue so it "den[ied] without prejudice the request for [Defendant] to proceed as 'John Doe.' " *Order* [#32] at 5. Additionally, the Court ordered Plaintiff "to show cause why she should be allowed to continue as 'Jane Doe.' " *Id.*

Plaintiff filed the subject Motion [#33] pursuant to the Order [#32], requesting to proceed in this matter pseudonymously and seeking an order "prohibiting Defendant from identifying Plaintiff in any document or pleading in this action; ordering Defendant not to identify Plaintiff to any persons not directly involved in this action; and prohibiting Defendant from disclosing any information in any circumstances which would lead to Plaintiff being readily identified by anyone familiar with the intimate issues at the center of this action." *Motion* [#33] at 5. Defendant does not object to Plaintiff proceeding pseudonymously but argues that the additional relief sought would prevent him from effectively defending himself. *See Response* [#36] at 1.

## II. Legal Standard

"Lawsuits are public events." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998) (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)). "Courts are public institutions which exist for the public to serve the public interest" and "secret court proceedings are anathema to a free society." *Id.* at 800. Therefore, "[o]rdinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000).

Because of these principles, D.C.COLO.LCivR 7.2 requires that a party seeking to restrict public access make a five-part showing, namely: (1) identify the specific document for which restriction is sought; (2) identify the interest to be protected and why that interest outweighs the presumption of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternatives to restricted access are unavailable; and (5) identify the level of restriction sought. D.C.COLO.LCivR 7.2(c).

The Federal Rules of Civil Procedure contemplate the naming of parties. Rule 10(a) requires that a complaint "name all the parties," and Rule 17(a) requires the prosecution of an action "in the name of the real party in interest." Fed. R. Civ. P. 10(a), 17(a); *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006) (stating that "there is no explicit congressional grant of a right of a party to proceed anonymously"); *Coe v. U.S. Dist. Ct. for Dist. of Colo.*, 676 F.2d 411, 415 (10th Cir. 1982) ("There is no provision in the Federal Rules of Civil Procedure for suit against persons under fictitious names, and there are likewise no provisions for anonymous plaintiffs.").

Because the general rule is that lawsuits are public, "a plaintiff should be allowed to proceed anonymously 'only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger or physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.' " *Doe v. Regents of Univ. of Colo.,* 603 F. Supp. 3d 1014, 1018-19 (D. Colo. 2022) (quoting *Zavaras,* 239 F.3d at 803). Ultimately, the decision whether to allow a plaintiff to proceed pseudonymously is within the trial court's sound discretion. *Cf. Luo v. Wang,* 71 F.4th 1289, 1296 (10th Cir. 2023) (citing *Zavaras,* 139 F.3d at 803-04). The Court is not bound by the parties' stipulation or agreement to proceed anonymously. *See Order* [#32] at 4 ("Plaintiff cannot stipulate to another party's use of a pseudonym.").

### III. Analysis

### A. Pseudonymity

**\*3** Plaintiff argues that this case involves two of the three "exceptional" considerations that justify anonymity: it pertains to matters of a highly sensitive and personal nature, and the injury litigated against would be incurred as a result of disclosure. *See Motion* [#33] at 3, ¶ 7. She claims that this matter "revolves around allegations concerning [her] purported sexual habits," as well as "[her] sexual history with Defendant, as well as her engagement in erotic photography therewith." *Id.*, ¶ 9. She admits that her identity "can potentially be gleaned from the allegations made in the pleadings thus far, and information regarding this lawsuit has already been made available to the public at large" but argues that denying her leave to proceed under a pseudonym "will only compound the invasion of privacy to which she has already been subjected and exacerbate the resulting injury." *Id.* at 4, ¶ 12. The Court acknowledges Plaintiff's privacy concerns but is not persuaded that she has met the high bar necessary to proceed pseudonymously.

### 1. Matters of a Highly Sensitive and Personal Nature

Courts in this Circuit have permitted pseudonymous litigation under situations involving, for example, "birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families[.]" *Does 1 through 11 v. Bd. of Regents of Univ. of Colo.,* No. 21-cv-02637-RM-KMT, 2022 WL 43897, at *3 (D. Colo. Jan. 5, 2022). Similarly, plaintiffs alleging that they were sexually abused *as minors* often may proceed pseudonymously. *See, e.g., Does 1-51 v. U.S. Olympic Comm.,* No. 19-cv-00737-PAB-KMT, 2019 WL 2992031, at *1 (D. Colo. July 9, 2019) (collecting cases). However, courts "have generally required adult plaintiffs to proceed in their own name" even when their allegations relate to sexual assault or sexual harassment. *See, e.g., Doe H. v. Haskell Indian Nations Univ.,* 266 F. Supp. 3d 1277, 1289 (D. Kan. 2017) (collecting cases involving allegations of sexual assault or harassment by employers or at university); *see also Doe v. Bd. of Regents of Univ. of N.M.,* No. 20-1207 JB/JHR, 2021 WL 4034136, at *1 (D.N.M. Sept. 4, 2021) ("Doe is not a minor—a status which confers heightened anonymity protections—and the only cases Doe cites from the Tenth Circuit dealing with 'allegations of a sexual nature' involve minors."). Thus, while the Court recognizes Plaintiff's asserted privacy interests, the Court is not persuaded that the subject matter of this lawsuit necessarily justifies Plaintiff proceeding pseudonymously. *Cf., e.g.,* Minute Order [#82] at 4, *Levy v. Shuster,* No. 23-cv-01149-NYW-KAS (D. Colo. Nov. 28, 2023) (stating that the court "remain[ed] unconvinced that the subject matter of this case [i.e., cases involving "differing understandings of sexual encounters over a year-long relationship"] inherently compels pseudonymity").

This is especially true given Plaintiff's decision to identify Defendant by name in her publicly filed Complaint [#1], which also identified him as her ex-husband of more than 11 years. *See Compl.* [#1], ¶ 10. This case proceeded for nearly a month before Plaintiff took any effort to shield Defendant's identity, even while he was running for public office. *See generally ADR Motion* [#10]; *Answer & Counterclaims* [#9] at 28, ¶¶ 114, 117-118. For his part, Defendant alleges that Plaintiff's filing of this suit was intended to harm his reputation, and he argues that she successfully caused a public frenzy. *Answer & Counterclaims* [#9] at 28, ¶ 122; *Response* [#36] at 2 ("Plaintiff's multiple public filings ... directly led to members of the public finding and posting Plaintiff's action on the City of Erie Facebook page, leading to a Boulder Weekly Article."). Even in this Motion [#33], Plaintiff

asks the Court to broadly enjoin Defendant's ability to discuss her or this lawsuit, without any corresponding limitations on her own speech or conduct. *See Motion* [#33] at 5.

To the extent that Plaintiff's and Defendant's sexual history and engagement with erotic photography are highly sensitive and personal topics, they are sensitive and personal *to both parties involved*. However, Plaintiff has not conducted this litigation as though it involves matters of a highly sensitive and personal nature—instead, she would cloak herself in pseudonymity, and the protections it affords, while publicly lobbing allegations at Defendant by name.[1] The Court does not find that the sensitive or personal nature of the allegations warrants pseudonymity.

### 2. Incurring the Injury Litigated Against

**\*4** Turning to Plaintiff's second argument, the Court does not find that "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Zavaras*, 139 F.3d at 803. Taking her allegations as true, the injury of which Plaintiff complains has already occurred, as far as Defendant is concerned: the photographs were allegedly taken between 2006 and 2012 and posted "as far back as 2016" before spreading to various websites along with Plaintiff's personally identifying information. *See Compl.* [#1], ¶¶ 17, 20-22. Plaintiff has already brought the matter to her employer's attention and taken various remedial steps—including having her employer remove her work photograph from its website and change her work email address, hiring an attorney to attempt to remove the photographs from various websites, paying for a subscription to PimEyes, and making requests to Google to remove various URLs from its search results. *Id.*, ¶¶ 24-29. Although these efforts were not completely successful, Plaintiff does not allege that Defendant is continuing to upload or disseminate these photographs.

Plaintiff admits that her identity "can potentially be gleaned from the allegations made in the pleadings thus far" and that "information regarding this lawsuit has already been made available to the public at large." *Motion* [#33] at 4, ¶ 12. More than that, Plaintiff publicly named Defendant in her Complaint [#1] and identified him as her ex-husband of more than 11 years. As a result, nearly anyone who personally knows Plaintiff or Defendant can easily identify her simply by reading her Complaint. Moreover, Plaintiff has not disputed Defendant's assertion that her allegations have already gone public on Facebook and through the Boulder Weekly article. *Cf. Response* [#36] at 2-3; *see also A.M. ex rel. D.M. v. Poudre Sch. Dist.*, No. 24-cv-02723-KAS, 2024 WL 4879005, at *2-3 (D. Colo. Oct. 4, 2024) (denying parents' and a minor plaintiff's request to proceed pseudonymously where their parents had "separately publicized their abuse allegations and this lawsuit to the press").

Any damage from this case's publicization has already been incurred; therefore, the "need for the cloak of anonymity" is not apparent. *See, e.g., Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979) (affirming denial of leave to proceed pseudonymously where the plaintiff "had already suffered the worst of the publicity and embarrassment"); *Luo*, 71 F.4th at 1294 (concluding that "the injury [the plaintiff] litigated against[,] ... [the defendant's previous] alleged defamation and disclosure of her private information—would not be incurred as a result of the disclosure of her identity in this case") (internal quotation marks and modification omitted); *Raiser*, 182 F. App'x at 811-12 ("In cases where the sensitive information has already been disclosed ... the social interest in allowing a party to proceed anonymously is limited.") (citing *Zavaras*, 139 F.3d at 802).

Importantly, in finding that the injury Plaintiff complains of has already occurred, the Court does not minimize the risk that these photographs will spread further now that they are on the internet or the harm that could cause to Plaintiff—but that is neither the injury nor the parties against whom Plaintiff is currently litigating. Plaintiff has not named any websites, domain name owners, or internet users as defendants in this matter and she does not seek to enjoin the further dissemination of her photographs; rather, she is suing her ex-husband for his alleged prior act of posting her photographs online and the damage that act caused. *See, e.g., Compl.* [#1], ¶ 34 ("As a result of Defendant's actions, Plaintiff has incurred expenses for, among other things, hiring an attorney in an attempt to get the [p]hotographs taken off the Internet, subscribing to PimEyes, in addition to suffering mental distress, anxiety, reputational damage, humiliation, fear, and uncertainty."). While she asks the Court for injunctive relief, *see Compl.* [#1], ¶¶ 60-65, she does not allege that Defendant has continued to disseminate photographs of her or that he is likely to do so now that he has been summoned into federal court. Thus, even though Plaintiff seeks prospective relief, her damages are predominantly retrospective in nature, and the injury she is litigating against is not likely to be incurred because of the disclosure of her identity in this case. *Cf. Luo*, 71 F.4th at 1300. In summary, because Plaintiff has not shown

that exceptional circumstances exist warranting pseudonymity, the Court will not allow her to proceed pseudonymously. The Motion [#33] is **denied without prejudice**.

**B. Further Requests for Relief**

**\*5** Plaintiff also asks the Court to enter an order preventing Defendant from "identifying Plaintiff in any document or pleading filed in this action; ordering Defendant not to identify Plaintiff to any persons not directly involved in this action; and prohibiting Defendant from disclosing any information in any circumstances which would lead to Plaintiff being readily identified by anyone familiar with the intimate issues at the center of this action." *Motion* [#33] at 5. Because the Court denies Plaintiff's request to proceed pseudonymously, her request for further relief is similarly **denied without prejudice**. The Court notes that the parties have agreed to, and the Court has entered, a Joint Protective Order [#31] that should address Plaintiff's concerns about Defendant's conduct during litigation.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#33] is **DENIED WITHOUT PREJUDICE**.

IT IS FURTHER **ORDERED** that all future filings shall identify Plaintiff by her real name.

IT IS FURTHER **ORDERED** that this Order is **STAYED** to and including **February 18, 2025, or further order of the Court**.

**All Citations**

Slip Copy, 2025 WL 358134

## Footnotes

1    For example, on October 29, 2024, Plaintiff publicly filed her Response to Defendant's Motion for Sanctions [#19], which reasserted her theory of the case and (ironically) lambasted Defendant for "elect[ing] to draw further attention to this matter by filing a ridiculous Answer with Counterclaims, the latter in excess of 162 paragraphs, which – much like this instant Motion – may very well be aimed at generating attention for yet another political campaign by Defendant." *See Response to Motion for Sanctions* [#19] at 4. Of course, Defendant was required to file an Answer along with any compulsory counterclaims he had at that time. *See* Fed. R. Civ. P. 13(a)(1).

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 843908
Only the Westlaw citation is currently available.
United States District Court, N.D. Georgia, Atlanta Division.

Jane DOE, Plaintiff,
v.
Jeff MCCOY and Emilyn Espiritu, Defendants.

Case No. 1:23-cv-3169-MLB
|
Signed February 28, 2024

**Attorneys and Law Firms**

Cary Ichter, Ichter Davis, LLC, Atlanta, GA, for Plaintiff.

Alex Benjamin Kaufman, Chalmers, Adams, Backer & Kaufman, LLC, Alpharetta, GA, Maren R. Cave, Tracy Anne Gilmore, Swift, Currie, McGhee & Hiers LLP, Atlanta, GA, for Defendant Jeff McCoy.

Anna Idelevich, Sarah J. Unatin, Weinberg Wheeler Hudgins Gunn & Dial, LLC, Atlanta, GA, for Defendant Emilyn Espiritu.

**OPINION & ORDER**

MICHAEL L. BROWN, UNITED STATES DISTRICT JUDGE

**\*1** This is a "revenge porn" case. Plaintiff claims Defendants violated the Violence Against Women Reauthorization Act and state law by showing other people an intimate video of Plaintiff without Plaintiff's consent. (Dkt. 1.) She also asks the Court to allow her to prosecute her claims anonymously. (Dkt. 22.) Defendants moved to dismiss but did not respond to her motion to appear anonymously. (Dkts. 7; 8.) Plaintiff filed a motion to amend her complaint, which Defendants oppose as futile. (Dkts. 28, 29, 30.) The Court grants Defendants' motion to dismiss but only as to Plaintiff's state law claims, grants Plaintiff's motion to proceed anonymously, and denies Plaintiff's motion to amend.

**I. Background**[i]
Plaintiff and Defendant Jeff McCoy had an intimate relationship in the past. (Dkt. 1 ¶ 7.) During that time, they filmed and photographed some of their "intimate interactions." (Dkt. 1 ¶¶ 9, 13.) McCoy also filmed Plaintiff having "intimate encounters" with other men and women. (Dkt. 1 ¶ 10.) McCoy made and stored those videos and photos on his cell phone. (Dkt. 1 ¶ 16.) Plaintiff describes her relationship with McCoy as "on again, off again," and each time they broke up Plaintiff asked McCoy to destroy or delete the videos and photos—something McCoy assured Plaintiff he did. (Dkt. 1 ¶¶ 18–22.)

At some point, McCoy started dating Defendant Emilyn Espiritu. In April 2023, the two of them went to a restaurant with McCoy's friends. (Dkt. 1 ¶ 23.) That night, someone sent Plaintiff a recording from the restaurant showing someone else playing one of the intimate videos of Plaintiff so others at the restaurant could see it. (Dkt. 1 ¶¶ 24–25.) The recording showed the video in a folder bearing Plaintiff's name, suggesting McCoy had not actually destroyed or deleted the videos and photos. (Dkt. 1 ¶ 26.)

Plaintiff confronted McCoy the next day. (Dkt. 1 ¶ 28.) He denied being the one who played the video at the restaurant or the one who recorded the video being played. (*Id.*) He told Plaintiff that Espiritu had (without his permission) taken copies of videos from his cell phone and played one of them at the restaurant to the "assembled group." (*Id.*)

Importantly, Plaintiff does not plead that she accepts the veracity of McCoy's representation about Espiritu's conduct. She merely alleges what he said on that day. Plaintiff thus sued McCoy and Espiritu. (Dkt. 1.) She claims "one or both of them" violated the Violence Against Women Reauthorization Act (VAWRA) by sharing the intimate video without her consent. (*Id.* ¶¶ 32-38.) She also alleges that, to the extent McCoy was telling the truth, he was negligent in allowing Espiritu access to the video. (*Id.* ¶40.) She also includes a state law claim against both Defendants for public disclosure of private matters. (*Id.* ¶44.)

Defendants moved to dismiss. (Dkt. 7; 8.) Plaintiff then filed a motion to proceed anonymously to which Defendants did not respond. (Dkt. 22.) She also filed a motion to amend her complaint to raise additional allegations, which Defendants oppose as futile. (Dkt. 28.) Because (as discussed below) the Court agrees amendment would be futile, Plaintiff's initial complaint remains operative, and the Court addresses Defendants' motions to dismiss.

## II. Motions to Dismiss

**\*2** A court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This so-called "plausibility standard" is not a probability requirement. *Id.* Even if a plaintiff will probably not recover, a complaint may still survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the sufficiency of the complaint, not the merits of the case. *Twombly*, 550 U.S. at 556.

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A facial attack on the complaint," like Defendants raise here, "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his [or her] complaint are taken as true for the purposes of the motion." *Id.*

### A. VAWRA Claim

Obviously, McCoy's and Espiritu's conduct (if true) was classless, crude, and selfish. The question is whether it also subjects Defendants to civil liability under VAWRA. That statute prohibits the non-consensual disclosure of intimate images—commonly referred to as "revenge porn." The statute permits a person "whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce" without his or her consent, to bring a claim against the person who made the disclosure if the disclosing party knew the individual had not consented to the disclosure of the intimate visual depiction or acted with "reckless[ ] disregard" as to whether the person had consented to the disclosure. *See* 15 U.S.C. § 6851. A plaintiff may recover actual damages arising from the unauthorized disclosure or liquidated damages in the amount of $150,000 (in addition to costs and attorney's fees). *See* 15 U.S.C. § 6851(b)(3)(A)(i). A plaintiff may also obtain equitable relief, including an injunction ordering a defendant to cease "display or disclosure" of the visual depiction. *See* 15 U.S.C. § 6851(b)(3)(A)(ii). Defendants argue their alleged actions do not constitute a disclosure of the video and had no relationship to interstate or foreign commerce. (Dkts. 7 at 6–9; 8-1 at 7–10.)

### 1. Disclosure

Defendants argue the term "disclosure"—as used in VAWRA—covers only "a conveyance or reproduction of data to third parties which results in a change in ownership, control, or possession of the data." (Dkts. 8-1 at 8; 19 at 4–5; 20 at 5–6.) They contend Plaintiff merely claims Defendants played the video on their phone for others to see. They say that claim establishes only that Defendants "displayed" the video, which they insist "refers to the presentation of the visual depiction in a manner that is visible to others—*e.g.*, on a screen to a limited audience." (*Id.*)

VAWRA defines "disclose" as "to transfer, publish, distribute, or make accessible." 15 U.S.C. § 6851(a)(4). This is a broad definition, and certainly broader than Defendants' proposed definition. "In construing a statute [the Court] must begin, and often should end as well, with the language of the statute itself." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997). Publish means to "disseminate to the public"; distribute means "to give out or deliver, especially to members of a group"; and to make something accessible means to make something "capable of being reached ... or seen." *Publish*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/publish (last visited Feb. 20, 2024); *Disclose*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/disclose (last visited Feb. 20, 2024); *Accessible*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/accessible (last visited Feb. 20, 2024). None of these terms require an act that results in a change of ownership, control, or possession as Defendants argue. By way of example, a person can certainly make a video "accessible" to others without ceding ownership, control, or possession of that video to someone else. Defendants' proposed interpretation thus writes the word "accessible" completely out of the statutory definition. According to Defendants, they could show the video to anyone, anywhere so long as they used McCoy's phone to play it—perhaps by streaming it to a television or larger screen—and so long as they did not provide copies, control, or physical possession. Such a narrow interpretation of the term "disclose" is completely inconsistent with the idea of publishing and completely ignores the concept of making something accessible. The Court concludes Plaintiff's allegation Defendants showed other patrons at a public restaurant the video falls within the statutory definition of disclosing.

**\*3** Defendants seek to inject uncertainty into the word "disclose" by reference to the words "display *or* disclosure" in the statute's injunctive relief provision, suggesting the use of two different terms means merely displaying a video is insufficient to state a claim for monetary damages or liquidated damages. (Dkts. 19 at 4–5; 20 at 5–6 (emphasis in original).) This is the only place the statute mentions a "display," and it does not define that term, so it is not clear whether Congress intended the terms to have materially different meanings. And it's generally true that "[w]hen Congress uses 'different language in similar sections,' " courts "should give those words different meanings." *McCarthan v. Dir. of Goodwill Industries-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017) (citation omitted).

Regardless of this canon of construction (or congressional intent), however, the Court is bound by the statute's plain language, and both terms mean almost the exact same thing. *Compare Display*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/display (last visited Feb. 20, 2024) ("[T]o place or spread (something) for people to see[.]"), *with Disclose*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/disclose (last visited Feb. 20, 2024) ("[T]o make known or public," or "to expose to view[.]"). "[T]here is no canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing." *Santos v. Healthcare Revenue Recovery Grp., LLC*, 90 F.4th 1144, 1155–56 (11th Cir. 2024) (internal quotation marks and citation omitted). And, even if there is a distinction, the subtle difference between the words hardly injects the need for a change of ownership or control into the term "disclose."

Moreover, whether a "display" is different from a "disclosure," really doesn't matter right now. That is because, even if Defendants merely "displayed" the video when they played it at the restaurant, VAWRA still makes that "display" actionable through the imposition of injunctive relief. It would be odd for Congress to fashion a remedy for the "display" of an intimate video if a plaintiff could not bring a claim for that display. And Plaintiff expressly asks in her complaint for equitable relief pursuant to VAWRA. (Dkt. 1 ¶ 38) (citing 15 U.S.C. § 6851(b)(3)(A)(2).) So, even if she did not state a claim for damages under the statute, she still asserts a claim for equitable relief, and the Court has jurisdiction.

McCoy makes another argument. He contends that—given Plaintiff's allegation in the complaint that he admitted Espiritu had taken the video from his phone without his permission and played it at the restaurant—that "the only individuals Plaintiff alleges displayed the recording are not [McCoy]." (Dkt. 8-1 at 8.)[2] Plaintiff says her allegations establish that "McCoy either

disclosed the [video] to the crowd at [the bar] or disclosed the [video] to someone else (like Espiritu) who did." (Dkt. 12 at 11–12.)

The Court disagrees with McCoy that Plaintiff's allegations suggest that only Espiritu—and not him—disclosed or displayed the video. Plaintiff does not allege McCoy's statement about Espiritu was true—only that he blamed her and exculpated himself. In fact, nowhere in the complaint does Plaintiff affirmatively identify the person who showed the video to the group. All Plaintiff claims is that someone showed the group the video, that before this happened McCoy was the only person with access to it, and that McCoy *told her* Espiritu did it. Indeed, Plaintiff expressly suggests McCoy may have been lying, claiming that "[t]o the extent" his statement was true, he was negligent in allowing Espiritu (or someone else) to access the video on his phone. (Dkt. 1 ¶ 40.) So, at this stage, both Defendants could potentially be on the hook for VAWRA violations. Should discovery answer the open question raised by McCoy, he can raise the issue at summary judgment.

### 2. Interstate or Foreign Commerce

**\*4** Defendants also say Plaintiff fails to state a claim under VAWRA because she does not allege their purported disclosure of the video satisfies the interstate or foreign commerce element of the statute. (Dkts. 7 at 6–9; 8-1 at 9–10.) Plaintiff says a cell phone is an instrumentality of interstate commerce as a matter of law, so Defendants' use of a cell phone to show the video satisfies that requirement of the statute. (Dkts. 11 at 11; 12 at 12–18.) Plaintiff is right.

The Eleventh Circuit has explained several times that "[c]ellular telephones are instrumentalities of interstate commerce." *United States v. McKinley*, 647 F. App'x 957, 962 (11th Cir. 2016) (citing *United States v. Evans*, 476 F.3d 1176, 1180–81 (11th Cir. 2007)[†]; *see also United States v. Nowak*, 370 F. App'x 39, 45 (11th Cir. 2010); *United States v. Pipkins*, 378 F.3d 1281, 1295 (11th Cir. 2004)). This is true even if they are used purely intrastate. *See United States v. Evans*, 476 F.3d 1176, 1181 (11th Cir. 2007) (" 'It is well established that telephones, even when used intrastate, constitute instrumentalities of interstate commerce.' ") (quoting *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999)); *United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) ("Congress has repeatedly used [its Commerce Clause] power to reach [ ] conduct in which the illegal acts ultimately occur intrastate, when the perpetrator uses the channels or instrumentalities of interstate commerce to facilitate their commission.").

Plaintiff alleges Defendants—or someone who received the subject video from them—displayed the video from a cell phone. (Dkt. 1 ¶ 34.) She also expressly claims McCoy is the only person who had the video beforehand and that he told her Espiritu took the video from his cell phone and showed it to others. (Dkt. 1 ¶¶ 26, 28.) Either way, this means one of Defendants allegedly used a cell phone to show that video to other people or McCoy distributed that video (which only existed on his cell phone) to someone else who did that. So, Plaintiff adequately pleads Defendants used an instrumentality of commerce to disclose (and/or display) the video.

Defendants counter that, because they allegedly displayed the video to "a group of people at a local restaurant" without using any cell phone signal to transmit it, the video did not have "any relationship to interstate or foreign commerce." (Dkts. 7 at 8; 8-1 at 9–10.) But proving that an intimate visual depiction was disclosed "in or affecting interstate or foreign commerce" is only one way a plaintiff can satisfy the statute. 15 U.S.C. § 6851. The other way is for the plaintiff to show the defendant disclosed the depiction "using any means or facility of interstate or foreign commerce." *Id.* "The distinction between 'in' and 'of' interstate commerce ... is critical." *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999). As the Court already explained, the Eleventh Circuit is clear: a cell phone is an instrumentality of commerce—full stop. Because the statute permits a plaintiff to recover when the defendant discloses the visual depiction using an instrumentality *of* interstate or foreign commerce, it does not matter whether the defendant also disclosed the depiction *in* interstate or foreign commerce. *See In re BFW Liquidation, Inc.*, 899 F.3d 1178, 1189–90 (11th Cir. 2018) ("When the plain language of a statute is unambiguous, [the Court] need not—indeed, should not—look beyond that plain language to determine its meaning."). In other words, Defendants' (apparently) purely intrastate disclosure of the subject video by using a cell phone satisfies the interstate or foreign commerce requirement of the statute. Plaintiff's VAWRA claim survives, as does the Court's jurisdiction.

## B. State-Law Claims

**\*5** Plaintiff raises state-law claims of negligence against McCoy and of public disclosure of private matters against both Defendants. (Dkt. 1 ¶¶ 39–49.) Plaintiff's public disclosure claim involves four separate torts: intrusion upon seclusion; public disclosure of embarrassing private facts; publicity which places Plaintiff in a false light; and misappropriation of Plaintiff's name or likeness. (Dkt. 1 ¶¶ 45.) Defendants say Plaintiff's state-law claims must be dismissed because she does not plead the requisite elements. (Dkts. 7 at 9–13.)

### 1. Negligence

To prove negligence under Georgia law, a plaintiff must show (1) the defendant had a legal duty to conform to a standard of conduct; (2) the defendant breached this duty; (3) the defendant's breach caused the plaintiff's injury; and (4) the plaintiff suffered a compensable injury. *Shortnacy v. N. Atlanta Internal Med., P.C.*, 556 S.E.2d 209, 213 (Ga. Ct. App. 2001). Plaintiff claims "[t]o the extent [ ] McCoy told the truth when he told Plaintiff that [Espiritu] took the [subject video] ... from his cell phone without his consent, [ ] McCoy is guilty of negligence" by not deleting the video, not encrypting it, and not "maintain[ing] such vigilance with respect to his phone that such a hijacking of the [video] could not have occurred." (Dkt. 1 ¶ 40.)

McCoy argues Plaintiff's negligence claim should be dismissed because she fails to assert any legal duty on his part to delete the video or protect it from disclosure by others. Plaintiff contends VAWRA "creates a duty not to disclose intimate recordings like those displayed by Defendants," the breach of which is actionable under state law. (Dkt. 12 at 18.) But she cannot rely only on a federal statute to claim McCoy violated a state duty because she does not point to any "traditional state-law duty owed by" McCoy that was breached by his purported violation of VAWRA. *See Markland v. Insys Therapeutics, Inc.*, 758 F. App'x 777, 779 (11th Cir. 2018). Instead, the "substance" of her complaint is that McCoy "violated federal law." *Id.* (internal quotation marks omitted).

Plaintiff next argues a Georgia statute prohibiting the nonconsensual disclosure of videos or photos "which occur in any private place and out of public view" imposed upon McCoy "a legal duty not to distribute" such images. (Dkt. 12 at 18–19 (quoting O.C.G.A. § 16-11-62).) She contends McCoy's purported breach of this duty is actionable under O.C.G.A. § 51-1-6, which says "[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if [she] suffers damage thereby." But Plaintiff did not bring a claim under either of those statutes, and the Court will not allow her to retroactively amend her complaint through her response to McCoy's motion to dismiss. *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1381 (S.D. Ga. 2015) ("A complaint may not be amended by briefs in opposition to a motion to dismiss.") (citing *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011)).[4]

**\*6** Plaintiff's allegations do not establish McCoy had a duty to destroy the subject video or to take extra steps to prevent its disclosure. Her negligence claim against him thus fails.

### 2. Intrusion Upon Seclusion

"In order to recover for intrusion upon seclusion, it is necessary to show 'a physical intrusion analogous to a trespass.' " *Johnson v. Allen*, 613 S.E.2d 657, 660 (Ga. Ct. App. 2005) (citation omitted). "In more recent cases, [Georgia courts] have adhered to the requirement of a physical intrusion, but with the understanding that this physical requirement can be met by showing that the defendant conducted surveillance on the plaintiff or otherwise monitored her activities." *Benedict v. State Farm Bank, FSB*, 709 S.E.2d 314, 318 (Ga. Ct. App. 2011) (internal quotation marks and citation omitted). So electronic intrusion may suffice.

Defendants say Plaintiff's claim for intrusion upon seclusion fails because she "does not allege any conduct that is akin to surveillance, a physical trespass upon her property, or a physical touching of her person." (Dkts. 7 at 10; 8-1 at 12.) Defendant is right about that. Plaintiff, however, argues that, while the surveillance or physical trespass requirement applies to "intrusion

into seclusion and solitude," it does not apply to "intrusion [ ] into private affairs." (Dkt. 11 at 17 (emphasis omitted).) She cites no Georgia authority for the proposition that there is a meaningful difference between these two theories. Instead, she relies primarily on *Summers v. Bailey*, which says " 'Georgia courts have extended the principle [of actionable intrusion] beyond physical intrusion to include prying and intrusions into private concerns, such as ... peering into the windows of a home.' " (*Id.*) (emphasis omitted) (quoting 55 F.3d 1564, 1566 (11th Cir. 1995).) This merely confirms that allegations of surveillance, physical trespass, or something like that are necessary for an intrusion claim.[5] She does not raise those kinds of allegations and her claim thus fails.

### 3. Public Disclosure of Private Facts

" 'In order to state a cause of action for invasion of privacy premised on the public disclosure of private facts, there must be a public disclosure in which the information is distributed to the public at large.' " *Baatz v. Mohawk ESV, Inc.*, 2021 WL 2449856, at *6 (N.D. Ga. Apr. 22, 2021) (quoting *Finnerty v. State Bank & Tr. Co.*, 687 S.E.2d 842, 744 (Ga. Ct. App. 2009)). Georgia courts have held that "to communicate a fact concerning the plaintiff's private life to a single person or even a small group of persons is not sufficient to constitute a public disclosure." *280 Partners, LLC v. Bank of N. Ga.*, 835 S.E.2d 377, 383 (Ga. Ct. App. 2019) (internal quotation marks and citation omitted).

Defendants say Plaintiff's allegations that they played the video to a small group of people (rather than the public at large) doom her public disclosure claim. (Dkts. 7 at 11; 8-1 at 12–13.) Plaintiff says "the disclosure was made in a crowded bar," so there is "no telling how many people" saw it. (Dkt. 11 at 21.) But her allegations suggest the video was not shown to anyone other than a group of people gathering at the bar, not the public at large. The Court cannot speculate that anyone other than those within eyeshot saw the video.[6] Plaintiff also points to two cases holding disclosures purportedly "much less offensive than the one implicated here" were "actionable ... under Georgia law." (Dkt. 11 at 17–18.) But in both those cases, the defendants televised embarrassing private facts about the plaintiffs. *See Zieve v. Hairston*, 598 S.E.2d 25, 27–28 (Ga. Ct. App. 2004); *Multimedia WMAZ, Inc. v. Kubach*, 443 S.E.2d 491, 493 (Ga. Ct. App. 1994). They don't apply here, and this claim fails as well.[7]

### 4. False Light and Misappropriation

**\*7** Plaintiff does not respond to Defendants' arguments regarding her claims for false light and misappropriation, so the Court deems those arguments unopposed. LR 7.1, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). Plaintiff thus abandoned those claims. *Onyeogoh v. Cucinelli*, 2020 WL 13544294, at *1 (N.D. Ga. Nov. 24, 2020) ("[W]hen an argument is raised that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned.") (collecting cases).

### C. Punitive Damages and Attorneys' Fees

Defendants say Plaintiff's claim for punitive damages and attorneys' fees should be dismissed because it is derivative of her other claims, all of which fail. (Dkts. 7 at 13–14; 8-1 at 17.) Plaintiff's VAWRA claim, however, survives. So, she may seek punitive damages and attorneys' fees should she succeed on that claim. 15 U.S.C. § 6851(b)(3)(A)(i); *see also Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000) ("Punitive damages are generally available for willful or intentional violations of a ... statutory duty[.]").

### III. Motion to Amend[8]

Plaintiff moves to amend her complaint. (Dkt. 28.) She says "[s]ince the filing o[f] Plaintiff's claims, and in preparation to respond to Defendants' motions to dismiss, Plaintiff has become aware of additional claims available to her that she wishes to assert at this time." (Dkt. 28 at 3.) Specifically, she wants to bring claims against Defendants for breach of fiduciary duty and for violations of O.C.G.A. § 16-11-62. (Dkt. 28 at 3–5.) Defendants oppose, saying Plaintiff's proposed amendment would be futile. (Dkts. 29; 30.)

Under the Federal Rules of Civil Procedure, a party may amend its complaint once as a matter of course within twenty-one days after serving it. Fed. R. Civ. P. 15(a)(1). All other amendments to pleadings require opposing counsel's written consent or leave of court. Fed. R. Civ. P. 15(a)(2). Courts "should freely grant leave when justice so requires." *Id.* But courts should not grant leave where, among other things, "amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). A proposed "amendment is futile where the complaint as amended would still be subject to dismissal." *Cox v. Mills*, 465 F. App'x 885, 889 (11th Cir. 2012).

### A. Breach of Fiduciary Duty

Plaintiff wants to add a claim against Defendants for breach of fiduciary duty, alleging that she placed "trust and confidence" in McCoy "when she allowed him to make the" intimate videos and photos and that he breached that duty by disclosing them (or allowing them to be disclosed). (Dkt. 28 at 4–5.) She also claims Espiritu "aided and abetted McCoy in so doing." (Dkt. 28 at 5.)

A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. *Bedsole v. Action Outdoor Advert. JV, LLC*, 750 S.E.2d 445, 452 (Ga. Ct. App. 2013). To prove someone aided and abetted such a breach, the plaintiff must show: (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. *Cottrell v. Smith*, 788 S.E.2d 772, 786 (Ga. 2016). So, in both instances, a plaintiff must establish the existence of a fiduciary relationship.

**\*8** Defendants say this claim fails because Plaintiff alleges no factual or legal basis for a fiduciary duty. (Dkts. 29 at 4–8; 30 at 3–6.) Defendants are correct. Plaintiff's proposed amended complaint is devoid of any factual allegations establishing a fiduciary relationship. She asserts in conclusory fashion that McCoy acted as her fiduciary because they were in a romantic relationship and because she allowed him to take intimate videos and photos of her. (Dkt. 28 at 4–5.) She points to no authority—and the Court can find none—suggesting this comes even close to creating a fiduciary relationship. In fact, Georgia courts are clear: "mere friendship and close fellowship, without more, do not create a fiduciary relationship." *Smith v. Walden*, 549 S.E.2d 750, 751 (Ga. Ct. App. 2001); *see also Cottrell*, 788 S.E.2d at 786 ("[defendant], by virtue merely of her status as a paramour of [plaintiff's], owned no fiduciary duty to [plaintiff]"). Nor is there any "confidential relationship between close friends with regard to a transaction in which they are not joined together as partners, promoters, joint venturers, or otherwise to achieve a common business objective[.]" *Arko v. Cirou*, 700 S.E.2d 604, 608 (Ga. Ct. App. 2010). Plaintiff's fiduciary claim is, therefore, untenable and amendment futile.

Plaintiff also argues whether a fiduciary relationship exists is a question of fact depending on the unique circumstances of the case and that such a relationship can exist so long as the purported fiduciary " 'is so situated as to exercise a controlling influence over the will, conduct, and interest of another.' " (Dkt. 32 at 2) (quoting *King v. King*, 888 S.E.2d 166, 169 (Ga. 2023).) She points to a case in which a court held that a clergyman might " 'occup[y] a confidential relationship toward a member of his church,' " or that " 'an actionable breach of fiduciary duty may arise when a confidential relationship is abused for purposes of sexual gratification.' " (Dkt. 32 at 4–5) (quoting *Brewer v. Paulk*, 673 S.E.2d 545, 549 (Ga. Ct. App. 2009).)

While the existence of a fiduciary relationship may be a question of fact, in deciding whether her allegations establish a breach of fiduciary duty, the Court is bound by the facts pled. Those allegations do not suggest Plaintiff and McCoy had the kind of confidential relationship that establishes a fiduciary duty. Their relationship was nothing like that of business partners, or of a clergyman and a congregant, or something similar. Instead, her allegations establish only the precise sort of "personal"

relationship Georgia courts have unequivocally held does not create a fiduciary obligation.

### B. Georgia Statutory Claim

Plaintiff also seeks to amend to raise a new claim under O.C.G.A. §§ 16-11-62 and 51-1-6. (Dkt. 28 at 4–5.) Defendants say this amendment would be futile because § 16-11-62—a criminal statute—does not provide a private cause of action. (Dkts. 29 at 8; 30 at 6.) Plaintiff seems to concede § 16-11-62 does not provide a cause of action, but argues it creates a "statutory right" that is actionable under § 51-1-6. (Dkt. 32 at 11–12.)

As already explained, O.C.G.A. § 16-11-62 prohibits someone from—among other things—"distribut[ing], without legal authority, ... any photograph, videotape, or record, ... of the activities of another which occur in any private place and out of public view without the consent of all persons observed[.]" Georgia courts have held, however, that "the statute[ ] establishing the criminal offense of unlawful eavesdropping or surveillance under [O.C.G.A.] § 16-11-62 ... 'do[es] not create [a] private right[ ] of action.' " *Rogers v. Dupree*, 824 S.E.2d 823, 835 (Ga. Ct. App. 2019) (McFadden, P.J., concurring in part). Plaintiff doesn't argue any differently. (Dkt. 32 at 9–10.) But, she says, because her allegations establish a violation of § 16-11-62 (which she argues provides her a statutory right to privacy), Defendants' conduct is actionable under O.C.G.A. § 51-1-6.

As noted above, O.C.G.A. § 51-1-6 says "[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." That statute generally "allows an individual to assert a tort claim for the violation of a legal duty where a cause of action does not otherwise exist." *Higdon*, 393 F.3d at 1221. But § 51-1-6 "does not give rise to a private cause of action unless the statute outlining the legal duty provide for a civil remedy." *Northup v. Conseco Finance Corp.*, 141 F. Supp. 2d 1372, 1376 (M.D. Ga. 2001). As a criminal statute, O.C.G.A. § 16-11-62 does not provide any such remedy. *See Calhoun v. Fed. Nat. Mortg. Ass'n*, 823 F.2d 451, 455 (11th Cir. 1987) ("Penal statutes in Georgia do not give rise to a private cause of action for the conduct proscribed," and so are not actionable under § 51-1-6). So, Plaintiff's new state-law claim would fail, and amendment would be futile.

### IV. Motion to Proceed Anonymously

**\*9** Plaintiff moves to proceed anonymously, citing the "sensitive and highly personal nature of [her] claims." (Dkt. 22 at 4.) Defendants do not oppose Plaintiff's motion.[9]

In determining whether to allow a plaintiff to proceed anonymously, "the relevant question is whether the plaintiff 'has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.' " *S.B. v. Fla. Agric. & Mech. Univ. Bd. of Trustees*, 823 F. App'x 862, 866 (11th Cir. 2020) (citation omitted). The Eleventh Circuit has held that a plaintiff should be allowed to proceed anonymously in cases involving, among other things, "matters of a highly sensitive and personal nature." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992).

The Court concludes this case—in which Plaintiff seeks to vindicate a substantial privacy right—presents such highly sensitive and personal information. Disclosure of this information—and of Plaintiff's identity—would plainly compound the harm she has already purportedly suffered as result of Defendants' alleged conduct. Indeed, VAWRA seeks to protect significant privacy interests, and even provides for injunctive relief maintaining the plaintiff's confidentiality in the event his or her claim succeeds. 15 U.S.C. § 6851(b)(3)(B). And the Court cannot identify any significant public interest in knowledge of or access to Plaintiff's identity. So, the Court concludes Plaintiff's privacy right outweighs the presumption of public disclosure and allows Plaintiff to proceed using a pseudonym. *See Doe v. Willis*, 2023 WL 6907100, at \*1 (D. Colo. Sept. 22, 2023) (granting plaintiff asserting VAWRA claim leave to proceed anonymously).

## V. Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions to Dismiss Plaintiff's Complaint (Dkts. 7; 8), **GRANTS** Plaintiff's Motion to Proceed Under a Pseudonym (Dkt. 22), and **DENIES** Plaintiff's Motion for Leave to File First Amendment to Complaint (Dkt. 28). The Court **DISMISSES** Plaintiff's state-law claim (Count II). Her VAWRA claim (Count I) survives.

**SO ORDERED** this 28th day of February, 2024.

## All Citations

Not Reported in Fed. Supp., 2024 WL 843908

## Footnotes

1    For purposes of Defendants' motions to dismiss, the Court accepts the allegations of Plaintiff's complaint as true. *See Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010).

2    What a strange way of saying his girlfriend did it without his permission.

3    The Court recognizes *McKinley* is unpublished and not binding. The Court cites it and other unpublished cases as instructive, nonetheless. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

4    To the extent Plaintiff suggests the purported duty VAWRA imposed on McCoy is actionable under § 51-1-6—putting aside that Plaintiff did not bring a claim under § 51-1-6—that statute applies only "where a cause of action does not otherwise exist." *Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004). Because VAWRA creates a private right of action, § 51-1-6 "does not allow [Plaintiff] to pursue duplicative remedies for an alleged violation of federal law." *Id.* at 1222.

5    Plaintiff also cites an old Alabama case for the proposition that intrusion upon one's "emotional sanctum" is sufficient to state a claim. (Dkt. 11 at 18–19) (citing *Phillips v. Smalley Maintenance Servs., Inc.*, 435 So. 2d 705, 711 (Ala. 1983).) Regardless of whether that case says what Plaintiff claims it does, it is not the law in Georgia.

6    Plaintiff interprets the term "public at large" to mean "every member of the public." (Dkt. 11 at 24.) That is not what the law suggests. While the cases don't put a hard-and-fast number on how many people qualify as the "public at large," it is clear that the law makes disclosure actionable when the defendant makes it to something like a television audience, not to a group of friends at a restaurant.

7    Plaintiff also seems to conflate the requirements for a state-law disclosure claim with those of an intrusion claim, citing instances where courts found that intrusion by surveillance was actionable to support her disclosure claim. (Dkt. 11 at 18–20.) But those two torts have different elements. Regardless, both her claims fail for the reasons discussed.

8     In her responses to Defendants' motions to dismiss, Plaintiff asked to amend her complaint to raise the same additional claims she seeks to bring in her motion to amend. (Dkts. 11 at 23–25; 12 at 20–22.) The Court deems her arguments in those briefs moot given the motion to amend. So, in deciding the motion to amend, the Court considers only the arguments raised in that motion, and not in Plaintiff's other briefs.

9     Defendants did complain about Plaintiff's filing suit anonymously, arguing it violated federal pleading standards. (Dkts. 7 at 5–6; 8-1 at 6–7.) They focused mostly on Plaintiff's failure to seek leave of court. (*Id.*) Because she has now done so—and Defendants do not respond—the Court assumes they do not oppose the motion.

---

     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2293898
Only the Westlaw citation is currently available.
United States District Court, M.D. Tennessee, Nashville Division.

Jane DOE, Plaintiff,
v.
The METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, et al.,
Defendants.
Dr. Lily Moreno Leffler, Plaintiff,
v.
Metropolitan Government of Nashville and Davidson County, Tennessee, et al., Defendants.
Dr. James Bailey, et al., Plaintiffs,
v.
The Metropolitan Government of Nashville and Davidson County, Tennessee, et al., Defendants.

Civil No. 3:20-cv-01023 Lead Case, Civil No. 3:21-cv-00038 Member Case, Civil No. 3:21-cv-00122 Member
Case
|
Filed 06/24/2022

**Attorneys and Law Firms**

Ann Buntin Steiner, The Law Offices of Steiner & Steiner, Nashville, TN, for Plaintiff in 3:20-cv-01023, 3:21-cv-00038.

J. Brooks Fox, Melissa S. Roberge, Kelli F. Woodward, Metropolitan Goverment of Nashville and Davidson County
Department of Law, Nashville, TN, for Defendants in 3:20-cv-01023.

J. Brooks Fox, Metropolitan Legal Department, Nashville, TN, for Defendants in 3:21-cv-00038, 3:21-cv-00122.

Ann Buntin Steiner, The Law Offices of Steiner & Steiner, Nashville, TN, Jesse Ford Harbison, Jesse Harbison Law, PLLC,
Nashville, TN, for Plaintiffs in 3:21-cv-00122.

**MEMORANDUM and ORDER**

ALETA A. TRAUGER, United States District Judge

**\*1** Before the court are (1) the defendants' Motion to Remove the Pseudonym "Jane Doe" from this Lawsuit (Doc. No. 97),
which the plaintiff identified as Jane Doe opposes, and (2) the defendants' unopposed Motion to Ascertain Status of their
Motion to Remove the Pseudonym (Doc. No. 134). For the reasons set forth herein, the defendants' Motion to Remove the
Pseudonym will be granted, and the Motion to Ascertain Status will be denied as moot.

**I. BACKGROUND**
Plaintiff Jane Doe's Second Amended Complaint asserts claims for employment discrimination and retaliation under both
federal law (42 U.S.C. § 1983, based on alleged violations of the Family Educational Rights and Privacy Act ("FERPA") and
the First Amendment, and Titles VI and VII of the Civil Rights Act) and state law (the Tennessee Teachers' Tenure Act and

the Tennessee Human Rights Act) in connection with the plaintiff's demotion and the defendants' subsequent rejection of the plaintiff's applications for other positions for which she was allegedly qualified. (Doc. No. 85.) In addition to having been employed as a teacher and administrator by the Metropolitan Nashville Public Schools ("MNPS"), a public school system operated by defendant Metropolitan Government of Nashville and Davidson County ("Metro"), the plaintiff is also the parent of a child with special needs who attends public school in Nashville. The plaintiff's retaliation claims are premised upon protected activity that concerned the defendants' treatment of her minor child, including complaints the plaintiff made about a specific lesson plan taught to her child that the plaintiff considered to be inappropriate for a number of reasons and about another teacher's unauthorized posting of a video that featured the plaintiff's child, as well as the plaintiff's filing of a separate lawsuit against Metro on behalf of her minor child.

At the same time that Jane Doe filed this lawsuit in April 2021, she also filed a Motion for Leave to File Under a Pseudonym. (Doc. No. 7.) In the plaintiff's Memorandum and Declaration supporting that motion, the plaintiff noted that her complaints to MNPS were about incidents involving her child while the plaintiff was both employed by MNPS and taught at the same school attended by her child. (Doc. No. 9 ¶ 3.) The plaintiff also stated that she wished to pursue this lawsuit under a pseudonym, because she did not "want it to be known that [her] minor child ... has a diagnosis of autism or was treated in [the] manner set forth in [her] Complaint." (*Id.* ¶ 8.) The Magistrate Judge to whom the case was initially referred granted the motion in a brief Order adopting the reasons stated in Doe's Memorandum. (Doc. No. 11.) Although the Order was entered before the defendants had even been served with process, the defendants have not previously raised an objection to the plaintiff's proceeding anonymously.

The defendants have now filed their Motion to Remove the Pseudonym, seeking to require the plaintiff to proceed using her own name. (Doc. No. 97.) The plaintiff filed a Response in opposition to the motion, along with her Declaration (Doc. Nos. 104, 106), and the defendants filed a Reply (Doc. No. 114).

## II. DISCUSSION

### A. Standard Governing a Plaintiff's Use of a Pseudonym

**\*2** The "general rule [is] that a complaint *must state* the names of the parties." *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005) (citing Fed. R. Civ. P. 10(a)); *see also Smith v. S.E.C.*, 129 F.3d 356, 359 n.1 (6th Cir. 1997) (noting the "strong presumption that court files will be open to the public"). This rule has "constitutional overtones," as a plaintiff's use of a pseudonym "runs afoul of the public's common law right of access to judicial proceedings, a right that is supported by the First Amendment." *Doe v. Del Rio*, 241 F.R.D. 154, 156 (S.D.N.Y. 2006) (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000)) (internal quotation marks omitted); *see also Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010) ("The normal presumption ... that parties must use their real names ... is loosely related to the public's right to open courts and the right of private individuals to confront their accusers." (internal citations omitted)).

The Sixth Circuit has identified a non-exhaustive list of factors courts may consider in determining whether "special circumstances" exist to justify an exception to the rule, including:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information of the utmost intimacy; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Id.* at 560 (quoting *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004)). The court may exercise its discretion to consider other factors that may be relevant in a particular case, keeping in mind that the applicable standard is whether "a plaintiff's privacy

interests *substantially outweigh* the presumption of open judicial proceedings." *Porter*, 370 F.3d at 560 (emphasis added).

### B. The Defendants' Motion

In support of their motion, the defendants argue that the factors that initially, at least arguably, supported the plaintiff's use of a pseudonym no longer weigh in her favor. They concede that they did not oppose the plaintiff's use of a pseudonym when this case was filed. They point out, however, that the plaintiff is no longer employed by MNPS and that her child does not attend the same school as previously. In addition, the court has now dismissed the separate lawsuit that the plaintiff filed on behalf of her minor child, *Doe v. Herman*, No. 3:20-cv-00947, 2021 WL 1967558 (M.D. Tenn. May 17, 2021). The defendants contend that, as a result, the case is now "a straightforward employment matter," and the plaintiff's fears on behalf of her child are unwarranted. (Doc. No. 97, at 3–4.) In addition, they argue that the parties can take steps to protect the plaintiff's minor child's identity short of permitting the plaintiff herself from proceeding under a pseudonym. Finally, they contend that, in this consolidated suit involving several different plaintiffs, "[t]he combination of unsealed, and sometimes sealed documents (when using anything with Jane Doe's real name on it) has become very unwieldy in discovery and will become increasingly so as the parties advance toward the summary-judgment process, trial, and any appeals...." (*Id.* at 4.)

In her Response, the plaintiff argues that (1) the standard of review applicable to the defendants' motion is the same as the standard applicable to Rule 59(e) motions to alter or amend a judgment, and, under that standard, the defendants have not shown that they are entitled to relief; (2) the plaintiff's circumstances have not changed significantly, and she still seeks to protect her minor child, whom she fears will be harassed by teachers or students at his new school if her identity is disclosed. She asserts that the *Porter* factors identified above continue to weigh in her favor.

### C. The Applicable Standard of Review

**\*3** As an initial matter, the plaintiff's contention that Rule 59(e) governs the court's review of the defendant's motion is incorrect. That rule governs motions to "to alter or amend a *judgment.*" Fed. R. Civ. P. 59(e) (emphasis added). The Order granting the plaintiff leave to proceed under a pseudonym was an interlocutory order entered prior to final judgment. The Sixth Circuit has recognized that "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)); *see also Mallory*, 922 F.2d at 1282 ("A district court may modify, or even rescind, such interlocutory orders."); *In re Saffady*, 524 F.3d 799, 802–03 (6th Cir. 2008) (holding that a district court can vacate interlocutory orders prior to entry of final judgment, even *sua sponte*).[1] "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959.

More recently, the Sixth Circuit, citing *Mallory*, affirmed a district court's order lifting a protective order sealing the case. *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 594 (6th Cir. 2016). In that case, the court noted that it was particularly appropriate for the district court to revisit the appropriateness of a protective order when it had failed to "make any findings or legal conclusions in support of the initial seal." *Id.* at 594. The court went on to find that the district court had not abused its discretion in vacating the protective order, reiterating that, "in making this determination, a court must balance the litigants' privacy interests against the public's right of access, recognizing our judicial system's strong presumption in favor of openness."[2]

In light of this precedent, the court finds that there is both new evidence available and a need to correct a clear error, as the order originally granting the plaintiff's motion to proceed anonymously did not make any express factual findings or legal conclusions. The court, therefore, will exercise its inherent discretion to revisit the matter of whether the plaintiff should be permitted to continue to proceed under a pseudonym, applying the same legal standard as that applied to an initial motion to proceed under a pseudonym, set forth above.

**D. The _Porter_ Factors**

The plaintiff in this case sues to challenge governmental activity, the first _Porter_ factor. Thus, this factor weighs in the plaintiff's favor, but not heavily, because the challenge raised here is not of the type that has been recognized as weighing strongly in favor of permitting anonymity. _See Doe v. Stegall_, 653 F.2d 180, 186 (5th Cir. 1981) ("[I]n only a very few cases challenging governmental activity can anonymity be justified."); _Doe v. Carson_, No. 19-1566, 2020 WL 2611189, at *3 (6th Cir. May 6, 2020) ("Doe argues on appeal that she has a First Amendment right to petition for the redress of grievances without roadblocks keeping her from exercising that right. Because any lawsuit against the government would implicate the First Amendment right to petition for redress of grievances, Doe's argument fails to show exceptional circumstances warranting the use of a pseudonym."), _cert. denied_, 141 S. Ct. 1411 (2021); _see also G.E.G. v. Shinseki_, No. 1:10-CV-1124, 2012 WL 381589, at *2 (W.D. Mich. Feb. 6, 2012) (noting that this factor "usually applies to cases in which the plaintiff challenges governmental activity such as a policy or statute").

**\*4** The next question is whether the plaintiff will be required to disclose intimate information. The plaintiff argues that she has a substantial privacy interest in the "medical condition, health, and school information of her child." (Doc. No. 104, at 6.) As the defendants argue, however, the relevance of the plaintiff's child's medical diagnosis or other information about her child to this lawsuit is "tenuous at best." (Doc. No. 97, at 2.) The plaintiff brings claims for employment discrimination and retaliation that do not remotely implicate intimate information concerning the _plaintiff_. Moreover, although the protected activity giving rise to her retaliation claims concerned the defendants' treatment of her child, the fact that the plaintiff engaged in protected activity, for purposes of her retaliation claims, is not in dispute. And, as this court has recognized elsewhere, "other types of protective orders, such as those requiring that documents containing sensitive information be sealed or redacted, may be appropriate as an alternative to permitting a litigant to proceed anonymously." _Ramsbottom v. Ashton_, No. 3:21-CV-00272, 2021 WL 2651188, *3 (M.D. Tenn. June 28, 2021) (Trauger, J.). This factor does not weigh in the plaintiff's favor.

The third _Porter_ factor (whether the litigation compels the plaintiff to disclose an intention to violate the law) is not relevant and, therefore, does not weigh in favor of permitting the plaintiff to proceed anonymously.

As for the fourth factor, all of the cases the plaintiff cites as supporting a conclusion that anonymity in her case is warranted involved plaintiffs who either were minors themselves or brought suit on behalf of their minor children. _See, e.g., Porter_, 370 F. 3d at 561 (noting that the suit was "brought on behalf of very young children"); _Stegall_, 653 F2d at 186 ("A final factor we find especially persuasive is the fact that plaintiffs are children."). The plaintiff here is not a minor and she does not purport to bring suit on behalf of her minor child. This factor does not weigh in her favor either.

The _Porter_ factors, of course, are not meant to be exhaustive, and the court has the discretion to consider whether any other special circumstances warrant permitting the plaintiff to proceed under a pseudonym. The court understands the plaintiff to be arguing, essentially, that disclosure of her identity will necessarily, by association, reveal the identity of her child, thus justifying her continuing to proceed anonymously. She also alleges in her Declaration—but not in the Complaint or Second Amended Complaint—that many of the teachers at her son's former school knew about the plaintiff's lawsuit _on behalf of her child_ and that her son suffered retaliation because of that lawsuit. (Doc. No. 106 ¶¶ 19–20.)[3]

The court is not persuaded that the plaintiff's association with her child, under the circumstances presented here, warrants permitting the plaintiff to continue to proceed under a pseudonym. At this juncture, this case is a relatively straightforward employment discrimination lawsuit. The plaintiff's lawsuit on behalf of her child has been dismissed, and the plaintiff herself is no longer employed by MNPS. Her child attends a different school than the one he attended when the events giving rise to the plaintiff's complaints and this lawsuit occurred. Although the plaintiff's concerns about protecting her minor child are understandable, the disclosure of her identity will not automatically result in the disclosure of her child's.[4]

The gravamen of the case is whether the _plaintiff_—not her minor child—was subjected to retaliation or discrimination. The plaintiff may choose to focus on and emphasize the events that gave rise to the protected activity on which her retaliation claims are based—indeed, she has already done so in her pleadings—but those events are of relatively minimal importance to the question of whether she can prove that the defendants retaliated against her in response to those complaints. "It is the

exceptional case in which a plaintiff may proceed under a fictitious name." *Carson*, 2020 WL 2611189, at *2. This case is not exceptional, and the plaintiff cannot overcome the strong presumption that parties to a lawsuit must proceed under their own names.

### III. CONCLUSION AND ORDER

**\*5** For these reasons, the defendants' Motion to Remove the Pseudonym (Doc. No. 97) is **GRANTED**, and the Order initially granting the plaintiff's Motion for Leave to Proceed Under a Pseudonym (Doc. No. 11) is **VACATED**. The Motion to Ascertain Status (Doc. No. 134) is **DENIED AS MOOT**.

It is so **ORDERED**.

### All Citations

Not Reported in Fed. Supp., 2022 WL 2293898

### Footnotes

1    Rule 54 provides, as relevant here, that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

2    The court also found that it had jurisdiction over the plaintiff's appeal of the district court's order granting the defendant's motion to unseal, under the collateral order doctrine. *Rudd*, 834 F.3d at 592 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949); *Application of Nat'l Broad. Co.*, 828 F.2d 340, 343 (6th Cir. 1987)).

3    The plaintiff's Declaration refers only to "a lawsuit against the school system," but the event to which she refers took place before the plaintiff filed the present lawsuit, so it is clear from the context that she was referring to the suit she filed on behalf of her child. (*See* Doc. No. 106 ¶ 19.) Moreover, some of the "retaliatory" events to which she refers took place before she filed the lawsuit on behalf of her son. (*Id.* ¶ 20(3).)

4    Obviously, the parties should not, under any circumstances, file unredacted documents containing the minor child's name, except under seal.

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 130480
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Jane DOE, a pseudonym, Plaintiff,
v.
MIDDLESEX COUNT, NEW JERSEY, et al., Defendants.

Civil Action No. 20-8625 (MAS) (ZNQ)
|
Signed 01/14/2021

**Attorneys and Law Firms**

Jessica Lee Hunter, Wittels Mcinturff Palikovic, Armonk, NY, Lawrence S. Lustberg, Gibbons, PC, Newark, NJ, for Plaintiff.

Kurt Jason Trinter, Kelso & Burgess, Esqs., Newark, NJ, for Defendant New Jersey Middlesex County.

Lori A. Dvorak, Dvorak & Associates, LLC, Metuchen, NJ, for Defendant Mark J. Cranston.

Jennifer Ann Passannante, Hoagland Longo Moran Dunst & Doukas LLP, New Brunswick, NJ, for Defendant Mildred Scott.

John Warren Harding, Martin, Kane & Kuper, Esqs., East Brunswick, NJ, for Defendant Jessie A. Jimenez, Tabitha A. Knight, Daniel J. Marcinko.

John F. Gillick, Rainone Coughlin Minchello, LLC, Iselin, NJ, for Defendant Maureen A. Bocknack, Dawn R. Burch, Myesha Caraballo, Shari Eisenberg, Joseph F. Johnson, Margaret Kolta, Ashley Kophamel, Joshua Padilla, Iverinisse Rivera.

Clark W. Convery, Convery, Convery & Shihar, Edison, NJ, for Defendant Randy P. Einhorn, Edwin R. Mata, Christopher E. Neder.

**MEMORANDUM OPINION & ORDER**

Zahid N. Quraishi, United States Magistrate Judge

**\*1** This matter comes before the Court upon Plaintiff Jane Doe's ("Doe") Motion for Leave to Proceed Under Pseudonym ("Motion"). (ECF No. 23.) Defendants Middlesex County, New Jersey ("Middlesex County"), Mark J. Cranston ("Cranston"), Mildred Scott ("Scott"), Jessie A. Jimenez ("Jimenez"), Tabatha A. Knight ("Knight"), Daniel J. Marcinko ("Marcinko"), Maureen A. Bocknack ("Bocknack"), Dawn R. Burch ("Burch"), Myesha Caraballo ("Caraballo"), Jeffrey Dominguez ("Dominguez"), Randy P. Einhorn ("Einhorn"), Shari Eisenberg ("Eisenberg"), Joseph F. Johnson ("Johnson"), Margaret Kolta ("Kolta"), Ashley Kophamel ("Kophamel"), Joshua Padilla ("Padilla"), Iverinisse Rivera ("Rivera"), Edwin R. Mata ("Mata"), and Christopher E. Neder ("Neder") opposed, (ECF Nos. 48, 49, 50, 51, 52, 53),[1] and Doe replied, (ECF No. 57). The Court has carefully considered the arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Doe's Motion is granted.

100

## I. <u>BACKGROUND</u>

The following is a summary of Doe's allegations as outlined in her Complaint. (Compl., ECF No. 1.) Doe was booked into Middlesex County Jail on February 7, 2018. (*Id.* at ¶ 36.) Doe was four months pregnant at the time of her booking. (*Id.*) She claims that, between February 7, 2018 and May 11, 2018, either the Middlesex County Sheriff's Office or Middlesex County Department of Corrections, or both, personnel escorted her to off-site doctor visits related to her pregnancy. (*Id.* at ¶ 37.) During each transport, Doe claims she was restrained with handcuffs. (*Id.*)

On May 11, 2018, Doe was released from Middlesex County Jail and admitted to an inpatient drug treatment and counseling facility in Newark, New Jersey. (*Id.* at ¶ 40.) Between May 24, 2018 and July 10, 2018, Doe claims she was repeatedly transported with handcuffs to her pre-natal care visits. (*Id.* at ¶ 41.) On July 11, 2018, Doe's water broke. (*Id.* at ¶ 47.) Doe claims she was once again transported to the hospital in handcuffs and was shackled to her hospital bed. (*Id.* at ¶¶ 57-67.) Doe claims that multiple hospital staff members including a nurse and a doctor asked the Correctional Officers whether the restraints were necessary. (*Id.* at ¶¶ 69, 70, 72.) Doe further alleges that certain Defendants stayed inside the hospital room during private and embarrassing portions of care. (*Id.* at ¶¶ 71, 89.) Doe claims she was only allowed to call her fiancé after delivery. (*Id.* at ¶ 110.)

Doe went into labor in the early hours of July 12, 2018 and Baby Doe was delivered at 10:16 a.m. that morning. (*Id.* at ¶¶ 93-105.) From the time Doe left Middlesex County Jail on July 11, 2018 throughout her labor, including a Caesarian section, Doe claims she was not allowed to call her fiancé or any family members to inform them she was in labor. (*Id.* at ¶¶ 52-54, 74, 80, 95, 96, 104.) Doe remained restrained to her hospital bed after giving birth to Baby Doe and throughout the remainder of her hospital stay. (*Id.* at ¶¶ 107, 121-130.)

**\*2** On July 10, 2020, Doe filed a thirty-count Complaint under pseudonym, alleging various violations of the New Jersey Constitution, 42 U.S.C. § 1983, and violations of Doe's constitutional protections under the United States' Constitution. (*Id.* at ¶¶ 181-310.)

In the instant Motion, Doe seeks to maintain her anonymity and proceed pseudonymously. (*See generally* Moving Br., ECF No. 23-1.) Doe contends the nine factors outlined in *Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011), weigh in favor of her proceeding anonymously. (Moving Br. 3.) Defendants oppose Doe's Motion, highlighting that the use of a pseudonym has traditionally been reserved for exceptional cases. (*See generally* Middlesex Opp'n.) Defendants contend the *Megless* factors weigh against allowing Doe to proceed anonymously. (*Id.*)

## II. <u>DISCUSSION</u>

It has long been held that "[o]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public," an "important dimension" of which is that the person using the court identify themselves. *Megless*, 654 F.3d at 408 (quoting *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997)). The use of pseudonyms "runs afoul of the public's common law right of access to judicial proceedings ...." *Id.* (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000)). Federal Rule of Civil Procedure 10(a) reflects those principles, stating "[t]he title of the complaint must name all the parties ...." *See id.*

"While not expressly permitted under Federal Rule of Civil Procedure 10(a), in exceptional cases courts have allowed a party to proceed anonymously." *Id.* Courts have allowed parties to use fictitious names in cases involving "abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990); *Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (collecting cases and discussing the widespread public fear of AIDS). "That a plaintiff may suffer embarrassment or economic harm is not enough. Instead, a plaintiff must show 'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable.' " *Id.* (quoting *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1043 (9th Cir. 2010)) (internal citation omitted). In *Megless*, the United States Court of Appeals for the Third Circuit summarized the nine non-exclusive factors courts within its jurisdiction consider when determining whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation. *Megless*, 654 F.3d at 409. The six factors that weigh in favor of anonymity include:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

**\*3** *Id.* (quoting *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 467–68 (E.D. Pa. 1997)). The three factors that weigh against anonymity include:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (quoting *Provident Life & Acc. Ins. Co.*, 176 F.R.D. at 467–68). In light of the foregoing principles, the Court addresses each factor in turn.

### A. *Megless* Factors Weighing in Favor of Anonymity

First, the Court asks: "[H]as the identity of the litigant been kept confidential?" *Megless*, 654 F.3d at 410. Doe contends that she "has not posted on social media or made any other public statements about this case, and that she has been extremely private about the experience." (Moving Br. at 5; *see also* Pl.'s Reply at 2-3.) Defendants argue that because Plaintiff's counsels have given statements to the media, Doe's Complaint is too detailed, and OPRA requests may supersede Doe's pseudonym status, this factor weighs against anonymity. (Middlesex Opp'n at 8-9.) Doe responds that: (1) her counsels' statement was about public filings on the docket, proceeding with a pseudonym does not equate to a gag order where attorneys are unable to discuss factual and legal issues in the case, and Doe herself refused interviews with the media; and (2) Doe's Complaint had sufficient detail to state her claim, especially considering that there are nineteen Defendants. (Pl.'s Reply at 2-6.) Doe argues that she is not seeking to seal the case and wants the public to discuss the pressing issue of whether pregnant inmates should be shackled. (Pl.'s Reply at 5.)

Defendants rely upon *Doe v. Rider University*, where the Court found that Plaintiff's counsel's statements to the media weighed against proceeding pseudonymously because "[f]undamental fairness generally requires plaintiffs to make their accusations publicly, as it is unfair to allow a plaintiff to 'hurl accusations at [a defendant] from behind 'a cloak of anonymity.' " No. 16-4882 (BRM), 2018 WL 3756950, at *8, 2018 U.S. Dist. LEXIS 133146, at *24 (D.N.J. Aug. 7, 2018) (citations omitted); (Middlesex Opp'n at 8-9.). In response, Doe cites to *Doe v. Rutgers*, where the Court held that even when the plaintiff herself speaks to the media, if done so anonymously and without disclosing her name, this factor would still weigh in favor of proceeding pseudonymously. No. 18-12952, 2019 WL 1967021, at *2 (D.N.J. Apr. 30, 2019). The Court agrees with the *Rutgers* analysis that whether Plaintiff or Plaintiff's counsel speak with the media is not of significant weight in considering this factor, where statements to the media do not mention Plaintiff's name and Plaintiff has shown a concerted effort to keep her identity hidden from the public. Furthermore, the Court finds after review of counsel's statements to the media, that the statements added no new information beyond what the public already had access to in Doe's Complaint. (Middlesex Opp'n, Ex. A.)

**\*4** Even if the Court were to side with the reasoning in *Rider*, the balancing of factors in this case are distinguishable *from Rider*. In *Rider*, the Court denied Plaintiff's request to proceed under a pseudonym because they found only one out of the six *Megless* factors actually weighed in favor of proceeding pseudonymously, while the other five factors were either neutral or

weighed against proceeding pseudonymously. *See generally Rider*, 2018 WL 3756950, at *8, 2018 U.S. Dist. LEXIS 133146. ("On balance, the Court finds the [ ] factors weigh against allowing Plaintiff to proceed through the use of a pseudonym.") Here, as discussed below, the Court finds that even if this factor is neutral or weighs against proceeding pseudonymously, four of the other *Megless* factors weigh in favor of proceeding pseudonymously. Thus, on balancing the factors, the Court would reach the same result.

Accordingly, the first factor favors Plaintiff's use of a pseudonym. *See Doe v. Rutgers*, No. 18-12952, 2019 WL 1967021, at *2 (D.N.J. Apr. 30, 2019) ("Factor (1) weighs in favor plaintiffs who 'make substantial efforts to maintain anonymity' and 'limi[t] the disclosure of sensitive information to few other people.' ") (quoting *Doe v. Rider Univ.*, No. 16-4882, 2018 WL 3756950, at *3 (D.N.J. Aug. 7, 2018)).

The second question is: "What harm is the litigant seeking to avoid, and is the litigant's fear reasonable?" *Megless*, 654 F.3d at 410. Doe claims that disclosure of her identity will exacerbate "ongoing psychological trauma caused by her birth experience" and will lead to retaliation from Middlesex County personnel. (Moving Br. at 6.) Doe claims she feels "anguished and disturbed" about her birthing experience, which has caused her to have nightmares and traumatic memories, emotional distress, and anxiety. (*Id.*) Doe argues that public disclosure of her identity will exacerbate these "severe negative mental and emotional experiences and further re-traumatize her." (*Id.*) Doe further argues that as a resident of Middlesex County, being incarcerated again in 2020, she is likely to encounter the same officers listed in this case as Defendants and face "harassment or unpredictable conduct." (*Id.* at 7.) Defendants argue that Doe has not provided any medical records attesting to her claims of mental and emotional anguish nor has Doe, who has in fact been in contact with Middlesex County personnel in the two years since giving birth, suffered retaliation, harassment, or unpredictable conduct. (Middlesex Opp'n at 11-12.) Although the Court agrees with Defendants that Doe has failed to provide any medical records to support her claims of mental and emotional distress, Doe has shown that her fear of severe harm by being retraumatized is reasonable. Similar to *Doe v. Trishul Consultancy, LLC*, No. 18-16468, 2019 WL 4750078, at *4 (D.N.J. Sept. 30, 2019), in which this Court found that disclosure of a victim of sexual assault's identity carried a concrete risk of severe emotional harm and revictimization, here, the Court finds more than general allegations of emotional distress or other harm in this case. Particularly, Doe alleges she suffers from anxiety, emotional distress, and post-traumatic stress disorder like symptoms, which will be exacerbated by disclosing her identity in this case and will force her to relive the trauma she suffered while giving birth. (Moving Br. at 7); *see Trishul Consultancy, LLC*, 2019 WL 4750078, at 8-9. Furthermore, Doe argues that proceeding pseudonymously will allow her to control the time and manner in which her son, Baby Doe, learns of his traumatic birth. (Pl.'s Reply at 6.) The Court finds the Eastern District of New York's reasoning in *Doe v. City of New York* to be persuasive and agrees with Doe that protecting her right to inform her son of the circumstances of his birth is a strong consideration for the Court to take into account. No. 20-1344, ECF No. 19 (E.D.N.Y. Sept. 11, 2020) ("involving pregnancy or minor children fall squarely in the category of highly sensitive or personal content that justifies anonymous plaintiffs proceeding pseudonymously.") Thus, the Court finds this factor also weighs towards proceeding pseudonymously.

**\*5** The third inquiry is: "[I]f this litigant is forced to reveal his or her name, will other similarly situated litigants be deterred from litigating claims that the public would like to have litigated?" *Megless*, 654 F.3d at 410. Doe asserts that she should be allowed to use a pseudonym so other similarly situated plaintiffs would not be deterred from filing suit. (Moving Br. 7.) Doe also argues that she will be re-traumatized by revealing to the public intimate details of an extremely personal aspect of her life. (*Id.* at 8.) In addition, Doe argues that revealing her identity to the public will increase the likelihood that her son will learn the story of his birth at an early and inappropriate age. (*Id.*) Defendants argue that because they are public entities, the public has a greater interest in knowing the identity of the parties. (Middlesex Opp'n at 12.) The Court agrees with Doe that protecting her identity will help ensure similarly situated plaintiffs are not dissuaded from pursuing their claims. As this Court stated in *Trishul Consultancy*, "[c]ourts have a strong interest in incentivizing plaintiffs to litigate their claims without threat of revictimization, and as a result, there is a strong public interest in maintaining the confidentiality of Plaintiff's identity." 2019 WL 4750078, at *4 (D.N.J. Sept. 30, 2019). Thus, this factor weighs in favor of proceeding pseudonymously.

The fourth question is: "[A]re the facts not relevant to the outcome of the claim?" *Megless*, 654 F.3d at 410. Doe claims that the facts of her case are largely undisputed, that is, she was restrained during her pregnancy, labor and delivery, and after giving birth. (Moving Br. at 9.) Thus, Doe claims her case will be centered around the constitutionality of Middlesex County's policy regarding the shackling of pregnant women thus, her identity is "wholly unnecessary." (*Id.*) Defendants argue that Doe's claims are highly fact-sensitive evidenced by her lengthy Complaint. However, as Doe notes, Defendants' answers mostly admit to the underlying facts that Doe was restrained during her pregnancy, labor and delivery, and postpartum. (*See, e.g.,* Padilla

Answer at ¶ 79, ECF No. 22.) Consequently, the Court finds that Doe's identity is not critical to this dispute. *See Rutgers*, 2019 WL 1967021, at *3. Therefore, the public's interest in Doe's identity is weak and this factor weighs in favor of proceeding pseudonymously. *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997) (finding the public's ability to follow the case's proceedings will not be impeded by allowing Plaintiff to proceed pseudonymously.)

Fifth, the Court asks: "[W]ill the claim be resolved on its merits if the litigant is denied the opportunity to proceed using a pseudonym, or will the litigant potentially sacrifice a potentially valid claim simply to preserve their anonymity?" *Megless*, 654 F.3d at 410. Though deterred, Doe concedes she will continue to pursue this action even if her identity is disclosed. (Moving Br. 10; Middlesex Opp'n at 14.) Defendants also acknowledge that because Doe admits she will continue to pursue her claims regardless of the outcome of this Motion, "this factor is not met and moot to the analysis." (*Id.*) Thus, this factor weighs neither for nor against proceeding pseudonymously. *See Rutgers*, 2019 WL 1967021, at *3 (holding that the fifth *Megless* factor does not apply where Plaintiff admits she would proceed even if denied Jane Doe status).

The sixth question is: "[I]s the litigant seeking to use a pseudonym for nefarious reasons?" *Megless*, 654 F.3d at 411. Defendants concede that Doe does not have an ulterior or nefarious motive for seeking to proceed pseudonymously. (Middlesex Opp'n at 14.) Thus, this factor weighs in favor of proceeding pseudonymously.

### B. *Megless* Factors Weighing Against Anonymity

The Court now moves to the factors weighing against the use of a pseudonym. First, the Court asks whether there is the universal level of public interest in access to the identities of litigants? *Megless*, 654 F.3d at 411. The Court finds that the first factor concerning public interest weighs against use of a pseudonym. *Id*. ("[W]e must acknowledge the thumb on the scale that is the universal interest in favor of open judicial proceedings ....") This factor weighs against proceeding pseudonymously however, does not by itself, outweigh the balancing of factors in favor of proceeding pseudonymously discussed above. *See Doe v. Hartford Life and Accident Ins. Co.*, 237 F.R.D. 545, 551 (D.N.J. 2006) ("The only factor against Plaintiff's use of a pseudonym is the public's general interest in having access to the identity of litigants. However, this interest exists in some respect in all litigation and does not outweigh the strength of the factors in favor of Plaintiff's use of a pseudonym."). Next the Court asks: "[D]oes the subject of the litigation heighten the public's interest?" *Megless*, 654 F.3d at 411. Defendants argue that because they are public entities, the case is of heightened interest to the public. (Middlesex Opp'n at 5-6.) The Court notes, however, that this factor focuses on the status of the litigant seeking to proceed pseudonymously, not of the opposing party. *Doe v. Oshrin*, 299 F.R.D. 100, 104 (D.N.J. 2014) (clarifying that this factor asks whether the plaintiff is a public figure). The Court does not find the second factor weighs against anonymity because it does not appear that the public has an unusually strong interest in knowing Doe's identity. Lastly, the Court asks: "[I]s the party opposing the use of a pseudonym doing so based on nefarious reasons?" *Megless*, 654 F.3d at 411. The parties disagree on whether Defendants' opposition to Doe's request to proceed pseudonymously is nefarious. (Moving Br. at 11; Middlesex Opp'n at 8.) Doe does not directly address this factor, instead she argues that "no illegitimate motive can or will be identified for the actions that Plaintiff has taken in filing this lawsuit and seeking to do under the pseudonym Jane Doe." (Moving Br. at 11.) The Court notes that this factor asks whether Defendants' opposition is nefarious, not whether Doe's motives are illegitimate. *Megless*, 654 F.3d at 411. Defendants argue that their opposition is legitimate because the public has a heightened interest in cases involving public entities. (Middlesex Opp'n at 8.) For the purposes of this factor alone, the Court agrees with Defendants that their opposition is not nefarious because they are public entities. Thus, this factor weighs against proceeding pseudonymously.

### III. <u>CONCLUSION</u>

**\*6** Upon consideration of each factor and their respective weights, the Court finds that this case falls into that special category of cases in which the Plaintiff's privacy interests outweigh the public's interest in open judicial proceedings. Specifically, this case is centered on a private and intimate moment in Doe's life during which, she alleges, her federal and state constitutional rights were violated. Furthermore, the Court finds that the public will not be any less informed regarding the case facts and legal issues if Doe is allowed to proceed pseudonymously.

IV. <u>**ORDER**</u>

For the reasons set forth above, and for other good cause shown,

**IT IS** on this 14th day of January, 2021 **ORDERED** that:

1. Doe's Motion (ECF No. 23) is **GRANTED**.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 130480

## Footnotes

[1]     Defendant Middlesex County filed the only substantive brief, (Middlesex Opp'n, ECF No. 48), in which all other Defendants joined, (ECF Nos. 49, 50, 51, 52, 53).

     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 5705632
Only the Westlaw citation is currently available.
United States District Court, M.D. Tennessee, Northeastern Division.

JANE DOE, Plaintiff,
v.
BRETT DILLON PARSONS Defendant.

Case 2:24-cv-00075
|
Filed 12/16/2024

**ORDER GRANTING MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM**

JON P. MCCALLA UNITED STATES DISTRICT COURT JUDGE

**\*1** Before the Court is Plaintiff Jane Doe's ("Plaintiff's" or "Doe's") Motion for Leave to Proceed Under Pseudonym, along with a Memorandum in Support, filed on October 25, 2024. (ECF Nos. 6, 7.) Because Plaintiff has met her burden to proceed pseudonymously, the Motion is **GRANTED**.

**I. BACKGROUND**

This case involves two instances of non-consensual dissemination of intimate images— more commonly known as "revenge porn." (ECF No. 1 at PageID 1.)

On or about September 12, 2023, Defendant Brett Dillon Parsons ("Defendant" or "Parsons") disseminated two fully nude photos of Plaintiff, which he obtained without her consent by installing a hidden video camera in Plaintiff's living area. (ECF No. 1 at PageID 1–2.) Each photograph included an "intimate visual depiction" under 15 U.S.C. § 6851(a)(5): the first image depicted Plaintiff's uncovered pubic area or post-pubescent female nipple within the meaning of 15 U.S.C. § 6851(a)(5)(A)(i), while the second depicted Plaintiff's uncovered anus within the meaning of 15 U.S.C. § 6851(a)(5)(A)(i). (Id. at PageID 2.) Defendant disseminated these two images to a third party without Plaintiff's consent. (Id.)

On June 24, 2024, a grand jury indicted Defendant based on these instances for unlawful photographing. (ECF No. 1-1.) On September 3, 2024, Defendant pled guilty to unlawful photography under Tenn. Crim. Code § 39-13-605. (ECF No. 1-2.)

Plaintiff brings her claims under 15 U.S.C. § 6851(b). (Id. at PageID 4–6.) Plaintiff seeks: (1) damages in the amount of $300,000, plus reasonable attorneys' fees and litigation costs; (2) costs be taxed against Defendant; (3) a permanent injunction ordering Defendant to cease display or disclosure of the visual depictions and delete them pursuant to 15 U.S.C. § 6851(b)(3)(A)(ii); and (4) any other relief the Court deems proper. (Id. at PageID 6–7.)

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

106

## II. PARTY ARGUMENTS

Plaintiff argues 15 U.S.C. § 6851(b)(3) "simplifies the inquiry here" because it reflects explicit congressional approval pseudonymous litigation in cases like this one. (ECF No. 7 at PageID 27.) Plaintiff further argues "no court ever appears to have denied a request to proceed pseudonymously in a Section 6851 case." (Id. at PageID 28 (citing Doe Williams v. Williams, No. 3:24-CV-165-DPJ-ASH, 2024 WL 2805642, at *5 (S.D. Miss. May 31, 2024) ("The Court has examined the few § 6851 cases addressing this issue, and none denied the request to proceed under a pseudonym.")).)

In submitting her Motion, Plaintiff was unable to consult with Defendant, and requests the Court treat the Motion as unopposed. (ECF No. 6 at PageID 22.) Defendant first appeared in this case on November 26, 2024, to file an extension of time to answer the Complaint. (See ECF No. 15.) Defendant filed his Answer on December 3, 2024. (ECF No. 18.) The Court will treat the instant Motion as unopposed, as Defendant had 14 days to respond since his counsel entered the case. See L.R. 7.01.

## III. ANALYSIS

**\*2** When a plaintiff files a civil action to recover damages or obtain equitable relief under 15 U.S.C. § 6851(b)(3)(A), "the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym." 15 U.S.C. § 6851(b)(3)(A).

The Court finds Plaintiff's arguments persuasive. Plaintiff is filing her civil action for relief under 15 U.S.C. § 6851(b)(3)(A). (ECF No. 1 at PageID 6–7.) Thus, the Court may allow Plaintiff to proceed pseudonymously. 15 U.S.C. § 6851(b)(3)(B).[1] The Court finds "Plaintiff has a substantial right to privacy under 15 U.S.C. § 6851. The statute provides a right of action for plaintiffs whose intimate visual depictions are disclosed without consent." Doe v. Ghiorso, No. 2:24-CV-57, 2024 WL 3511641, at *2 (S.D. Ga. July 23, 2024) (citing 15 U.S.C. § 6851(b)). Indeed, "Section 6851's very purpose is to protect against one's intimate matters being publicized." Doe Williams v. Williams, No. 3:24-CV-165-DPJ-ASH, 2024 WL 2805642, at *5 (S.D. Miss. May 31, 2024) "Disclosing Plaintiff's identity could link her to factual details about her intimate image and its unauthorized distribution, further threatening the rights § 6851 seeks to protect." Ghiorso, 2024 WL 3511641, at *2 (citing Doe v. McCoy, No. 1:23-CV-3169, 2024 WL 843908, at *9 (N.D. Ga. Feb. 28, 2024)).

Furthermore, the Court, like the Doe Williams court, has looked at the cases involving pseudonymous § 6851 litigation and has found none denied the request to proceed under a pseudonym. See 2024 WL 3511641, at *2. The Court sees no reason to break from this trend.

Thus, the Court exercises its discretion under 15 U.S.C. § 6851(b)(3)(B) to allow Plaintiff to proceed pseudonymously.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Proceed Under Pseudonym is

**GRANTED.**

**SO ORDERED**, this 16th day of December, 2024.

## All Citations

Slip Copy, 2024 WL 5705632

## Footnotes

1    Given that the Court can exercise its discretion to allow Plaintiff to proceed pseudonymously under 15 U.S.C. § 6851(b)(3)(B), it does not examine the Doe v. Porter factors. See 370 F.3d 558, 560 (6th Cir.) ("Several considerations determine whether a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings. They include: (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.").

2019 WL 1967021
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Jane DOE Plaintiff,
v.
RUTGERS, The State University of New Jersey, et al., Defendants.

Civ. No. 2:18-cv-12952-KM-CLW
|
Signed 04/30/2019

**Attorneys and Law Firms**

Daniel B. Rehns, Hach Rose Schirripa & Cheverie, LLP, Kathryn Anne Hettler, Frank Rocco Schirripa, Hach Rose Schirripa & Cheverie LLP, New York, NY, for Plaintiff.

Martin Trevor Lyons, Caitlin Petry Cascino, Walsh Pizzi O'Reilly Falanga LLP, Newark, NJ, Steven Backfisch, Lindabury, Mccormick & Estabrook, PC, Westfield, NJ, James J. O'Hara, Tompkins, Mcguire, Wachenfeld, & Barry LLP, Roseland, NJ, for Defendants.

**OPINION & ORDER**

CATHY L. WALDOR, United States Magistrate Judge

**I. INTRODUCTION**

**\*1** This matter comes before the Court on Defendant Nabil Adam's Motion to Compel Plaintiff to File an Amended Complaint Using Her Legal Name. (ECF No. 23). Defendant Periklis Papakonstantinou joins in the Motion. (ECF No. 26). The Court declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78, and, for the reasons set forth below, Defendants' Motions are **DENIED**.

**II. BACKGROUND**

Plaintiff Jane Doe brings this action under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 et seq. ("Title IX") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD") against Defendants Nabil Adam, Periklis Papakonstantinou, and Rutgers University. Plaintiff has been a student in the Rutgers Business School Ph.D. program since the summer of 2015. (Compl. ¶ 8). Plaintiff alleges that Dr. Nabil Adam, a Rutgers Business School Professor and Plaintiff's dissertation advisor, sexually assaulted Plaintiff in January 2016 and November 2017 and coerced Plaintiff into a sexual relationship. (Id. ¶¶ 19, 31, 32-37, 57). According to Plaintiff, Rutgers failed to appropriately investigate Plaintiff's allegations, failed to take adequate corrective measures, and perpetuated the hostile work environment created by Dr. Adam.

(*Id.* ¶¶ 71, 73-76, 95). Plaintiff further alleges that Rutgers, Dr. Adam, and Rutgers Business School Assistant Professor Papakonstantinou retaliated against Plaintiff for coming forward with her allegations against Dr. Adam. (*Id.* ¶¶ 67-72, 77-83).

Throughout the litigation, Plaintiff has proceeded pseudonymously as Jane Doe. Adam now moves to compel Plaintiff to file an amended complaint under her real name in accordance with Federal Rule of Civil Procedure 10. (ECF No. 23). Papakonstantinou joins in Adam's Motion. (ECF No. 26). Rutgers has not opposed Plaintiff's use of a pseudonym.

### III. DISCUSSION

Federal Rule of Civil Procedure 10 requires plaintiffs to identify their real names in the Complaint. "[A] plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings.' " *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir.2000) ). Although the Federal Rules do not explicitly sanction the use of pseudonyms, courts have allowed plaintiffs to proceed pseudonymously when the plaintiff can demonstrate (1) "a fear of severe harm" from the public disclosure of her name and (2) "that the fear of severe harm is reasonable." *Id.* Crucially, a plaintiff's fear that she may "suffer embarrassment or economic harm is not enough." *Id.* (quoting *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 371 n. 2 (3d Cir.2008) ).

In *Megless*, the Third Circuit adopted the nine-factor test for the use of pseudonyms that was first articulated in *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D.Pa. 1997). The *Megless* court noted that this "list of factors is not comprehensive" and directed courts to consider the particular circumstances of each case. *Id.* at 409-10.

**\*2** The factors that support a plaintiff's use of a pseudonym are: (1) "The extent to which the identity of the litigant has been kept confidential;" (2) "The bases upon which disclosure is feared .... and the substantiality of these bases;" (3) "The magnitude of the public interest in maintaining the confidentiality of the litigant's identity;" (4) "Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants identities;" (5) Whether the plaintiff would "refus[e] to pursue the case at the price of being publicly identified" and "the undesirability of an outcome adverse to the pseudonymous party;" and (6) "Whether the party seeking to sue pseudonymously has illegitimate ulterior motives." *Id.* at 408. The factors that weigh against the use of pseudonyms are: (1) "The universal level of public interest in access to identities of litigants;" (2) "Whether, because of the subject matter of this litigation, the status of a litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigants' identities;" and (3) "Whether the opposition to pseudonym by counsel, the public or press is illegitimately motivated." *Id.*

Under the *Megless* analysis, Plaintiff has successfully overcome the presumption that she should proceed using her real name. As discussed further below, out of the six *Megless* factors that support Plaintiff's use of a pseudonym, factors (1), (2), (3), and (6) apply here. The considerations that disfavor Plaintiff's anonymity do not outweigh these factors.

Factor (1) weighs in favor plaintiffs who "make substantial efforts to maintain anonymity" and "limi[t] the disclosure of sensitive information to few other people." *Doe v. Rider Univ.*, No. CV 16-4882 (BRM), 2018 WL 3756950, at \*3 (D.N.J. Aug. 7, 2018). Plaintiff has done so here. Plaintiff's name remained confidential throughout three Rutgers Office of Employment Equity ("OEE") investigations related to the allegations in the Complaint. In total, it appears from the record that less than fifteen people know Plaintiff's identity, the vast majority of whom were involved either in the underlying facts or in the OEE investigations.[1] Although Plaintiff willingly spoke with members of the media, she did so under the condition of anonymity, and her name was not disclosed in the resulting news articles. (Def.'s Br., Ex. F, ECF No. 23-7).

Defendant does not dispute this. Rather, Defendant makes an insupportable leap that because Plaintiff has revealed her identity to a limited circle of individuals, Plaintiff "has not taken any steps to maintain anonymity or keep her identity confidential." (Def.'s Br., ECF No. 23-10, at p. 8). Contrary to Defendant's assertion, this case stands in sharp contrast to instances where courts have found that anonymity would be futile because the plaintiff's name was already widely known. *See, e.g., Megless*, 654 F. 3d at 410 (plaintiff's name, picture and home address had been disclosed on a publicly circulated flyer); *B.L. v. Zong*, No. 3:15-CV-1327, 2017 WL 1036474, at \*3–4 (M.D. Pa. Mar. 17, 2017) (alleged sexual assault victim had "engaged ... in braggadocio" regarding the alleged assault, and his name had been publicly disclosed in another proceeding).

Under Factor (2), the court looks to "the bases upon which" Plaintiff fears disclosure of her identity, and the "substantiality of these bases." Plaintiff must demonstrate that she reasonably fears "severe harm" that exceeds mere "embarrassment." *Megless*, 654 F.3d at 408 (3d Cir. 2011). For example, a plaintiff who wished to keep his bipolar disorder diagnosis private was permitted to proceed pseudonymously in an ERISA action, in order to shield him from "embarrassment," "anxiety," and "stigmatization," which may have "aggravate[d] his condition." *Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006); *see also Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997) (allowing plaintiff to proceed anonymously in his suit for benefits based on disability from mental illness). On the other end of the spectrum, routine fears of professional and social embarrassment are insufficiently compelling. For example, the court ordered the plaintiff in a Fair Debt Collection Practices Act action to disclose his real name, despite the plaintiff's fear that his professional standing as a lawyer would be damaged if the legal community believed he was financially irresponsible. *Doe v. Law Offices of Robert A. Schuerger Co.*, No. CV1713105BRMDEA, 2018 WL 4258155, at *2 (D.N.J. Sept. 6, 2018). Similarly, the court denied Bucknell University students' motion to proceed anonymously in a lawsuit alleging that the University had conducted an illegal search of their fraternity that uncovered marijuana and small weapons. Plaintiffs' concerns that their reputations on campus and employment prospects would suffer if their names were revealed did not justify the use of pseudonyms. *K.W. v. Holtzapple*, 299 F.R.D. 438, 442 (M.D. Pa. 2014).

**\*3** Courts have come to different conclusions on where the mental and emotional harm faced by alleged victims of sexual assault and sexual harassment falls on this spectrum of harm. In *Doe v. Evans*, the court allowed a plaintiff who alleged that she was sexually assaulted by a state trooper to proceed anonymously in her lawsuit against the Pennsylvania State Police and individual defendants. 202 F.R.D. 173, 176 (E.D. Pa. 2001). The court held that the plaintiff's "fear of increased embarrassment, humiliation, and emotional distress should her friends and business associates learn of these events is well-founded." *Id.* Conversely, in *Doe v. Court of Common Pleas of Butler Cty., PA*, the court compelled plaintiff, a probation officer who alleged that a state court judge required her to participate in a sexual relationship as a condition of her employment, to proceed using her real name. 2017 WL 5069333, at *1 (W.D. Pa. Nov. 3, 2017). The court reasoned that although "victims of sexual harassment and assault often face ridicule and further harassment when they file lawsuits," "these concerns ... are not sufficient to outweigh the public's right to access court proceedings." *Id.* at *2.

Here, as in *Evans*, Plaintiff has a particularized and "well-founded" concern that she will experience severe emotional distress and mental anguish if her name is revealed publicly. Plaintiff alleges that she suffered "extreme psychological distress" as a result of Adam's actions, that her "mental health continued to decline" throughout their relationship, and that she attempted to commit suicide on three occasions. (Compl., ¶¶ 38, 42). Plaintiff further alleges that she "suffered a severe panic attack which caused her to be hospitalized for nine days" when Rutgers released the OEE Investigation Report on April 17, 2018. (*Id.* ¶ 77). In light of this alleged history of significant mental health issues and self-harm arising out of the underlying events, Plaintiff's contention that she will suffer "emotional distress, mental anguish, anxiety ... [and] humiliation" goes beyond a boilerplate assertion that she will be embarrassed if she is publicly identified. (Pl.'s Opp., ECF No. 29, at p. 12).

The third *Megless* factor – "the magnitude of the public interest in maintaining the confidentiality of the litigant's identity" – further bolsters Plaintiff's use of a pseudonym. There is a recognized public interest in ensuring that victims of sexual assault can vindicate their claims and that the fear of public humiliation does not discourage these plaintiffs. *See, e.g., Evans*, 202 F.R.D. at 176 ("[T]he public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights, especially where law enforcement officers are involved."); *K.W. v. Holtzapple*, 299 F.R.D. at 442 ("[T]he public has a compelling need to protect identities to promote disclosure by [sexual assault] victims."). There is an analogous public interest in protecting the identities of plaintiffs who suffer from mental illness. *Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) ("[T]here is substantial public interest in ensuring that cases like the Plaintiff's are adjudicated and the rights of mental illness sufferers are represented fairly and without the risk of stigmatization. However, this goal cannot be achieved if litigants suffering from mental illness are chilled from ever reaching the courthouse steps[.]") Finally, factor (6) also supports Plaintiff, because she does not appear to have "illegitimate ulterior motive" for using a pseudonym.

The two remaining *Megless* factors that support the use of a pseudonym do not apply here. Plaintiff represents that she will pursue this action even if the Court requires her to disclose her identity. (Pl.'s Opp., ECF No. 29, at p. 15). Additionally, there is no "atypically weak public interest in knowing the litigant' identities ... because of the purely legal nature of the issues presented or otherwise." The public disclosure of a plaintiff's name is not critical if the plaintiff's claims do not depend on his or her individual identity. For example, the court allowed plaintiffs, who were previously convicted of sex offenses, to proceed

anonymously in a case challenging the constitutionality of Megan's Law amendments. The plaintiffs' facial challenge to the amendments did not depend on the facts of their individual cases. *L.A. v. Hoffman*, No. CIV.A. 14-6895 FLW, 2015 WL 4461852, at *2 (D.N.J. July 21, 2015). Unlike the claims in *Hoffman*, Plaintiff's Title IX and NJLAD claims are individualized and highly fact-intensive.

**\*4** The *Megless* factors that cut against Plaintiff's use of a pseudonym do not tip the balance in favor of Defendants' Motion. The Court acknowledges "the thumb on the scale that is the universal interest in favor of open judicial proceedings." *Megless, 654 F. 3d at 411*. Next, the Court must consider "whether, because of the subject matter of this litigation, the status of a litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities." Neither Plaintiff nor the individual Defendants are public figures. With respect to the subject matter of the litigation, the public's interest cuts both ways. Plaintiff's allegations against Dr. Adam and her allegation that Rutgers, the largest public university in the state, violated Title IX and NJLAD by mishandling those allegations are matters of intense public interest. However, when litigation involves "a member of a particularly vulnerable class" or "the subject matter is highly personal," the "public has an interest in protecting the identity of the litigant." *Doe v. Rider Univ.*, 2018 WL 3756950 at *3. Here, Plaintiff alleges that she is a victim of sexual assault, and the Complaint includes detailed information about intensely personal matters. Allowing Plaintiff to proceed as Jane Doe while preserving the public's right to access the docket and proceedings in this case strikes the appropriate balance between these competing interests. *See, e.g., L.A. v. Hoffman*, 2015 WL 4461852, at *3 (granting plaintiffs' motion to proceed anonymously and observing that "although the identities of the Plaintiffs will not be included in the filings in this matter, the public will maintain access to the docket and filings in this case.")

Finally, the Court considers whether Defendants, the press, or the public have an illegitimate motive for opposing Plaintiff's use of a pseudonym. Dr. Adam contends that he is motivated by "the entirely appropriate" "desire to defend his own reputation in this federal public court forum." (Def.'s Br., ECF No. 23-10, at p. 13). The Court is not aware of any opposition to Plaintiff's use of a pseudonym by Rutgers, the public, or the press.

In sum, the Court concludes that under the *Megless* balancing test, Plaintiff may continue to pursue this litigation under the pseudonym Jane Doe.

## IV. CONCLUSION

It is on this 30th day of April, 2019, hereby

**ORDERED** that Defendants Nabil Adam and Periklis Papakonstantinou's Motions to Compel Plaintiff to File an Amended Complaint Using Her Legal Name are **DENIED;**

**ORDERED** that the Clerk shall terminate ECF No. 23 and ECF No. 26.

## All Citations

Not Reported in Fed. Supp., 2019 WL 1967021

## Footnotes

[1]   By Defendant's own admission, these individuals include: Dr. Adam, Dr. Adam's wife and adult son, Plaintiff's ex-husband, who is also a Rutgers Business School student, Rutgers Professor Jaideep Vaidya, six Rutgers officials, and two students whose names Plaintiff supplied to NJ Advance Media to corroborate her claim that she had told them about Dr. Adam's behavior. (Def.'s Br., ECF No. 23-10, at p. 8).

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 975334
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

John DOE, Plaintiff,
v.
Victoria SERPA, Defendant.

Civil Action No. 3:25-CV-0057-X
|
Signed April 1, 2025

**Attorneys and Law Firms**

Kenton J. Hutcherson, Hutcherson Law PLLC, Dallas, TX, for Plaintiff.

Robert L. Rickman, Gerardo Adrian Galvan, Wade L. McClure, Zach T. Mayer, Mayer LLP, Dallas, TX, for Defendant.

**MEMORANDUM OPINION AND ORDER**

BRANTLEY STARR, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court are Plaintiff John Doe's amended motion for leave to file documents under seal (Doc. 12) and motion for leave to proceed under a pseudonym (Doc. 8). The Court has analyzed the proposed sealed documents line-by-line and page-by-page, weighing the public's right of access against the interests favoring nondisclosure. After reviewing the motions, the Court **GRANTS IN PART** the motion to seal as to Doc. 7-1 (Doc. 12), and **DENIES** the motion to proceed under a pseudonym (Doc. 8).

**I. Background**

This case arises from alleged "revenge porn." Plaintiff John Doe initiated this action against his former girlfriend, Victoria Serpa, after she disseminated a sexually explicit photo of him. The two were romantically involved from May 2023 to March 2024. Doe moved in with Serpa in May of 2023, at which time he alleges he also left his job to spend more time with her. When the honeymoon turned sour two months later, Doe moved out and began looking for a new job. Doe alleges that Serpa requested the explicit photo of him during the course of their relationship, but Serpa contends Doe sent her the photo unsolicited after they broke up.

A few months later, Doe found his dream job. He connected with an artificial intelligence company that expressed interest in hiring him around May 2024. The job entailed a leadership role, lucrative compensation, equity in the fledgling company, and the opportunity to work with a breakthrough technology. Doe and the company agreed to formalize this offer once the company was ready to initiate sales and marketing activities. But the company did proceed to set up a company email for Doe, make hotel reservations in his name, and buy him tickets to attend a future trade show that was intended to coincide with his hiring. It also planned a press release to announce Doe's hiring.

Unfortunately, Doe's new dream job was materializing as his relationship was falling apart. A month after he and Serpa broke up in March 2024, Serpa began sending disparaging statements about Doe to his future employers. Doe alleges Serpa thought the thought the company had already hired Doe and that she wanted to get him fired. When the company did not fire Doe, Serpa sent the sexually explicit photo of Doe to one of the company's co-founders, Dan Vencu, through a private message on LinkedIn. Though Doe attended the trade show on behalf of the company, the company never issued its planned press release and ultimately rescinded its offer.

Doe then filed this action and sought a temporary restraining order and preliminary injunction against the photo's further dissemination, which the Court granted. Serpa now claims Doe is using this lawsuit similarly to the way he claims she used the photo: to sabotage her business and exact revenge.

### II. Doe's Amended Motion for Leave to File Under Seal (Doc. 12)

The Court takes very seriously its duty to protect the public's access to judicial records.[1] Transparency in judicial proceedings is a fundamental element of the rule of law—so fundamental that sealing and unsealing orders are immediately appealable under the collateral-order doctrine.[2] The public's right to access judicial records is independent from—and sometimes even adverse to—the parties' interest.[3] That's why the judge must serve as the representative of the people and, indeed, the First Amendment, in scrutinizing requests to seal.

**\*2** "To decide whether something should be sealed, the court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure."[4] If the Court seals information, it must give sufficient reasons to allow for appellate review.[5] Finally, "[p]ublicly available information cannot be sealed."[6]

Doe seeks to redact information in the declaration and affidavit supporting his motion for a temporary restraining order and preliminary injunction at Doc. 7. His proposed redactions are extremely minimal: he seeks only to redact his real name and the photo depicting his genitalia, and he provided the Court citations for each of the instances this information appears in the unredacted version.

The nature of the harm on which Doe sues relates to the disclosure of this very photo in connection with his name. Though the public has a presumptive right to view the dockets of its federal courts, the sensitive nature of the photo and the harm it would cause Doe if made public outweigh that right in this case. Therefore, the Court will maintain the photo under seal, but the Court disagrees that both the photo and Doe's name must be redacted to protect Doe's interests.

The motion's facts were verified in a declaration of a person with personal knowledge. As such, the Court orders that Doc. 7-1 remain under seal but Doc. 7-2 be unsealed. The redacted version of Doc. 7-1 is already on file as attachment 3 to Doc. 10. As such, the Court **GRANTS IN PART** Doe's motion for leave to file under seal the declaration supporting his motion for a temporary restraining order and preliminary injunction (Doc. 12).

### III. Doe's Motion to Proceed under a Pseudonym (Doc. 8)

Doe also seeks leave of the Court to continue proceeding under the pseudonym "John Doe" and requests entry of a protective order preventing any party from publishing his name. Serpa objects, arguing that Doe has improperly hidden behind the shield of anonymity to expose her alone. As evidence, Serpa attaches an article that names her but uses a pseudonym for Doe.

Rule 17 of the Federal Rules of Civil Procedure requires civil actions "be prosecuted in the name of the real party in interest."[7] As explained above, transparency is a fundamental quality of our legal system, and this applies in equal force to the identities of the parties. "Public access to this information is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings."[8] But sometimes, situations are sufficiently sensitive that "the need for party anonymity overwhelms the presumption of disclosure mandated by procedural

custom."[9]

Though there is no rigid test or list of prerequisites, the Court undertakes a "balancing of considerations" to determine whether the need for anonymity prevails.[10] The Fifth Circuit has outlined three such considerations courts should consider: "(1) whether the plaintiff is challenging governmental activity; (2) whether the case requires disclosure of information that is of the utmost intimacy; and (3) whether the case may result in the admission of the plaintiff's intention to engage in illegal conduct."[11] The Court should also consider the age of the plaintiff—i.e. whether he is a minor—and whether he may face "harassment [or] perhaps even violent reprisals" if his identity is public.[12]

**\*3** In Doe's case, this Court agrees that he has revealed information of the utmost intimacy by way of the nude photo. But Doe does not challenge government action, nor is he a minor or especially vulnerable party. The facts as Doe has pled them do not reveal any intention to engage in illegal conduct, nor do they suggest he will face harassment or violence from the public.

Doe claims he will suffer further damage if his name is publicized on the docket alongside the sensitive photo, and the Court agrees. But sealing the photo and issuing an injunction against its dissemination—both of which the Court has done—are sufficient protection. Though the Court has discretion to grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym" in cases brought under 15 U.S.C. § 6851, the Court will not exercise that discretion in this case given the facts the parties allege.[13]

Therefore, the Court **DENIES** Doe's motion to proceed under a pseudonym.

### IV. Conclusion

The Court **GRANTS IN PART** Doe's amended motion for leave to file under seal (Doc. 12) and **FINDS AS MOOT** Doe's original motion (Doc. 7). Moreover, the Court **ORDERS** Doc. 7-1 to remain under seal but **INSTRUCTS** the Clerk of Court to unseal the rest of Doc. 7.[14] Doe has already filed a redacted version of Dan Vencu's declaration,[15] so the Court **INSTRUCTS** the Clerk of Court to unseal Doc. 10 and its attachments. The Court's instructions are the result of a page-by-page, line-by-line analysis. Such analysis "is not easy, but it is fundamental" to securing the public's right of access to judicial records.[16]

Further, the Court **DENIES** Doe's motion to proceed under a pseudonym and for entry of a protective order to shield his identity (Doc. 8). The protection of maintaining the photo under seal is sufficient to prevent further harm to Doe.

**IT IS SO ORDERED** this the 1st day of April, 2025.

### All Citations

Slip Copy, 2025 WL 975334

### Footnotes

[1]     See *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021).

[2]     *June Med. Servs. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022).

[3]     *Id.*

[4]     *Id.* (cleaned up).

[5]     *Binh Hoa Le*, 990 F.3d at 419.

[6]     *June Med. Servs.*, 22 F.4th at 520.

[7]     Fed. R. Civ. P. 17(a)(1).

[8]     *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

[9]     *Id.*

[10]    *Id.*

[11]    *Id.* (cleaned up).

[12]    *Id.* at 186.

[13]    15 U.S.C. § 6851(b)(3)(B).

[14]    The redacted version of Doc. 398-3 is already filed on the public record as an attachment to Doc. 407.

[15]    Docs. 10-3 & 10-4.

[16]    *June Med. Servs.*, 22 F.4th at 521.

2025 WL 1165660
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Jane DOE, Plaintiff,
v.
Nathaniel STEVENSON, Defendant.

No. 1:24-cv-02778
|
Signed April 3, 2025

**Attorneys and Law Firms**

David A. Bateman, Pro Hac Vice, K&L Gates LLP, Seattle, WA, Emily Beth Jones, Chicago Alliance Against Sexual Exploitation, Chicago, IL, Jonah Heemstra, Kenn Brotman, K&L Gates LLP, Chicago, IL, for Plaintiff.

Paul Donald Motz, Stephen Bartholomew, I, Segal McCambridge Singer & Mahoney, Chicago, IL, for Defendant.

**ORDER**

John J. Tharp, Jr., United States District Judge

**\*1** For the reasons set forth in the Statement below, the plaintiff's motion for partial summary judgment [32] is denied. A status hearing will be held in Courtroom 2303 at 9:00 a.m. on April 23, 2025.

**STATEMENT**

Plaintiff Jane Doe[1] sued Nathaniel Stevenson, alleging that Stevenson (a former romantic partner) shared intimate pictures of Doe with Doe's friends and the public. Pending before the Court is Doe's motion for partial summary judgment on Count I of her complaint, which alleges that Stevenson unlawfully disclosed intimate images in violation of 15 U.S.C. § 6851. Stevenson responded to the motion with a "brief of non-response," which simply indicates that he "makes no response to [Doe's] motion for partial summary judgment or to the memorandum in support" thereof. Resp. 1, ECF No. 41 (capitalization altered). For the reasons that follow, despite Stevenson's lack of opposition, Doe's motion is denied.

**I. Background**
Section 6851, "passed in March 2022 as part of the Violence Against Women Act Reauthorization Act," establishes "a federal civil cause of action for victims of revenge porn." Mem. 2, ECF No. 34. The section specifically allows an individual

whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, [to] bring a civil action against that person in an appropriate district court of the United States.

15 U.S.C. § 6851(b)(1)(A); *see also id.* § 6851(b)(2) (neither consent "to the creation of the depiction" nor "the fact that the individual disclosed the intimate visual depiction to someone else" establishes consent to distribution). The individual "may recover the actual damages sustained ... or liquidated damages in the amount of $150,000, and the cost of the action." *Id.* § 6851(b)(3)(A)(i).

Because Stevenson did not file a response to Doe's Local Rule 56.1 statement, the Court "may deem admitted each material fact set out in [that] statement." *Etheridge v. Hudson Grp. Retail, LLC,* No. 20-cv-07204, 2022 WL 15456490, at *5 (N.D. Ill. Oct. 27, 2022) (capitalization altered); *see* N.D. Ill. L.R. 56.1(e)(3). The following material facts, then, are undisputed. While Doe and Stevenson were dating "in or around 2020," Doe provided Stevenson with "private pictures, including pictures of her face and unclothed body." Pl.'s Rule 56.1 Statement ("Pl.'s Statement") 1-2 ¶¶ 7-8, ECF No. 35. On September 28, 2022, Stevenson sent Doe's friends one such picture—an image that "showed [Doe's] face and uncovered breasts and nipples"—via text message and without Doe's consent.[2] *Id.* at 2 ¶ 10; *see* Doe Decl. 1, ECF No. 35-1. Stevenson was subsequently arrested for, and pleaded guilty to, violating 720 Ill. Comp. Stat. 5/11-23.5. As relevant here, that statute makes it a crime for an individual to "intentionally disseminate[ ] the image of another person ... who is identifiable from the image itself ... [and] whose intimate parts are exposed, in whole or in part," if he "knows *or should have known* that the person in the image has not consented to the dissemination." 720 Ill. Comp. Stat. 5/11-23.5(b)(1), (3) (emphasis added).

## II. Discussion

**\*2** "[A] non-movant's failure to respond to a summary judgment motion does not automatically result in judgment for the movant," and Doe still bears the burden of demonstrating that she is "entitled to judgment as a matter of law based on the ... material facts in the record." *Etheridge,* 2022 WL 15456490, at *5 (quotation marks omitted). In the Court's view, Doe has not met her burden for two reasons. First, Doe has not shown that Stevenson's conduct is actually covered by § 6851 given the statute's effective date. Second, and in any event, Doe has failed to demonstrate that Stevenson's conduct meets all of the requirements set forth in § 6851.

### A. Retroactivity

Although § 6851 was "passed in March 2022," the law actually "took effect on October 1, 2022." Mem. 2; *see* Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, §§ 4, 1309, 136 Stat. 840, 846, 929-31. Recall that Stevenson sent the picture to Doe's friends on September 28, 2022, three days before § 6851's effective date. This naturally raises a question as to whether Stevenson's conduct is covered by § 6851.

To answer that question, the Court must determine whether § 6851 applies to conduct before its effective date—in other words, whether it applies retroactively. The Supreme Court laid out the relevant considerations for retroactivity in *Landgraf v. USI Film Products*:

When a case implicates a federal statute [that became effective] after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would ... impair

> rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would [do so], ... it does not govern absent clear congressional intent favoring such a result.

511 U.S. 244, 280 (1994). Essentially, *Landgraf* established a two-part test. First, has Congress expressly indicated whether the statute should apply retroactively? If so, that ends the inquiry, and the statute's express language governs. Second, does the statute "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties" with respect to past transactions? *Id.* If so, it "does not govern" conduct before its effective date "absent clear congressional intent favoring such a result." *Id.*

Applying that test here, the Court concludes that § 6851 does not have retroactive effect. Regarding the first question, nothing in § 6851 expressly addresses retroactivity, and Doe has not pointed the Court to other language (such as general language in the Violence Against Women Act Reauthorization Act) that does.[3] Regarding the second question, applying § 6851 to Stevenson's September 28 text would "increase [his] liability for past conduct" by at least $150,000. *Id.*; *see* 15 U.S.C. § 6851(b)(3)(A)(i). The Court cannot find evidence of "clear congressional intent favoring" this increased liability, and again, Doe offers no such evidence. *Landgraf*, 511 U.S. at 280. The presumption against retroactivity therefore controls, and § 6851 does not apply to conduct that occurred before October 1, 2022.[4] *Accord, e.g.*, *K.T. v. A Place for Rover*, No. 23-cv-02858, 2024 WL 1356221, at *3-5 (E.D. Pa. Mar. 29, 2024) (concluding, as a matter "of first impression," that § 6851 "should not be given retroactive application").

**\*3** Because Stevenson sent the text message at issue three days before § 6851's effective date, that section does not cover the conduct described above. It could be that § 6851 covers subsequent conduct by Stevenson, such as the social media posts referenced in Doe's complaint. *See supra* note 2. But for present purposes, and given the current state of the record, Doe has not offered "proof ... demonstrating that [she is] entitled to judgment" on her § 6851 claim. *Etheridge*, 2022 WL 15456490, at *5 (quotation marks omitted).

## B. Section 6851

Even if retroactivity were not an issue, perhaps because Stevenson forfeited the argument by failing to raise it, *see, e.g.*, *Datamatic Servs., Inc. v. United States*, 909 F.2d 1029, 1034-35 (7th Cir. 1990), the Court would still deny Doe's motion. That is because, of § 6851's four elements, Doe has only met her burden for Stevenson as to three.

Although neither the Seventh Circuit nor any other court of appeals has laid out the elements a plaintiff must satisfy to prevail on a claim under § 6851, those elements are fairly clear from the statute itself. To prevail on a § 6851 claim, the plaintiff must show that the defendant (1) disclosed the plaintiff's intimate visual depiction, (2) in or affecting interstate commerce or using any means or facility of interstate or foreign commerce, (3) without the consent of the plaintiff, (4) knowing that the plaintiff had not consented or recklessly disregarding whether the plaintiff had provided consent. Doe has proved elements one through three, but her summary judgment motion falls short on element four.[5]

*First element.* Section 6851 defines "disclose" as "to transfer, publish, distribute, or make accessible," and it defines "intimate visual depiction" to include an image of "the ... post-pubescent female nipple of an identifiable individual." 15 U.S.C. § 6851(a)(4), (5)(A)(i); *see* 18 U.S.C. § 2256(5) (defining "visual depiction"). The parties do not dispute that Sevenson disclosed (*i.e.*, distributed) an intimate visual depiction (*i.e.*, one showing the face and nipples) of Doe.

*Second Element.* The Seventh Circuit has held that a text message is a means or facility of interstate commerce. *See United States v. Baird*, 70 F.4th 390, 394 (7th Cir. 2023) (finding the "using ... any facility or means of interstate ... commerce" prong of 18 U.S.C. § 2422(b) met by the sending of a text message).[6] As a matter of law, then, Stevenson used a means or facility of interstate commerce to disclose the intimate visual depiction of Doe.

*Third Element.* It is undisputed that Stevenson "made [his] disclosures without Plaintiff's consent." Pl.'s Statement 2 ¶ 11.

*Fourth Element.* Doe argues that either (1) the record shows Stevenson had the requisite mental state, or (2) Stevenson is

estopped from arguing otherwise. Having "carefully scrutinized" the record, the Court must disagree on both counts. *Etheridge, 2022 WL 15456490, at \*5* (quotation marks omitted).

As to the first, nowhere in Doe's Local Rule 56.1 statement or the accompanying declaration does she state that Stevenson (1) knew she did not consent, or (2) recklessly disregarded whether she consented. And while Doe says Stevenson "acknowledge[d] that he never received consent" in his answer, Mem. 5, acknowledging a lack of consent does not mean admitting to knowing or recklessly disregarding the same at the time of distribution. Indeed, Stevenson's answer either denies or does not respond to the relevant portions of Doe's complaint regarding mental state:

**\*4** 15. Defendant knew, or recklessly disregarded, that Plaintiff had not consented to the disclosure.

**ANSWER: Paragraph #15 contains a conclusion of law, and Defendant makes no answer thereto. To the extent that an answer is required, Defendant admits that he disclosed certain photos of Plaintiff to others and denies the remaining allegations in Paragraph #15.**

....

21. Defendant disclosed these materials without Plaintiff's consent, and Defendant knew, or recklessly disregarded, that Plaintiff had not consented to the disclosure, that the images were private sexual images, and that Plaintiff was identifiable in the images.

**ANSWER: Paragraph #21 contains several conclusions of law, and Defendant makes no answer thereto. To the extent that an answer is required, Defendant admit[s] that he disclosed certain photos to others without Plaintiff's consent and denies the remaining allegations.**

Answer 4-6 ¶¶ 15, 21, ECF No. 16. Nothing in the record—whether in Doe's undisputed Local Rule 56.1 statement or otherwise—can be read to establish Stevenson's mental state for purposes of § 6851.

As to the second, issue preclusion based on Stevenson's guilty plea would only establish that Stevenson knew "or should have known that [Doe had] not consented to the dissemination" of the relevant image.[7] 720 Ill. Comp. Stat. 5/11-23.5(b)(3); *see generally In re Complaint of Am. River Transp. Co.*, 712 F. Supp. 2d 735, 739 (N.D. Ill. 2010) (discussing the preclusive effect of a guilty plea in Illinois). "Knew or should have known" is not the same as "knew or acted with reckless disregard as to," and the former (even if established through issue preclusion) would not be sufficient to satisfy the latter.

To illustrate that point, consider the scenario where Stevenson pleaded guilty only because he *should have known* Doe did not consent. The Seventh Circuit has written that "should have known" and "acted with reckless disregard as to" are distinct mental states. *See United States v. Ladish Malting Co.*, 135 F.3d 484, 488 (7th Cir. 1998) ("What one ought to have known, but did not know, is not knowledge; it is not even (necessarily) recklessness."); *see also Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011) ("[A] reckless defendant is one who merely knows of a substantial and unjustified risk ..., and a negligent defendant is one who should have known of a similar risk but, in fact, did not ...."). So while preclusion in the scenario just mentioned would establish that Stevenson "knew *or should have known*" about the lack of consent, it does not establish that Stevenson "knew *or acted with reckless disregard as to*" that absence. Perhaps, had Stevenson's "Order of Commitment and Sentence" indicated that he pleaded guilty based on actual knowledge, the Court's analysis would be different. *See* Doe Decl. 2. (Actual knowledge, after all, satisfies both § 6851 and section 5/11-23.5.) But Doe did not attach this file to her declaration, and the Court must draw "all reasonable inferences" in favor of Stevenson at this stage. *Robinson v. Perales*, 894 F.3d 818, 823 (7th Cir. 2018).

**III. Conclusion**

**\*5** "There is no summary judgment by default," *Etheridge*, 2022 WL 15456490, at \*5, and Doe's motion fails to show that § 6851 covers Stevenson's undisputed conduct. Additionally, it fails to show that Stevenson knew of or recklessly disregarded Doe's lack of consent. If Doe believes she can produce evidence sufficient to overcome these hurdles, she may renew her

motion for partial summary judgment at a later date. In the meantime, the current motion is denied. A status hearing to discuss whether, and if so how, this case will proceed will be held on April 23, 2025, at 9:00 a.m. in Courtroom 2303.

**All Citations**

Slip Copy, 2025 WL 1165660

### Footnotes

1    The Court granted Doe's motion to proceed under a pseudonym shortly after she filed this case. Section 6851, discussed below, specifically contemplates the possibility "of a plaintiff using a pseudonym." 15 U.S.C. § 6851(b)(3)(B).

2    Although the complaint alleges that Stevenson "also used two accounts at the social media site Instagram to publicly post" certain images, Compl. 2 ¶ 9, ECF No. 1, Doe's Local Rule 56.1 statement is silent on the matter, and the record does not specify the date or duration of the posts. Accordingly, the Court looks only to Stevenson's conduct on September 28, 2022, for purposes of the instant motion.

3    To the contrary, the Violence Against Women Act Reauthorization Act expressly states that, excepting certain specifically identified provisions—of which § 6851 is not one—the provisions of the Act do not take effect until October 1, 2022. Congress plainly knew how to make § 6851 retroactive, but declined to do so.

4    One might argue that, because § 6851 simply created a new cause of action and Doe filed her suit after October 1, 2022, there is no retroactivity issue. The cause of action existed when Doe brought her case, after all, and nothing in § 6851 says how far back the cause of action can reach. But *Landgraf* itself concerned what the Court called "a new cause of action," and the Court there focused on the timing of the defendant's conduct rather than the timing of the suit. 511 U.S. at 283-84; *see also Barjo v. Cherian*, 349 F. Supp. 3d 510, 516 (D. Md. 2018) (similar). Consistent with that focus, the *Landgraf* Court emphasized "the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." 511 U.S. at 265 (quotation marks omitted).

5    Stevenson's conduct does not fall under any of the exceptions listed in § 6851(b)(4).

6    *See also, e.g.*, *United States v. Chaparro*, 956 F.3d 462, 470 (7th Cir. 2020) ("The internet is a facility of interstate commerce."); *United States v. Richeson*, 338 F.3d 653, 660 (7th Cir. 2003) (phone lines are facilities of interstate commerce).

7    Because the application of issue preclusion would not change the outcome, the Court assumes it would apply for purposes of this discussion. But nothing in Doe's Local Rule 56.1 statement or declaration indicates that Stevenson pleaded guilty based on the events at issue here, so the Court cannot say with certainty that "the issue decided" in Stevenson's criminal case "is identical with the one presented" in this suit. *Long v. Elborno*, 922 N.E.2d 555, 562 (Ill. App. Ct. 2010).

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 871656
Only the Westlaw citation is currently available.
United States District Court, E.D. Missouri, Eastern Division.

John DOE, Plaintiff,
v.
Leslie SUTTON, Defendant.

Case No. 4:23-cv-01312-SEP
|
Signed March 20, 2025

**Attorneys and Law Firms**

Joseph A. Ott, Mark Edward Blankenship Jr., Ott Law Firm, Maplewood, MO, for Plaintiff.

Justin A. Hardin, Brown and James PC, St. Louis, MO, for Defendant.

**MEMORANDUM AND ORDER**

SARAH E. PITLYK, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court are Plaintiff's Motion for Leave to Proceed Under Pseudonym, Doc. [7], Defendant's Motion to Dismiss Count I, Doc. [21], Defendant's Motion to Dismiss Certain Counts, Doc. [14], and Defendant's Motion for Leave to File Counterclaim, Doc. [20]. For the reasons set forth below, the Motion for Leave to Proceed Under Pseudonym is granted; the Motion to Dismiss Count I is granted; the Motion to Dismiss Certain Counts is granted in part and denied in part; and the Motion for Leave to File Counterclaim is granted.

**FACTS AND BACKGROUND**[1]

This case arises from the alleged nonconsensual dissemination of images taken on two separate occasions. Defendant conducted online sex work, including "bondage and discipline, domination and submission, sadism and masochism" ("BDSM") and female domination ("femdom"). Doc. [17] ¶ 7. She distributed content on various platforms, including Loyalfans.com, "an online platform for content creators where fans pay a subscription to access premium content," and social media platforms Twitter and Discord. *Id.* ¶ 8. On or around November 2021, Plaintiff met Defendant online through her public sex work Twitter account. *Id.* ¶¶ 9, 21. Over time, the two began an intimate relationship. *Id.* ¶ 10. Throughout the relationship, Plaintiff was aware that Defendant engaged in sex work. *Id.* ¶ 11.

On two occasions pertinent to this case, Plaintiff and Defendant met in person and engaged in BDSM sexual relations. First, in August 2022, they met at Defendant's residence and took a series of 3-5 photographs ("Set 1"). *Id.* ¶¶ 12-14. Plaintiff consented to Defendant taking the photos of him, "so long as they be kept private and not disclosed to third parties." *Id.* ¶ 12. Defendant "verbally agreed that she would not disclose these photographs." *Id.* ¶ 13. In the photographs, Plaintiff is sitting on Defendant's couch "wearing a brown-colored collar around his neck," with Defendant's "hand [ ] looped through the o-shaped ring on the collar so as to display her 'ownership' of Plaintiff Doe in the context of their relationship." *Id.* ¶ 14. Plaintiff's "full face is

shown and is identifiable." *Id.*

At some unspecified point after this, Defendant posted pictures from Set 1 to her private Twitter account, which has "approximately 16 followers, all of whom are Defendant Sutton's personal friends (i.e., friends not from sex work or BDSM spaces)." *Id.* ¶ 16. She also sent the photographs to "various Twitter and Discord group chats with her friends who also engage in sex work and BDSM practices." *Id.*

On the second relevant occasion, in December 2022, Plaintiff and Defendant went to a hotel in Chicago. While there, Defendant is alleged to have taken photos of Plaintiff engaging in BDSM sexual activities without Plaintiff's knowledge or consent ("Set 2"). *Id.* ¶¶ 17-18, 65, 100.[2] Plaintiff's face was not visible or identifiable due to a blur effect and watermark added by Defendant. *Id.* ¶ 19.

**\*2** Within 24 hours of taking Set 2, Defendant sold a Set 2 image to a subscriber on LoyalFans.com. *Id.* ¶¶ 17-20. Though Plaintiff's face was not visible, this subscriber was able to identify him through a combination of information from the caption of the photo on LoyalFans.com and Defendant's public Twitter account. *Id.* ¶ 21. Plaintiff learned of the existence and sale of the photograph when he received a message from Defendant's subscriber, asking him if there were more pictures from his "photoshoot" with Defendant. *Id.* ¶ 20.

Plaintiff confronted Defendant about the photograph, and Defendant admitted to taking one photograph the day prior and selling it to one subscriber on LoyalFans.com. *Id.* ¶ 22. Defendant also admitted to sharing one image from Set 1 to her private Twitter. *Id.* ¶ 23. Plaintiff demanded Defendant delete the image that she sold on LoyalFans.com, but Defendant explained "she was unable to do so because once someone purchases a picture, it is added to their LoyalFans 'library' and cannot be deleted." *Id.* ¶ 24.

During the summer of 2023, Plaintiff made numerous attempts to have the images removed from LoyalFans.com, to no avail. *Id.* ¶ 25. Defendant participated in some of the unsuccessful efforts. *Id.* During this time, Plaintiff learned from Defendant that some images from Set 1 had also been shared "to her friends in Twitter group chats and in Discord messages." *Id.* ¶ 26. Plaintiff demanded Defendant delete the accounts and images, and Defendant complied. *Id.* ¶¶ 27-28.

Plaintiff commenced this action in Missouri state court and Defendant filed a notice of removal. *See* Doc. [1]. Plaintiff alleges six counts against Defendant:

**Count I**: violation of Mo. Rev. Stat. § 573.110, nonconsensual dissemination of private sexual images;

**Count II**: violation 15 U.S.C. § 6851, disclosure of intimate images; **Count III**: intrusion upon seclusion;

**Count IV**: public disclosure of private facts; **Count V**: intentional infliction of emotional distress; and

**Count VI**: negligent infliction of emotional distress.

Doc. [17]. Plaintiff filed the original action under the pseudonym "John Doe" and seeks leave of the Court to continue proceeding under a pseudonym. Docs. [1], [7]. Defendant opposes Plaintiff's request to use a pseudonym. Doc. [13]. Defendant also moves to dismiss Counts I, III, IV, V, and VI for failure to state a claim. Docs. [14], [21]. Plaintiff responded in opposition to both motions to dismiss. Docs. [18], [23]. Defendant also moved for leave to file a counterclaim, Doc. [20], and Plaintiff made no response. The Court begins with Defendant's Motion for Leave to File Counterclaim, Doc. [20].

## MOTION FOR LEAVE TO FILE COUNTERCLAIM

Defendant seeks leave to file a counterclaim alleging that Plaintiff "published a website entitled Leslie-Sutton.com which listed [Defendant's] name, contact information, and private online account information, and further accused her of committing sexual assault." Doc. [20-1] ¶ 37. Defendant also alleges Plaintiff "mailed a copy of the Lawsuit, containing allegations of a sexual nature and disclosing graphic details of [Plaintiff's] anonymous online sex work, to her parents' home." *Id.* ¶ 38. Defendant

claims to have suffered "severe emotional stress, lack of sleep, and humiliation from [Plaintiff's] conduct, as it greatly affects [Plaintiff's] relationship with her parents, future intimate relationships and job prospects." *Id.* ¶ 39. Plaintiff has not responded to Defendant's motion and the time for doing so has passed.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a district court "should freely give leave [to amend a pleading] when justice so requires." Under the Rule's "liberal amendment policy," denial is only appropriate "in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court is not aware of any such circumstances, and Plaintiff has not opposed the proposed amendment. The Court therefore grants Defendant's Motion for Leave to File Counterclaim.

## MOTION TO PROCEED UNDER A PSEUDONYM

**\*3** Plaintiff moves to proceed under pseudonym because this case concerns Plaintiff's "extremely sensitive personal and sexual information." Doc. [7] at 3.

### I. Legal Standard

"Federal courts disfavor the use of fictitious names in legal proceedings," because it "runs afoul of the public's First Amendment interest in public proceedings and their common law right of access thereto." *Cajune v. Indep. School Dist. 194*, 105 F.4th 1070, 1076 (8th Cir. 2024). The Eighth Circuit recently joined its sister circuits in holding that "a party may proceed under a fictitious name only in those limited circumstances where the party's need for anonymity outweighs countervailing interests in full disclosure." *Id.* at 1077.

In determining whether a Plaintiff has demonstrated a "need for anonymity" sufficient to "outweigh[ ] countervailing interests in full disclosure," courts consider a "non-exhaustive" list of factors. *Id.* Factors weighing in favor of pseudonymity typically include: (1) whether "the party seeking anonymity [is] challenging government activity"; (2) whether identification "threaten[s] to reveal information of a sensitive and highly personal nature"; (3) whether a party "would be required, absent anonymity, to admit an intention to engage in illegal conduct, thereby risking criminal prosecution"; and (4) whether there is a "danger of retaliation." *Id.* Factors weighing against pseudonymity include: (1) whether anonymity poses a "unique threat of fundamental unfairness to the defendant"; (2) whether "the public's interest in the case is furthered by requiring that the litigants disclose their identities"; and (3) whether there exist "alternative mechanisms that could protect the confidentiality of the litigants." *Id.*

### II. Discussion

Plaintiff's motion to proceed by pseudonym presents a close call. There is no indication or argument that Plaintiff is challenging government activity, or that he would risk criminal prosecution for the facts admitted in his pleadings. Nor would the use of his name expose him to retaliation—after all, Defendant is already aware of his identity. *See, e.g.*, *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) ("Plaintiff has not...explained how or why the use of her real name in court papers would lead to harm, since those who presumably would have any animosity toward her already know her true identity."). But Plaintiff does argue that this case concerns "sensitive and highly personal" matters. Doc. [7] at 2-3; *Cajune*, 105 F.4th at 1077.

Citing recent cases in which use of a pseudonym was permitted in relation to allegations of rape, sexual assault, and child abuse, as well as older cases regarding "abortion and birth control use, homosexuality and transsexuality, AIDS, and the welfare of abandoned or illegitimate children," Doc. [7] at 2-3 (citing cases), Plaintiff argues that the "common thread" is the "presence of some social stigma or the threat of physical harm to the plaintiffs attaching to disclosure of their identities to the public

record." *Id.* at 3 (quoting *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 74 (D.R.I. 1992)). Plaintiff argues that being forced to proceed publicly would "allow others to scrutinize his extremely sensitive personal and sexual information and the exact injuries his lawsuit seeks to address," and that identification would exacerbate the emotional distress he has suffered and continues to suffer as a result of the dissemination of the subject images. *Id.*

**\*4** That argument has considerable force, though the bar for what constitutes "social stigma," making a matter so "personal and highly sensitive" as to warrant anonymity, is a high one.[3] "[C]ourts have declined to allow plaintiffs to proceed pseudonymously where plaintiffs feared they would face *disapproval by many in their community* if they prosecuted the case under their real name." *Cajune*, 105 F.4th at 1077 (emphasis added); *see Doe v. Hartz*, 52 F. Supp. 2d 1027, 1046 (N.D. Iowa 1999) ("[T]he fact that [the litigant] may suffer some personal embarrassment, standing alone, does not require the granting of his request to proceed under a pseudonym." (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992))). And "the 'sexual' nature of the alleged wrongdoing here" is "not necessarily sufficient" to warrant pseudonymity. *Hartz*, 52 F. Supp. 2d at 1047.

But Plaintiff has alleged more than an interest in avoiding "personal embarrassment" or "disapproval." He alleges that he has suffered symptoms of anxiety and depression, post-traumatic stress disorder, and severe emotional distress because of the dissemination of these images, and that proceeding in his own name "may exacerbate his emotional distress." Docs. [17] ¶ 29, [7] at 3. Those are legitimate concerns. *See Haynes*, 2019 WL 2450813, at \*3 (In "more recent cases...courts now place more weight on the psychological trauma faced by victims of sexual assault, the easy public access of court records online, and the deterrent effect that 'outing' a sexual assault victim may have on other victims.").

Moreover, one of Plaintiff's claims is brought pursuant to 15 U.S.C. § 6851 (disclosure of intimate images), which expressly authorizes courts to provide "injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym.[4] In light of this express authorization, courts have consistently granted requests to proceed under pseudonym in cases brought pursuant to 15 U.S.C. § 6851. *See, e.g.*, *Doe v. Ghiorso*, 2024 WL 3511641, at \*2 (S.D. Ga. July 23, 2024) ("Although general embarrassment ordinarily might not be sufficient to support anonymity, § 6851 plainly contemplates the need for anonymity during litigation when the plaintiff's intimate image is shared involuntarily"); *Doe Williams v. Williams*, 2024 WL 2805642, \*5 (S.D. Miss. May 31, 2024) ("Section 6851's very purpose is to protect against one's intimate matters being publicized, meaning that 'revealing plaintiff's identity plainly will incur, and thus compound, the very harm [s]he already allegedly has suffered as a result of defendants' alleged disclosures' " (quoting *Doe v. Willis*, 2023 WL 6907100, \*2 (D. Colo. Sept. 22, 2023))); *C.V. v. Carminucci*, 2024 WL 3983007, at \*2 (D.N.J. Aug. 28, 2024) (finding "good cause to allow Plaintiff to proceed under a pseudonym," in part because plaintiff sought "relief under 15 U.S.C. § 6851, which expressly provides that a plaintiff may proceed in litigation using a pseudonym"); *Doe v. Unknown Party*, 2024 WL 492231, at \*3 (D. Ariz. Feb. 7, 2024) (allowing the use of a pseudonym where plaintiffs sought "relief under 15 U.S.C. § 6851, and that statute expressly provides that 'the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym' " (quoting 15 U.S.C. § 6851)); *but see Doe v. McCoy*, 2024 WL 843908, \*9 (N.D. Ga. Feb. 28, 2024) (suggesting that 15 U.S.C. § 6851 "provides for injunctive relief maintaining the plaintiff's confidentiality" only "*in the event his or her claim succeeds*" (emphasis added)).

**\*5** Defendant's opposition to Plaintiff's request is rooted in "basic fairness": "Plaintiff should not be allowed to name Defendant in this suit, thereby publicizing her formerly anonymous sex work activity and accuse Defendant of violating laws prohibiting the dissemination of photographs, all while remaining anonymous." Doc. [13] at 7. When a plaintiff accuses an individual, as opposed to the government, of wrongdoing, some courts have found that "basic fairness counsels against allowing [a] plaintiff to proceed pseudonymously...[because it would] be fundamentally unfair for plaintiff to be able to 'clear his name' and wield a potential judgement against [defendant] to his advantage but hide under a shield of anonymity if unsuccessful." *Doe v. Doe*, 649 F. Supp. 3d 136, 140 (E.D.N.C. 2023), *aff'd* 85 F.4th 206 (4th Cir. 2023); *see Doe v. Virginia Polytechnic Inst., & State Univ.*, 2022 WL 972629, at \*3 (W.D. Va. Mar. 30, 2022) ("When a plaintiff alleges that a private party has violated federal law, 'basic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names.' " (quoting *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979))).[5]

The Court is unaware of any other factor militating against Plaintiff's use of a pseudonym in the early stages of this litigation. Defendant already knows Plaintiff's identity, so there is no "unique threat of fundamental unfairness" to Defendant. *See Cajune*, 105 F.4th at 1077 (quoting *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020)); *see Haynes*, 2019 WL 2450813, at \*4 ("The Court reiterates that Defendant knows Plaintiff's real name and should not be impaired by Plaintiff's use of a pseudonym in conducting discovery or impeaching Plaintiff's credibility."). Nor is the public interest in disclosure

apparently stronger here than in other contexts in which anonymity is typically granted. As it does with respect to rape and sexual assault, the public has an interest in protecting the identities of victims of nonconsensual dissemination of private images, who are more likely to try to vindicate their rights if they can proceed under pseudonym.[6] *Id.* at *3 ("The Court is also mindful of the strong public interest in protecting the identities of sexual assault victims so as not to deter other victims from reporting crimes against them."). And though there may be "alternative mechanisms" to protect litigants from publication of the images themselves, at least prior to trial, the use of pseudonyms is the only way to protect them from being publicly linked to the content of those images, which is what they "desire[ ] to keep private and secret." Doc. [17] ¶ 62.

**\*6** Considering all of the above, the Court finds that Plaintiff's "need for anonymity outweighs the countervailing interests in full disclosure." *Cajune*, 105 F.4th at 1077. The motion to proceed under pseudonym is therefore granted, but "the restrictions contained in this order only apply to the discovery period and may be reconsidered if this case goes to trial." *Haynes*, 2019 WL 2450813, at *4 (quoting *Roe v. St. Louis Univ.*, 2009 WL 910738, at *5 (E.D. Mo. Apr. 2, 2009)).

## MOTION TO DISMISS

### I. <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A plaintiff's factual allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The well-pled facts must establish more than a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)). But if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although courts must accept all well-pled factual allegations as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

### II. <u>Discussion</u>

As set forth more fully below, Plaintiff's Counts III (intrusion upon seclusion), IV (public disclosure of private facts), and VI (negligent infliction of emotional distress) successfully state claims. Counts I (violation of Mo. Rev. Stat. § 573.110, nonconsensual dissemination of private sexual images) and V (intentional infliction of emotional distress) fail to state claims upon which relief can be granted. Count II (violation of violation 15 U.S.C. § 6851, disclosure of intimate images) is not the subject of any pending motion.

**A. Count I: Violation of Mo. Rev. Stat. § 573.110**

Section 573.110 of the Missouri Revised Statutes creates a private right of action against one who commits the offense of "nonconsensual dissemination of private sexual images." The offense has three elements. First, an individual must "[i]ntentionally disseminate[ ] an image with the intent to harass, threaten, or coerce another person[.]" § 573.110.2(1). The target of the intended harassment, threat, or coercion must be at least eighteen years of age, be "identifiable from the image itself or information displayed in connection with the image," and either be "engaged in a sexual act," or their "intimate parts [must be] exposed, in whole or in part." *Id.* Second, the offending individual must have "[o]btain[ed] the image under circumstances in which a reasonable person would know or understand that the image was to remain private[.]" § 573.110.2(2). And third, the offending individual must have either "[k]now[n] or should have known that the person in the image did not consent to the dissemination." § 573.110.2(3).

**\*7** Defendant argues that the Second Amended Complaint is "completely devoid of any factual allegations that would suggest Defendant disseminated the subject photographs with the intent to harass, threaten, or coerce anyone," and thus fails to state a claim under § 573.110.2(1). Doc. [22] at 3. Plaintiff counters that "by distributing the images without Plaintiff's consent, [Defendant] *necessarily intended* harassment or humiliation," and that "at a minimum the most likely reason Defendant [disseminated the images] was to humiliate Plaintiff." Doc. [23] at 1 (emphasis added). This is because, in Plaintiff's view, "[d]issemination of sadomasochistic content is explicitly defined as being violative of the statue," and therefore, "the intent to harass element...is proven merely in virtue of the dissemination of the photos without consent." *Id.* at 3. Under Plaintiff's theory, "any person disseminating such conduct must be presumed to have done so with the intent to humiliate." *Id.* at 5.

Plaintiff relies heavily on *People v. Austin*, 155 N.E.3d 439 (Ill. 2019), wherein the Illinois Supreme Court upheld the constitutionality of Illinois's statute criminalizing nonconsensual dissemination of private sexual images. In analyzing whether the Illinois statute was unconstitutional because it lacked an express requirement of malice, the court discussed at length the harmful effect such dissemination can have on victims regardless of the disseminator's intent. *Id.* at 461-62. The court noted that "the motive underlying an intentional and unauthorized dissemination of a private sexual image has no bearing on the resulting harm suffered by the victim." *Id* at 470. The problem for Plaintiff's argument is that *Austin* addressed a different statute in a different analytical context.[7]

At its introduction in 2018, the Missouri bill that would eventually become § 573.110 was substantively similar in relevant part to the Illinois statue discussed in *Austin*. *See* H.B. 1558, 99th Gen. Assemb., 2d Reg. Sess. (Mo. 2018) (as introduced) ("intentionally disseminates an image of another person...");[8] 720 Ill. Comp. Stat. 5/11-23.5 (2016) (same). But the text ultimately enacted by the Missouri legislature requires that an individual "intentionally disseminate[ ] an image *with the intent to harass, threaten, or coerce* another person...." Mo. Rev. Stat. § 573.110.2(1) (emphasis added). Thus, although Plaintiff urges that "the issue is not Defendant Sutton's purported state of mind when disseminating the conduct, [but] the dissemination itself," Doc. [23] at 4-5, the statutory text requires consideration of both. And even accepting all Plaintiff's factual allegations as true and granting all reasonable inferences in favor of Plaintiff, the Second Amended Complaint does not permit this Court to reasonably infer that Defendant acted with the requisite state of mind.[9]

As Defendant notes, Plaintiff alleges that both Set 1 and Set 2 were disseminated *without Plaintiff's knowledge*. *See* Docs. [22] at 3; [17] ¶¶ 20-23. Nor are there any allegations indicating that Defendant ever planned or intended that Plaintiff learn of the dissemination. Plaintiff learned of the existence of Set 2 through a communication from a subscriber who identified him by piecing together information from multiple platforms. Doc. [17] ¶¶ 20-21. And Plaintiff learned of the dissemination of Set 1 only by asking Defendant if any other such images had been shared with others. *Id*. ¶ 23. That is insufficient to support a reasonable inference that Defendant disseminated the images with a specific intent to harass, threaten, or coerce Plaintiff. And while Plaintiff is correct that "[t]he fact that [Defendant] was possibly motivated to profit off the dissemination does not negate any other motivations behind" the dissemination, Doc. [23] at 3, neither does the existence of a profit motive do anything to bolster an inference that Defendant had another intent, as required by § 573.110.2(1).

**\*8** To survive a motion to dismiss, the well-pled facts, accepted as true, must permit the Court to infer more than the "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Plaintiff has not alleged facts from which the Court could reasonably infer that Defendant acted with the intent to harass, threaten, or coerce Plaintiff. Because such an intention is a necessary element under § 573.110.2(1), Count I is dismissed for failure to state a claim.

**B. Count III: Intrusion Upon Seclusion**

To state a claim of intrusion upon seclusion under Missouri law, a plaintiff must show:

"(1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about that subject matter through unreasonable means." *Crader v. Wal-Mart Stores, Inc.*, 2010 WL 4930978, at *2 (E.D. Mo. Nov. 30, 2010) (quoting *St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 609-10 (Mo. Ct. App. 1998)). "Unlike the public disclosure of private facts, the intrusion upon seclusion requires [n]o showing of publication or publicity." *Corcoran v. Sw. Bell Tel. Co.*, 572 S.W.2d 212, 215 (Mo. Ct. App. 1998).

Defendant argues that Plaintiff's characterization of Set 2 as "intimate" is a legal conclusion, and that the Second Amended Complaint lacks factual allegations showing that Set 2 was "secret and private" subject matter. Yet in the Second Amended Complaint, the Set 2 images from December 30, 2022, are repeatedly described as depicting BDSM sexual activities. *See, e.g., id.* ¶ 97 ("On or around December 30, 2022, Defendant Sutton took images of Plaintiff engaging in BDSM sexual activities with her...."); *id.* ¶ 88 ("On or around December 30, 2022, Defendant Sutton took images of Plaintiff engaging in sexual activities with her...."); *id.* ¶ 100(a) ("[took] images of Plaintiff [ ] performing BDSM sexual acts without his knowledge or consent"); *id.* ¶ 65 ("[took] photographs of Plaintiff [ ] engaging in BDSM sexual activities in a hotel room"). Additionally, Plaintiff "expressed to [Defendant] his desire to keep his BDSM sexual relations with her private and secret from third parties." *Id.* ¶ 62. Because the tort of intrusion upon seclusion is not defined in terms such as "BDSM" or "sexual activities," but in terms of "secret and private subject matter," Plaintiff's description of the Set 2 images as depicting "BDSM sexual activities" is a factual assertion, not a "legal conclusion" or a "threadbare recital[ ] of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Thus, accepting Plaintiff's description of Set 2 as true and granting all reasonable inferences in favor of Plaintiff, the Court finds that Count III sufficiently alleges a "secret and private subject matter." Therefore, Count III states a claim for intrusion upon seclusion.

**C. Count IV: Public Disclosure of Private Facts**

The elements of a claim of public disclosure of private facts under Missouri law are: "(1) publication or publicity; (2) absent any waiver or privilege; (3) of private matters in which the public has no legitimate concern; (4) so as to bring shame or humiliation to a person of ordinary sensibilities." *Crader*, 2010 WL 4930978, at *2 (quoting *St. Anthony's Med. Ctr.*, 974 S.W.2d at 610). The first element, "publication," means "communication to the public in general or to a large number of persons, as distinguished from one individual or a few." *St. Anthony's Med. Ctr.*, 974 S.W.2d at 610 (quoting *Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d 892, 898 (Mo. 1959)). Thus, publicity or publication for purposes of the tort of public disclosure of private facts "*means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.*" *Childs v. Williams*, 825 S.W.2d 4, at *8 (Mo. Ct. App. 1992) (emphasis in original) (quoting Restatement (Second) of Torts § 652D cmt. a (Am. L. Inst. 1977)); *see Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488, 498 (Mo. Ct. App. 1990) ("The elements and scope of the tort, recognized in Missouri, are embodied in the Restatement (Second) of Torts.").

**\*9** Defendant again argues that the photos are not described in sufficient detail to establish what "private information" was disclosed. *Id.* at 4-5. As discussed in Section II.B, above, Plaintiff has sufficiently alleged a private subject matter—i.e., his "BDSM sexual relations" with Defendant, which he sought to keep private from others. He has also sufficiently alleged that the photos in question depict that subject matter, and that it is a subject matter in which the public has no legitimate concern. *See Y.G.*, 795 S.W.2d at 498 ("Sexual relations, for example, are normally entirely private matters." (quoting Restatement (Second) of Torts § 652D(b)).

As to the element of publicity, Defendant argues that Plaintiff has not alleged publication to "a large number of people," because "Plaintiff claims the photographs from 'Set 1' were published to approximately sixteen (16) individuals and the single photograph constituting 'Set 2' was disseminated to just one (1) individual." Doc. [15] at 4. According to Defendant, "the

alleged publication to less than 20 people cannot meet the definition of publication to the general public or to a *large* number of persons." *Id.*

In *Biederman's*, the Supreme Court of Missouri held that the publicity requirement was satisfied where statements were made orally in a public restaurant on three separate occasions. 322 S.W.2d at 898. More than 30 years later, the Missouri Court of Appeals held that a letter sent to a plaintiff's "supervisor, having been reviewed only by supervisors and others with a legitimate and direct interest in [plaintiff's] employment, [did] not constitute publication as required in an action for public disclosure of private facts." *Childs*, 825 S.W.2d at 9. In reaching that conclusion, the court provided the following interpretation of *Biederman's*:

> But, the emphasis of the [*Biederman's*] opinion is that communications were made in a *public* restaurant, an environment conducive to the dissemination of the information to the public at large. It is of no consequence that private facts are communicated, even to a large group of persons, if by that communication the private facts are not made public. The critical aspect of the publication requirement is *public* disclosure—communications that are available to the general public, communications that have a likelihood of becoming public knowledge.

*Id.* at 9. Judging from *Childs*, then, an audience of "less than 20 people" is not categorically insufficient to qualify as "publicity." Imagine, for example, an audience of 16 newspaper reporters. Nor does it seem to be dispositive under *Childs* that Defendant disseminated the images "over the Internet, an environment conducive to the dissemination of the information to the public at large." Doc. [18] at 6. Not every communication that occurs "over the Internet" is directed to, or available to, the public at large.

But here, Defendant allegedly disseminated the subject images over multiple online platforms. And while Plaintiff alleges that Defendant's private twitter account had only 16 followers, the number of people in the various Twitter and Discord group chats remain unknown. Doc. [7] ¶ 16. Defendant also allegedly sold Set 2 to *at least* one of Defendant's subscribers on LoyalFans.com. *Id.* ¶ 22. And when Plaintiff demanded that Defendant delete the images, he was told that "once someone purchases a picture, it is added to their LoyalFans 'library' and cannot be deleted." *Id.* ¶ 24. Indeed, Plaintiff's numerous attempts to have the images removed from LoyalFans.com were unsuccessful. *Id.* ¶ 25. Assuming Plaintiff's allegations are true and granting all reasonable inferences in his favor, the Court finds that Plaintiff's allegations support the reasonable inference that the subject images were disseminated in such a way that the images would likely become public knowledge. While discovery may reveal otherwise, Plaintiff has pled all that is required at this early stage of litigation.

### D. Count V: Intentional Infliction of Emotional Distress

**\*10** Under Missouri law, a claim for intentional infliction of emotional distress must include the following elements:

> (1) the defendant's conduct must be outrageous or extreme; (2) the defendant must act intentionally or recklessly; (3) there must be extreme emotional distress that results in bodily harm; (4) caused by the defendant's conduct; and (5) the conduct must be intended solely to cause extreme emotional distress to the victim.

*Crow v. Crawford & Co.*, 259 S.W.3d 104, 119 (Mo. Ct. App. 2008). "[I]mportantly here, it is an essential element of the tort that the conduct must be intended *only* to cause extreme emotional distress to the victim." *Thomas v. Special Olympics Mo., Inc.*, 31 S.W.3d 442, 446 (Mo. Ct. App. 2000) (internal quotation marks and citations omitted); *see also Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) ("Intentional infliction of emotional distress requires not only intentional conduct, but conduct that is intended only to cause severe emotional harm. [Plaintiff's] allegations do not support the inference that [Defendant's]

*sole purpose* in its conduct was to invade [his] interest in freedom from emotional distress." (emphasis added)).

Defendant argues that the Second Amended Complaint fails on the first, third, and fifth elements: It does not describe the photographs in sufficient detail to support the reasonable inference that the dissemination was "outrageous and extreme"; it does not allege the requisite "bodily harm"; and it does not show "that the dissemination was intended 'solely' to cause extreme emotional distress." *See* Doc. [15] at 6. Because the Court finds that Plaintiff has failed to allege the fifth element—that Defendant acted solely to cause extreme emotional distress to Plaintiff—it does not reach Defendant's arguments as to the other elements.

As discussed in Section II.A, above, Count I of the Second Amended Complaint fails to state a claim under Mo. Rev. Stat. § 573.110 because it does not sufficiently allege that Defendant disseminated images with the "intent to harass, threaten, or coerce" Plaintiff. For the same reasons, the Second Amended Complaint fails to sufficiently allege that Defendant disseminated the images for the "sole purpose" of causing Plaintiff extreme emotional distress.

That does not conclude the analysis of Count V, though. The statute underlying Count I specifically prohibits dissemination of images with bad intent. But intentional infliction of emotional distress could conceivably result from *any* conduct, not just dissemination—including "taking images of Plaintiff Doe without his knowledge and consent and failing to prevent others from accessing and/or disseminating the images." Doc. [17] ¶¶ 89-91. And so Plaintiff might have survived dismissal on Count V by alleging that Defendant took such images, or failed to prevent others from accessing them, with the sole intention to cause extreme emotional distress. But in response to Defendant's argument on this element, Plaintiff states only that Defendant's "role in the[ir] relationship was to humiliate and dominate him," and that although he "consented to the relationship, he did not consent to [Defendant] taking photos of these actions and distribut[ing] them to an unknown number of individuals online." Doc. [18] at 7-8. Those allegations, taken to be true, do not support an inference that Defendant acted with the "sole purpose" of causing Plaintiff extreme emotional distress. *Gibson*, 952 S.W.2d at 249. And neither does anything else Plaintiff points to in the Second Amended Complaint.

**\*11** There is no allegation, for example, that the consensual relationship between Plaintiff and Defendant had ended, or that there was animosity between the two at the time the images were shared. *See* Doc. [17] ¶ 10. Defendant shared Set 1 on a private Twitter account with her personal friends—friends "not from sex work or BDSM spaces"—and in group chats with other friends who "also engage in sex work and BDSM practices." *Id.* ¶ 16. And she sold Set 2 to a subscriber within a day of it being taken. *Id.* ¶¶ 17, 20. Defendant is not alleged to have shared the images with any person connected to Plaintiff, which might support the inference that she intended him distress. And as Plaintiff appears to acknowledge, "Defendant's own commercial gain" was a reason for sharing the images, *id.* ¶ 100, at least as to Set 2. The factual allegations do not indicate that Defendant ever expected Plaintiff to learn of the conduct or to experience any distressing effects from it.

To state a claim for relief that is "plausible on its face," the well-pled facts must establish more than a "mere possibility of misconduct." *Id.* at 678-79. Because Plaintiff's "allegations do not support the inference that [Defendant's] *sole purpose in its conduct* was to invade [his] interest in freedom from emotional distress," *Gibson*, 952 S.W.3d at 249 (emphasis added), Count V fails to state a claim upon which relief can be granted and is dismissed.

### E. Count VI: Negligent Infliction of Emotional Distress

"The tort of negligent infliction of emotional distress is a negligence action." *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001). The general elements are "1) a legal duty of the defendant to protect the plaintiff from injury, 2) breach of the duty, 3) proximate cause, and 4) injury to the plaintiff." *Id.* And claims regarding negligent infliction of emotional distress "require proof of two additional elements: [5] that the defendant should have realized that his conduct involved an unreasonable risk of causing distress, and [6] that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Id.*

Defendant challenges the fifth element, arguing Plaintiff's Complaint lacks allegations showing that Defendant "should have realized that [her] conduct involved an unreasonable risk of causing distress," because it "fails to describe the photographs with specificity." Doc. [15] at 7. The Court disagrees.

According to the Second Amended Complaint, Set 1 includes "3-5 intimate photographs," in which Plaintiff is "sitting on [Defendant's] couch wearing a brown-colored collar around his neck," with Defendant's hand "looped through the o-shaped ring on the collar so as to display her ownership of Plaintiff [ ] in the context of their relationship," with Plaintiff's face visible and identifiable. Doc. [17] ¶ 14. Plaintiff consented to Defendant taking the photos "so long as" they were "kept private and not disclosed to third parties," and Defendant "verbally agreed" that she would not disclose them. *Id.* ¶¶ 12-14. Plaintiff also "expressed to Defendant Sutton his desire to keep his BDSM sexual relations with her private and secret from third parties." *Id.* ¶ 62. The Set 1 photos are repeatedly characterized as depicting BDSM sexual activities. *See, e.g., id.* ¶ 96 ("On or around August 27, 2022, Defendant Sutton took private images of Plaintiff engaging in BDSM sexual activities...."); *id.* ¶ 87 ("On or around August 27, 2022, Defendant Sutton took private images of Plaintiff engaging in sexual activities with her ...."). The detailed description of the contents of Set 1 is consistent with Plaintiff's characterization of the content as BDSM sexual material and also with Plaintiff's definition of "femdom," which falls under the umbrella of BDSM:

> Femdom is a BDSM sexual fetish in which a woman or women take on dominant roles and control or exert authority over their male or submissive partners through various activities, such as role-playing, power exchange, bondage, discipline, humiliation, and consensual acts of dominance by women[.]

**\*12** *Id.* ¶ 7(b). Set 2 is described in less detail but is likewise repeatedly characterized as depicting BDSM sexual activities. *See, e.g., id.* ¶ 97 ("On or around December 30, 2022, Defendant Sutton took images of Plaintiff engaging in BDSM sexual activities with her...."); ¶ 88 ("On or around December 30, 2022, Defendant Sutton took images took images of Plaintiff engaging in sexual activities with her...."); ¶ 100(a) ("[took] images of Plaintiff [ ] performing BDSM sexual acts without his knowledge or consent"); ¶ 65 ("[took] photographs of Plaintiff [ ] engaging in BDSM sexual activities in a hotel room").

The Second Amended Complaint is thus replete with factual assertions that both Set 1 and Set 2 depicted BSDM activities between Plaintiff and Defendant—activities that Plaintiff wished to keep "private and secret from third parties." Those allegations, accepted as true, along with reasonable inferences drawn therefrom, do plausibly state a claim that Defendant "should have realized that [disclosure of such material] involved an unreasonable risk of causing distress" to Plaintiff. *Thornburg*, 62 S.W.3d at 427. Accordingly, Count VI successfully states a claim for negligent infliction of emotional distress.

## CONCLUSION

Assuming all of Plaintiff's well-pled allegations to be true and drawing every reasonable inference in his favor, Counts I and V of the Second Amended Complaint fail to state claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Leave to File Counterclaim, Doc. [20], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Proceed Under Pseudonym, Doc. [7], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Certain Counts of Plaintiff's Complaint, Doc. [14], is **GRANTED in part** and **DENIED in part**. Count V is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Count I of Plaintiff's Amended Complaint, Doc. [21], is **GRANTED**. Count I is **DISMISSED** without prejudice.

**IT IS FINALLY ORDERED** that Defendant may file her proposed counterclaim no later than April 4, 2025.

**All Citations**

## Footnotes

1    For purposes of the motion to dismiss, the Court takes the factual allegations in the Second Amended Complaint, Doc. [17], to be true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

2    While the "Facts" section of the Second Amended Complaint does not describe the contents of Set 2 in detail beyond characterizing it as "intimate" and noting that Plaintiff's face is not visible, Doc. [17] ¶¶ 18- 19, those contents are further described in later sections. Plaintiff has alleged only two incidents of photo-taking and two corresponding sets of photos: Set 1, taken at Defendant's home with Plaintiff's knowledge and consent, and Set 2, taken at a hotel without Plaintiff's knowledge or consent. The Court thus finds it sufficiently unambiguous for purposes of the motion to dismiss that the factual allegations describing "photographs of Plaintiff Doe engaging in BDSM sexual activities *in a hotel room*," *id.* ¶ 65 (emphasis added), and photographs taken "of Plaintiff Doe performing BDSM sexual acts *without his knowledge or consent*," *id.* ¶ 100(a) (emphasis added), are descriptions of Set 2.

3    *See W.G.A. v. Priority Pharmacy, Inc.*, 184 F.R.D. 616, 617 (E.D. Mo. 1999) (pseudonymity permitted for AIDS patient in action against pharmacy); *D.P. for Doe v. Montgomery Cnty.*, 2019 WL 2437024, at *1 (E.D. Mo. June 11, 2019) (same for alleged victim of sexual assault, who was disabled and had a legal guardian, in action against police officer); *Doe H.M. v. St. Louis Cnty.*, 2008 WL 151629, at *1 (E.D. Mo. Jan. 14, 2008) (same for adult plaintiff in § 1983 action where use of his real name would reveal that he had been sexually abused as a child); *Roe v. St. Louis Univ.*, 2009 WL 910738, at *4-5 (E.D. Mo. Apr. 2, 2009) (same for alleged rape victim in action against her university for negligent handling of plaintiff's assault claims); *Doe v. Haynes*, 2019 WL 2450813, at *3 (E.D. Mo. June 12, 2019) (same for alleged victim of "forceful sexual assault" by music artist).

4    Defendant maintains that Plaintiff's "vague and conclusory descriptions of the photographs...[do] not establish that the photographs concern a subject matter that is of the utmost intimacy." Doc. [13] at 8. The Court disagrees. Allegations that the photographs depict Plaintiff engaging in BDSM sexual activities are sufficient for the Court to conclude that they concern a "sensitive and highly personal" subject matter. *Cajune*, 105 F.4th at 1077.

5    Defendant also argues that Plaintiff has "unclean hands," and that "[i]t defies the notion of basic fairness that Plaintiff could proceed pseudonymously in his claim against Defendant while also remaining anonymous as a counterclaim-defendant." Doc. [13] at 9-10. That argument invites the Court to assume that the counterclaim allegations are true or to find that the mere filing of a counterclaim defeats any considerations in favor of allowing a plaintiff to proceed by pseudonym. Defendant provides no authority for that principle, and the Court declines to adopt it.

6    Defendant argues that "the distinction between compelled and consensual acts is paramount in this matter," such that those who "voluntarily engage in [consensual] sexual activities with a partner" should not be permitted to proceed anonymously in an action objection to the disclosure of images of those activities, whereas victims of rape should be so permitted. Doc. [13] at 2, 3, 5. She cites no case relying on that distinction, however. And the Court notes that such a distinction is absent from 15 U.S.C. § 6851, which empowers a plaintiff to sue—and empowers a court to allow that plaintiff to proceed by pseudonym, § 6851(b)(3)(B)—for the nonconsensual disclosure of an "intimate visual depiction," even if the plaintiff consented to the depicted conduct (unless it was produced in a public place, *see* § 6851(a)(5)(B)(ii)) and even if the plaintiff consented to the creation of the depiction and/or its disclosure to someone

else, *see* § 6581(b)(2). The Court is thus unpersuaded that whether the depicted conduct was consensual is "paramount" in deciding whether a plaintiff may proceed anonymously.

[7]    Indeed, the Illinois Supreme Court in *Austin* acknowledged this very difference, citing Missouri's § 573.110.2(1) among examples of "most state laws" on this subject, which "expressly require some form of malicious purpose or illicit motive as a distinct element of the offense." *Austin*, 155 N.E.3d at 470.

[8]    Available at https://documents.house.mo.gov/billtracking/bills181/hlrbillspdf/5278H.01I.pdf.

[9]    The allegation that Defendant's conduct was "intentional and malicious and done for the purpose of causing, or was known by Defendant to likely cause, Plaintiff humiliation, mental anguish, and severe emotional distress," Doc. [17] ¶ 91, is a "legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555, and not entitled to the presumption of truth.

2024 WL 492231
Only the Westlaw citation is currently available.
United States District Court, D. Arizona.

John N. DOE, et al., Plaintiffs,
v.
UNKNOWN PARTY, et al., Defendants.

No. CV-24-00252-PHX-DLR
|
Signed February 7, 2024

**Attorneys and Law Firms**

Lesli Sorensen, Ryan Rapp Pacheco & Kelley PLC, Phoenix, AZ, for Plaintiffs.

**ORDER**

Douglas L. Rayes, United States District Judge

**\*1** Pending before the Court is Plaintiffs' *ex parte* motion for a temporary restraining order ("TRO"), which asks the Court to enjoin Defendant John R. Doe from disclosing Plaintiffs' intimate visual depictions (Doc. 2), and Plaintiffs' motion to proceed under pseudonyms and for a protective order (Doc. 3). For the following reasons, Plaintiffs' motions for a TRO, to proceed under pseudonyms, and for a protective order are granted.

**I. Background**[1]
This case involves allegations of "revenge porn." Plaintiffs John N. Doe and Jane T. Doe married each other in 2005, and John R. and Plaintiff Jane N. Doe married each other in 2006. In 2017, John N. and Jane T. (as a couple) and John R. and Jane N. (as a couple) decided to open their relationships, so both couples joined an online website where they could meet other couples and engage in intimate activities. The couples subsequently met one another and agreed to engage in such activities. The couples explicitly and verbally agreed that all information, including audiovisual recordings, pertaining to their lifestyle could not be shared with third parties. From late 2017 through early 2018, the couples consensually created together ten audiovisual recordings depicting John N., Jane T., and Jane N. (collectively, "Plaintiffs") engaging in intimate and sexual acts. The recordings included Plaintiffs' faces, naked bodies including genitals, and distinctive tattoos.

By mid-2018, Plaintiffs and John R. mutually agreed to cease their relationship. Subsequently, John N. and Jane T. divorced, and Jane N. and John R. divorced. However, John N. and Jane N. continued seeing each other. In 2022, Jane N. sought a change in residency order from family court, permitting her to move her two minor children (whose father is John R.) to live with her and John N. in Yavapai County. John R. objected. However, the court granted the change in residency and altered John R.'s parenting time. The matter was officially closed on June 14, 2022. During this time, John N. publicly proposed to Jane N. (John R.'s now ex-wife).

Plaintiffs allege that on July 23, 2022, and August 10, 2022, John R. violated his oral agreement with Plaintiffs and published all ten audiovisual records to a pornographic website, Motherless.com. All ten recordings were made accessible to the public

from their dates of publication through April 27, 2023, when they were taken down. Plaintiffs allege that John R. was angered by the family court's ruling and by John N. and Jane N.'s public engagement, so he uploaded these videos as retaliation. Plaintiffs also allege that in 2022, none of the Plaintiffs possessed the recordings and that they never disclosed the recordings to anyone other than John R. Plaintiffs assert that John R. is the only person who would have been in possession of the recordings and that John R. even informed others in his profession (as a firefighter) of the recordings' existence.

**\*2** A friend informed Plaintiffs of the recordings' publication on February 7, 2023. As of that date, each of the recordings had been viewed at least 100 times. Plaintiffs immediately filed a complaint with law enforcement, who began investigating. On April 27, 2023, a detective assigned to Plaintiffs' case informed John R. that she wished to speak to him, which John R. refused. Later that day, Jane T. checked Motherless.com and confirmed that the recordings had been removed. Plaintiffs allege that, after filing a Notice of Claim with John R.'s place of employment, John R. began retaliating against Plaintiffs through other means, including unilaterally changing his parenting time schedule and calling the police on his ex-wife, Jane N. On February 6, 2024, Plaintiffs filed their Verified Complaint (Doc. 1) against John R. alleging claims under federal and state law based on John R.'s alleged unauthorized publication of the audiovisual recordings.

## II. The TRO

A TRO preserves the status quo pending a hearing on a preliminary injunction motion to avoid irreparable harm in the interim. The standards for granting a TRO are identical to those for granting a preliminary injunction. *Whitman v. Hawaiian Tug & Barge Corp./ Young Bros., Ltd. Salaried Pension Plan*, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998). A plaintiff must establish: (1) likelihood of success on the merits of the claims; (2) likelihood of irreparable harm in the absence of immediate relief; (3) the balance of equities tips in the plaintiff's favor; and (4) the TRO is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A court examines these elements along a sliding scale, meaning that a stronger showing of one element may offset a weaker showing of another, although all elements must still be met. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

### A. Success on the Merits

Plaintiffs bring claims under 15 U.S.C. § 6851, which provides that,

> an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief.

15 U.S.C. § 6851(b)(1)(A). Individuals who file claims under this statute may recover damages in addition to equitable relief. *Id.* § 6851(b)(4). An "intimate visual depiction" includes any photo, video, or other visual image that depicts (1) uncovered genitals, pubic area, post-pubescent female nipple of an identifiable individual or (2) an identifiable individual engaging in sexually explicit conduct. *Id.* § 6851(a). "The term 'disclose' means to transfer, publish, distribute, or make accessible." *Id.* § 6851(a)(4).

The Court finds that Plaintiffs are likely to succeed on the merits of their claims under 15 U.S.C. § 6851(b)(1)(A).[2] The Verified Complaint supports that John R. used the internet to disclose[3] intimate visual depictions of Plaintiffs without their consent. *See Vill. Tavern, Inc. v. Catbird Hosp., LLC*, No. 1:21-CV-00228-MR, 2022 WL 3440637, at \*3 (W.D.N.C. Aug. 16, 2022) (finding that "use occurred 'in commerce' because the Defendants displayed the mark on the internet, a channel of interstate commerce"). Specifically, the Verified Complaint supports that John R. was the only person who possessed the ten audiovisual

recordings in 2022 and that he might have been retaliating against John N. and Jane N. for their proposal and for the family court ruling, both of which coincided with John R.'s alleged initial publication date of July 2022. Further, the recordings were taken down from the internet on April 23, 2023, the same day that a detective allegedly spoke with John R. regarding the recordings. This is sufficient circumstantial evidence to establish a likelihood of success on the merits. *See Doe v. Sultan*, No. 3:23-CV-00667-FDW-DCK, 2023 WL 7027976, at *2 (W.D.N.C. Oct. 25, 2023) (granting a preliminary injunction where "evidence tends to show Defendant was the only person who possessed the intimate video posted on Facebook and emailed to her employer, and that only Plaintiff and Defendant possessed the intimate image sent to Plaintiff's employer").

### B. Likelihood of Irreparable Harm

**\*3** Plaintiffs have demonstrated that, absent emergency relief, there is an imminent risk of John R.'s further nonconsensual disclosure of Plaintiffs' intimate visual depictions. The harms Plaintiffs allege from these disclosures—such as emotional distress—are the type of harms that lack an adequate legal remedy. Moreover, because the Verified Complaint supports that John R. has a pattern and practice of retaliating against Plaintiffs, there is a substantial risk that John R. will retaliate against Plaintiffs by making further disclosures once he is served and put on notice of this case.

### C. Balance of Equities

The Court finds that the balance of equities strongly weighs in favor of Plaintiffs and against John R. *See Sultan*, 2023 WL 7027976, at *2 (holding same). The relief Plaintiffs seek is narrowly tailored to enjoin John R. from disclosing these recordings. John R. has no economic interest in publishing such depictions, and any additional disclosure serves no justifiable or lawful purpose.

### D. Public Interest

There is no harm to public interest if the TRO is granted. The requested relief only targets John R. and therefore has no impact on non-parties. What's more, in enacting 15 U.S.C. § 6851(b)(1)(A), Congress expressed a public policy against revenge porn. A TRO that orders John R. not to engage in such activity advances, rather than harms, that public interest.

### III. Issuing a TRO *Ex Parte*

A party seeking an *ex parte* TRO must comply with Federal Rule of Civil Procedure 65(b)(1) by (1) substantiating allegations of irreparable harm with an affidavit or verified complaint and (2) certifying in writing any efforts made to give notice to the non-moving parties, and why notice should not be required. Generally, a court may only issue a TRO if the movant "gives security in an amount the court considers proper to pay the costs and damages sustained by any party wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, a court may waive the bond "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Barahona-Gomez v. Renno*, 167 F.3d 1128, 1237 (9th Cir. 1999).

Plaintiffs substantiated their allegations of irreparable harm by providing a Verified Complaint. (Doc. 1.) Plaintiffs argue that if they were required to give notice, John R., upon receiving notice, would likely retaliate against Plaintiffs and further disclose the audiovisual recordings and/or any other intimate visual depictions of Plaintiffs. The Court agrees that notice should not be required in this instance. As for the bond, the Court finds there is little realistic likelihood of harm to John R. from enjoining his conduct, and thus no bond is necessary.

#### IV. Request to Proceed under Pseudonyms

In addition to their request for emergency relief, Plaintiffs seek to proceed under the pseudonyms John N. Doe, Jane N. Doe, Jane T. Doe and to proceed against Defendant under the pseudonym John R. Doe. (Doc. 3.) Plaintiffs also request entry of a protective order barring dissemination of Plaintiffs' and John R.'s true names and requiring that any documents containing their true names be redacted from pleadings or documents. (Doc. 3.)

The Court finds it appropriate to allow Plaintiffs and John R. to proceed under pseudonyms. For one, Plaintiffs seek relief under 15 U.S.C. § 6851, and that statute expressly provides that "the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym." 15 U.S.C. § 6851(b)(3)(B); *see e.g.*, *Sultan*, 2023 WL 7027976, at *2 (allowing plaintiff to proceed under a pseudonym). Second, preserving anonymity in this case outweighs any prejudice to John R. and the public's interest in knowing the parties' identities. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) ("In this circuit, we allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule, or personal embarrassment."). This case involves highly sensitive and intimate details of all parties involved. Requiring disclosure of Plaintiffs' names is neither material to the case nor prejudicial to John R.

**\*4** Additionally, the Court is persuaded that requiring John R. to proceed under a pseudonym is necessary to preserve Plaintiffs' anonymity. Because Jane N. and John R. were previously married and because Jane N. and John N. are now currently married, the disclosure of John R.'s name would easily reveal all three Plaintiffs' identities. Accordingly, the Court grants Plaintiffs' motion (Doc. 3) to proceed under pseudonyms and for a protective order barring dissemination of Plaintiffs' and John R.'s true names.

**IT IS ORDERED** that Plaintiffs' *ex parte* motion for a TRO (Doc. 2) is **GRANTED** as follows:

> 1) Defendant John R. Doe and all persons in active concert or participants with him are enjoined from disclosing intimate visual depictions of Plaintiffs.

> 2) Defendant John R. Doe and all persons in active concert or participants with him are enjoined from disclosing Plaintiffs' identities to anyone else.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for a TRO (Doc. 2) is converted into a motion for a preliminary injunction. Plaintiffs shall serve Defendant John R. Doe with the Verified Complaint, the preliminary injunction motion, and this order by no later than **February 14, 2024** and file proof thereof with the Court. Defendant John R. Doe's response to the preliminary injunction motion is due no later than **February 28, 2024**. Plaintiffs may file an optional reply by no later than **March 6, 2024**. The parties shall appear for a preliminary injunction hearing before Judge Douglas L. Rayes in Courtroom 606, 401 W. Washington St., Phoenix, AZ 85003 on **March 12, 2024, at 1:30 PM**. By no later than **March 6, 2024**, the parties shall jointly notify the Court in writing whether this hearing will be an evidentiary hearing or an oral argument on the paper record only. If the hearing will consist of oral argument only, the Court will conduct the hearing telephonically and provide the parties with call-in information prior to the hearing date.

**IT IS FURTHER ORDERED** that, to afford the parties adequate time to brief the issues and the Court to hold a hearing, the Court finds good cause to extend the duration of this TRO beyond the ordinary fourteen days. Unless otherwise extended, this TRO will expire on **March 14, 2024**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to proceed under pseudonyms and for a protective order (Doc. 3) is **GRANTED** as follows:

> 1) In all publicly filed documents, Plaintiffs and Defendant John R. Doe shall be identified only by their pseudonym.

> 2) All documents filed with the Court that contain a Plaintiff's or Defendant John R. Doe's true name shall be filed under seal.

3) If requested to do so, Plaintiffs' counsel shall disclose the true name of each Plaintiff and the true name of Defendant John R. Doe to counsel for the defendants.

4) Counsel for the parties may disclose Plaintiffs' and Defendant John R. Doe's true identities to the named plaintiffs and defendants, their employees, and their experts retained in this case, but only to the minimum extent necessary to litigate this action.

5) Any person to whom disclosure is made because of this litigation shall first read this protective order prior to receiving Plaintiffs' and Defendant John R. Doe's true identities. Counsel for the parties shall ensure that all persons to whom disclosure is made pursuant to paragraphs 3 and 4 are aware of this protective order.

6) Under no circumstances shall any person disclose the Plaintiffs' or Defendant John R. Doe's true identities to the media without the consent of Plaintiffs' or Defendant John R. Doe's counsel or by court order.

**\*5** 7) If any issues related to non-disclosure of Plaintiffs' or Defendant John R. Doe's true identities arise during litigation, the parties shall seek to resolve those issues without court intervention. If the parties cannot agree, they shall seek further clarification from this Court.

## All Citations

Not Reported in Fed. Supp., 2024 WL 492231

## Footnotes

[1]    The following section draws from allegations made in Plaintiffs' Verified Complaint. (Doc. 1.)

[2]    Plaintiffs also bring state law claims for negligence *per se*, intentional infliction of emotional distress, and public disclosure of private facts. (Doc. 1) The Court need not reach Plaintiffs' likelihood of success on the merits of these claims because the claims brought under 15 U.S.C. § 6851 are sufficient to sustain the TRO. *See Shawarma Stackz LLC v. Jwad*, N0. 21-CV-01263-BAS-BGS, 2021 WL 5827066, at \*19 (S.D. Cal. Dec. 8, 2021) ("The Court need not reach the merits of the remaining state torts claims that SSL raises because the Lanham Act claim and the UCL claim are sufficient to sustain a preliminary injunction.").

[3]    Plaintiffs allege that John R. initially published the ten recordings on the internet on July 23, 2022, and August 10, 2022, which is prior to 15 U.S.C. § 6851's effective date of October 1, 2022. Plaintiffs also assert, though, that the recordings continued to be accessible on the internet until April 27, 2023. Given the statute under which Plaintiffs seek relief was only recently enacted, there is little caselaw on whether the statute can be applied retroactively to disclosures made prior to October 1, 2022. That said, Plaintiffs have a colorable argument that John R. continued to "disclose" the recordings after the statute's effective date because he allegedly continued to make these videos accessible on the internet until April 2023. Moreover, even if Plaintiffs can only show a serious question going to the merits of their claims (instead of a likelihood of success), the Court would nonetheless grant the TRO given that, as discussed below, the equities sharply tip in Plaintiffs' favor.

2023 WL 6907100
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

John DOE, Plaintiff,
v.
Justin WILLIS, and Susanne Martinez, Defendants.

Civil Action No. 23-cv-2171-REB-SBP
|
Signed September 22, 2023

**Attorneys and Law Firms**

Brian A. Murphy, Murphy Law Firm, LLC, Northglenn, CO, for Plaintiff.

**ORDER RE: MOTION TO PROCEED UNDER A PSEUDONYM**

Robert E. Blackburn, United States District Judge

**\*1** This matter is before me on the **Motion To Motion To Proceed Under a Pseudonym** [#3],[1] filed August 24, 2023. I grant the motion in part and deny it without prejudice in part.

This case arises under section 1309 of the Violence Against Women Act Reauthorization Act of 2022, 15 U.S.C. § 6851, and Colorado's Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act, § 13-21-1401 – 13-21-1409, C.R.S., both of which prohibit the non-consensual disclosure of intimate visual images of a person. Given the nature of the subject of the suit, plaintiff moves to proceed under a pseudonym.

I start from the premise that there is a right to public access of judicial records:

> [T]he fundamental presupposition that it is the responsibility of judges to avoid secrecy, in camera hearings and the concealment of the judicial process from public view. Courts are public institutions which exist for the public to serve the public interest. Even a superficial recognition of our judicial history compels one to recognize that secret court proceedings are anathema to a free society.

*Doe v. Federal Bureau of Investigation*, 218 F.R.D. 256, 258 (D. Colo. 2003) (citation omitted)). That presumption extends to the identity of the parties to the suit: "Ordinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000).[2] Indeed, "[t]he use of pseudonyms concealing plaintiffs' real names has no explicit sanction in the federal rules," *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir.), *cert. denied*, 100 S.Ct. 116 (1979), and the Federal Rules of Civil Procedure provide that "[a]n action must be prosecuted in the name of the real party in interest," **FED. R. CIV. P.** 17(a), and explicitly require the complaint "name all the parties," **FED. R. CIV. P.** 10(a).

Nevertheless, the Tenth Circuit has recognized a limited universe of circumstances in which a party's anonymity should be

preserved:

> A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.

*Femedeer*, 227 F.3d at 1246 (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)). The decision whether to grant such a motion lies within my sound discretion. *M.M. v. Zavaras*, 139 F.3d 798, 802 (10th Cir. 1998).

**\*2** This case satisfies at least the first and third of these criteria. Plaintiff's claims involve matters of the most intimate and sensitive nature. There is no significant public interest in knowledge of or access to such matters. *Femedeer*, 227 F.3d at 1246; *Zavaras*, 139 F.3d at 802-03.[3] Moreover, revealing plaintiff's identity plainly will incur, and thus compound, the very harm he already allegedly has suffered as a result of defendants' alleged disclosures. *See Doe v. Massachusetts Institute of Technology*, 46 F.4th 61, 66 (1st Cir. 2022) (noting in context of considering right to interlocutory appeal of order denying motion to proceed under a pseudonym: "Once the litigant's true name is revealed on the public docket, the toothpaste is out of the tube and the media or other interested onlookers may take notice in a way that cannot be undone[.]"); *Doe v. College of New Jersey*, 997 F.3d 489, 494 (3rd Cir. 2021) (granting right to interlocutory appeal in part because court "cannot anonymize a litigant's already publicized identity with a new trial. That bell cannot be unrung."). In addition, the Colorado statute, at least, specifically provides a plaintiff bringing a claim thereunder may proceed under a pseudonym.[4] § 13-21-1405(1)(a), C.R.S. I thus conclude plaintiff should be permitted to proceed pseudonymously.

However, the motion further requests the court "enter an Order prohibiting all Parties from disclosing Plaintiff's identity on all documents and pleadings filed with the Court and from identifying him to all individuals not involved in this case" (**Motion** ¶ 9 at 3), and further "ordering Defendants not to disclose any information in any of those circumstances which would lead to Plaintiff being readily identified by anyone familiar with the parties" (*id.* at 4). This request goes far beyond the authority which supports the availability of leave to proceed under a pseudonym and ventures instead into the realm of matters better addressed by a motion for protective order or injunctive relief. I am unwilling to grant such relief in the context of this motion. Accordingly, I deny the motion to that extent, albeit without prejudice.

**THEREFORE, IT IS ORDERED** that the **Motion To Motion To Proceed Under a Pseudonym** [#3], filed August 24, 2023, is granted in part and denied without prejudice in part as follows:

1. That the motion is granted insofar as it requests leave to proceed under a pseudonym; and

2. That in all other respects, the motion is denied without prejudice.

### All Citations

Not Reported in Fed. Supp., 2023 WL 6907100

## Footnotes

[1]    "[#3]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2]    The Tenth Circuit has noted, among other concerns, that if a party's name is absent from the public record, "it is difficult to apply legal principles of res judicata and collateral estoppel." *Femedeer*, 227 F.3d at 1246. *See also Doe v. Massachusetts Institute of Technology*, 46 F.4th 61, 68 (1st Cir. 2022) ("Lacking knowledge of the parties' names, the

public could learn virtually nothing about a case outside the facts and arguments in the record.").

[3]     In addition, plaintiff represents his counsel sent defendants a cease-and-desist letter prior to filing this lawsuit identifying plaintiff.

[4]     While the federal statute also includes an anonymity provision, the language thereof is somewhat less clear as to a plaintiff's right to anonymity throughout the entirely of the action. *See* 15 U.S.C. § 6851(b)(3)(B) (permitting the court to allow the use of a pseudonym in granting injunctive relief).

---

**End of Document**                                                                  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6903016
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

John DOE Plaintiff,
v.
Justin WILLIS; and Susanne Martinez Defendants.

Civil Action No. 23-cv-02171-REB-SBP
|
Signed September 22, 2023

**Attorneys and Law Firms**

Brian A. Murphy, Murphy Law Firm, LLC, Northglenn, CO, for Plaintiff.

### ORDER GRANTING MOTION TO REDACT

Robert E. Blackburn, United States District Judge

**\*1** This matter is before me on the **Motion To Restrict or Redact Plaintiff's Motion To Proceed Under a Pseudonym** [#12],[1] filed September 6, 2023. I grant the motion to the extent it requests a portion of the substantive motion be redacted.

Plaintiff alleges violations of section 1309 of the Violence Against Women Act Reauthorization Act of 2022, 15 U.S.C. § 6851, and Colorado's Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act, § 13-21-1401 – 13-21-1409, C.R.S., both of which prohibit the non-consensual disclosure of intimate visual images of a person. Plaintiff filed a motion to proceed under a pseudonym ([#3], filed August 25, 2023). The motion was filed under Level 1 restriction as defined by D.C.COLO.LCivR 7.2(b), limiting access to the parties and the court. This motion (which was filed within the time provided by D.C.COLO.LCivR 7.2(e)) seeks to maintain that restriction or alternatively to redact a portion of the underlying motion. The time for objections has passed and no objections have been filed. *See* D.C.COLO.LCivR 7.2(d). The motion therefore is ripe for determination.

In exercising my discretion in considering a motion to restrict, *see JetAway Aviation, LLC v. Board of County Commissioners of County of Montrose, Colorado*, 754 F.3d 824, 826 (10th Cir. 2014), I start with the presumption that documents essential to the judicial process should be available to the public, *see United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997), *cert. denied*, 118 S.Ct. 1110 (1998). Yet while the right of access is presumptive, it "is not absolute," *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 897 (2008), and may be overcome if a movant "articulate[s] a real and substantial interest that justifies depriving the public of access to the records that inform [the court's] decision-making process," *JetAway*, 754 F.3d at 826 (citation and internal quotation marks omitted).

Plaintiff here has satisfied the requirements of D.C.COLO.LCivR 7.2(c), clearly articulating the significant privacy interests, which the statutes themselves seek to protect, which would be negatively impacted by disclosure. *See Huddleson v. City of*

*Pueblo, Colorado*, 270 F.R.D. 635, 637 (D. Colo. 2010) ("[P]rivacy interests have been found to be sufficiently compelling to overcome the presumption of openness."). However, plaintiff also has acknowledged, as required by D.C.COLO.LCivR 7.2(c)(4), that only a small portion of the motion reveals personal details that might lead to the disclosure of plaintiff's identity. He thus suggests that redaction of that specific paragraph of the motion will be adequate to protect his privacy interests.

In light of the presumption of public access, I find it appropriate to redact that portion of the motion rather than restrict the motion in its entirety. The unredacted version of the motion shall remain under restriction. *See* FED. R. CIV. P. 5.2(d).

**\*2 THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion To Restrict or Redact Plaintiff's Motion To Proceed Under a Pseudonym** [#12], filed September 6, 2023, is granted to the extent it seeks redaction of the underlying motion to proceed under a pseudonym;

2. That plaintiff on or before October 2, 2023, plaintiff shall file in the public record a copy of **Plaintiff's Motion To Proceed Under a Pseudonym** in which paragraph 10 is redacted; and

3. That the unredacted copy of **Plaintiff's Motion To Proceed Under a Pseudonym** [#3], filed August 24, 2023, shall be maintained at Level 1 restriction as defined by D.C.COLO.LCivR 7.2(b).

Dated September 22, 2023, at Denver, Colorado.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6903016

---

### Footnotes

1     "[#12]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

---

**End of Document**          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2805642
Only the Westlaw citation is currently available.
United States District Court, S.D. Mississippi, Northern Division,
Northern Division.

Jane DOE, Plaintiff/CounterDefendant
v.
Ivana WILLIAMS, Brad McLendon, and John and Jane Does 1–30, Defendants
v.
Ivana WILLIAMS, CounterPlaintiff

CIVIL ACTION NO. 3:24-CV-165-DPJ-ASH
|
Signed May 31, 2024

**Attorneys and Law Firms**

Toby J. Gammill, Flowood, MS, for Plaintiff/CounterDefendant.

Jonathan Matthew Eichelberger, Madeline M. Iles, Eichelberger Law Firm, PLLC, Jackson, MS, for Defendant/CounterPlaintiff Ivana Williams.

James L. Kelly, Kelly Law Office, PC, Brandon, MS, for Defendant Brad McLendon.

ORDER

Daniel P. Jordan III, CHIEF UNITED STATES DISTRICT JUDGE

**\*1** This is an action brought under Mississippi common law and 15 U.S.C. § 6851, a federal statute creating a "[c]ivil action relating to disclosure of intimate images." Plaintiff, the pseudonymous Jane Doe, alleges that one Defendant, Ivana Williams, made a video of the two of them having sex and then—without Doe's consent—sent it to, among others, Defendant Brad McLendon, who further distributed it. Compl. [1]. McLendon moved to dismiss [13], as did Williams [18]. The Court will deny both motions. Plaintiff has also asked for leave [20] to proceed pseudonymously, which Defendants oppose. The Court will grant her motion, subject to review as the case proceeds.

I. Facts and Proceedings

For purposes of the motions to dismiss, the Court takes the Complaint's well-pleaded allegations as true. After she became intoxicated at dinner in November 2022, Doe went home with Williams, where a nonconsensual "sexual encounter" occurred. Compl. [1] ¶¶ 8–9; 15. In the morning, Doe asked Williams whether she had recorded them; Williams said she had. *Id.* ¶ 10. When Doe asked her to delete the video, Williams told Doe not to worry because her face was not visible and because Williams intended to keep it in a "vault." *Id.* ¶ 11. Unsatisfied, Doe asked Williams again to delete it, but she refused. *Id.*

In May 2023, Williams "casually mentioned" that her boyfriend's wife had found the video in his email and viewed it. *Id.* ¶ 12–13. This boyfriend was Defendant McLendon. Williams admitted sending it to him and lying about Doe's face not being

visible. *Id.* ¶ 14. Doe "realized [the] video of the non-consensual sex was being passed around the Mississippi Highway Patrol where both Defendants worked at the time." *Id.* ¶ 15. And she says McLendon "distributed the video to an untold number of people without permission." *Id.* ¶ 17. Word of the video reached Doe's ex-husband, who told her "everyone was talking about it," and now Doe avoids going out in public. *Id.* ¶ 21.

Doe sued in March 2024, alleging that Defendants violated 15 U.S.C. § 6851 and committed various state-law torts.

## II. Standard

When deciding a Rule 12(b)(6) motion to dismiss, the "[C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But the Court will not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Watkins v. Allstate Prop. & Cas. Ins. Co.*, 90 F.4th 814, 817 (5th Cir. 2024) (quoting *King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022)). "Conclusory" means "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." *Black's Law Dict.* (11th ed. 2019), *quoted in Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## III. Discussion

**\*2** As part of the Violence Against Women Act Reauthorization of 2022, which took effect on October 1, 2022, Congress provided a civil action for the disclosure of persons' "intimate visual depictions" without their consent. *Doe v. T-Mobile USA, Inc.*, No. 4:23-CV-5166, 2024 WL 1705925, at \*3 (E.D. Wash. Apr. 19, 2024). After defining various terms, the statute says:

> Except as provided in paragraph (4), an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief as set forth in paragraph (3).

15 U.S.C. § 6851(b)(1)(A). Paragraph four excludes relief for, among other things, typical instances of being pictured in "commercial pornographic content," *id.* § 6851(b)(4), an exception McLendon argues in his motion.

### A. Defendant McLendon

McLendon styles his motion as invoking both Rule 12(b)(6) and Rule 12(b)(1), the latter governing dismissal for lack of subject-matter jurisdiction. But his only jurisdictional argument asserts that because "Plaintiff cannot plead all essential

elements of the only statutory cause of action she attempts to proceed with, there is no way she can meet her burden of establishing federal jurisdiction." McLendon Mem. [14] at 5. He then says that without a federal question, there can be no supplemental jurisdiction over Doe's state-law claims. *Id.* at 16–17.

McLendon offers no relevant authority suggesting that subject-matter jurisdiction should be decided after considering the merits of a Rule 12(b)(6) motion. Indeed, he notes earlier in his brief that Rule 12(b)(1) motions "must be considered by the court before any other challenge." *Id.* at 2 (quoting *Moran v. Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994)). Regardless, the Court finds that McLendon's six Rule 12(b)(6) arguments for dismissing these claims lack merit.


### 1. Whether Doe Plausibly Pleaded Intent

McLendon first says Doe failed to expressly plead that he knew she had not consented to having the video distributed or that he acted in reckless disregard of her consent. McLendon Mem. [14] at 3–4. Rule 9(b) allows "intent, knowledge, and other conditions of a person's mind [to] be alleged generally." "But 'generally' is a relative term"; the rule "merely excuses a party from pleading ... intent under an elevated pleading standard." *Iqbal,* 556 U.S. at 686. So, as noted, Doe was required to "raise a reasonable inference" that McLendon had the requisite mental state. *Iqbal,* 556 U.S. at 678.

Doe met that standard. According to her, she was so intoxicated during the filming of the encounter that she does not remember all of it. Compl. [1] ¶¶ 8–9. That creates a reasonable inference that someone watching the video might know she was inebriated. Doe also claims that she had never been with a female "nor had any interest in being with a female," *id.* ¶ 9, yet the video depicted her in that context and showed her face, *id.* ¶ 14. Doe also alleges that McLendon knew her, *id.* ¶ 17, and that she was a divorced mother, *id.* ¶ 21.

**\*3** The Complaint says enough to reasonably infer that McLendon, who knew Doe, knew she was a mother, that she had an ex-husband, and that such a video—which showed her face—would be embarrassing. Nothing in the Complaint suggests that Doe gave consent or that McLendon should have drawn that conclusion, yet she says he "distributed the video to an untold number of people *without permission.*" *Id.* ¶ 17 (emphasis added). Doe has plausibly pleaded that McLendon acted with at least reckless disregard for her rights. *Cf. United States v. Sims,* 11 F.4th 315, 322 (5th Cir. 2021) (noting jury may infer reckless disregard from circumstantial evidence under sex-trafficking statute).


### 2. Whether the Video Is Excepted from Section 6851

McLendon says Doe admits the video falls under the exception for commercial pornographic content found in § 6859(b)(4)(A). McLendon Mem. [14] at 5. Doe does allege that the video "constitutes 'commercial pornographic content' and/or an 'intimate visual depiction.' " Compl. [1] ¶ 24. The "and/or" saves her pleading. Under Federal Rule of Civil Procedure 8(d)(2), "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."


### 3. Whether McLendon Is Immune

McLendon claims immunity from liability under 47 U.S.C. § 230(c)(1) (Communications Decency Act). McLendon Mem. [14] at 5. That subsection says:

**(c) Protection for "Good Samaritan" blocking and screening of offensive material**

**(1) Treatment of publisher or speaker**

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided

by another information content provider.

**(2) Civil liability**

No provider or user of an interactive computer service shall be held liable on account of—

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c). McLendon thinks this means he

> is immune from liability under such enactment, 47 U.S.C. § 230(c)(1), when a third person (such as Defendant Williams) that created the information in question furnished it to the user under circumstances in which a reasonable person in the position of the user (such as McLendon) would conclude that the information was provided for publication on the internet or other interactive computer service.

McLendon Mem. [14] at 5–6 (citing *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003)).

McLendon relies heavily on the Ninth Circuit's *Batzel* opinion. But that court did not consider § 230(c) as applied to a claim under § 6851(b). Indeed, such cases are rare; this Court found only one—*Doe v. Spencer*, No. 1:23-CV-2, 2023 WL 4162671, at *5 (M.D. Tenn. June 23, 2023), *report and recommendation adopted*, 2023 WL 4568775 (M.D. Tenn. July 14, 2023), *and objections overruled*, 2024 WL 915554 (M.D. Tenn. Mar. 4, 2024). Under similar facts, the *Spencer* court flatly rejected the defendant's immunity argument in a § 6851 case, concluding that the "[d]efendant's alleged wrongful conduct [fell] well outside the scope of Section 230's protection." 2023 WL 4162671, at *5.

From § 230(c)'s text, it is not apparent that it would apply to a § 6851(b) claim. And before the Court is willing to say that it does, the parties will need to take deeper dives into that text. They will also need to address how § 230(c) could provide immunity for the very conduct Congress addressed when creating civil liability under § 6851(b)—sending intimate images without consent using means of interstate or foreign commerce like the internet. *See United States v. Shah*, 95 F.4th 328, 358 (5th Cir. 2024) (noting court's "caselaw is clear" that using internet is means or facility of interstate commerce).[1]

## 4. Whether Section 6851 Was Effective When McLendon Distributed the Video

**\*4** McLendon argues that Doe failed to sufficiently plead "time or place" as Rule 9(f) requires. McLendon Reply [25] at 6. As a result, he believes there is no way to tell whether his alleged conduct occurred after § 6851 took effect on October 1, 2022. *Id.*; *see also* McLendon Mem. [14] at 15–16. But Williams allegedly created the video in November 2022. Compl. [1] ¶ 8. So McLendon's alleged conduct necessarily occurred after October 2022.

## 5. Whether the Court Should Exercise Supplemental Jurisdiction

McLendon urges the Court to decline supplemental jurisdiction over Doe's state-law claims after dismissing her federal claim. *Id.* at 16–17. That argument is now moot.

### 6. Whether Doe Failed to Plead Facts as to State and Federal Claims

McLendon more generally argues that "[a]ll claims stated in the complaint are nothing more than blanket recitations of statutory or common law elements." McLendon Reply [25] at 8. Specifically, he believes "there is no allegation as to how, when, where, to whom or upon what platform it was that [he] supposedly distributed the offensive video." McLendon Mem. [14] at 4.

Doe goes well beyond the elements. She describes what was on the video and how it was made, Compl. [1] ¶¶ 9–10; states that she objected to its distributions, *id.* ¶¶ 10–11; alleges that it was distributed via email, *id.* ¶ 13; gives the dates that the video was made and when she learned that it had been distributed, *id.* ¶¶ 8, 12; describes where it was distributed (the Mississippi Highway Patrol), *id.* ¶ 15; states that McLendon distributed it, *id.* ¶ 22; and claims that news of the distribution was wide enough to reach her ex-husband who told her "everyone was talking about it," *id.* ¶ 21. In short, she provided " 'enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC,* 541 F.3d at 587.

For these reasons, McLendon's motion [13] is denied.

### B. Defendant Williams

Williams says Doe's allegations are not true, that they lack sufficient facts to state a claim, that Doe is attempting to intimidate and harass Williams, and so on. Williams Mem. [19], *passim.* She cites no legal authority to support her arguments, and, as already noted, the Court must assume that Doe's pleaded facts are true and view them in the light most favorable to her. *Martin K. Eby Constr. Co.,* 369 F.3d at 467. Even if Williams wanted to convert her motion to one for summary judgment, *see* Rule 12(d), she offered no record evidence to support her factual assertions as Rule 56(c) would require. In any event, the Court's reasoning for denying McLendon's motion is even more true for Williams when assuming—as the rule requires—that she admitted emailing the intimate video over Doe's objections. *See* Compl. [1] ¶¶ 11, 14.

### C. Plaintiff's Motion to Proceed Under Pseudonym

Jane Doe seeks permission to continue litigating this case under that pseudonym.[2] Defendants oppose the motion, arguing that Doe used her real name when she filed a complaint against Williams in state court seeking a temporary restraining order. *See* McLendon Resp. [15] at 2. McLendon attaches an exhibit [15-1] purporting to be a copy of the motion with Doe's name redacted.

**\*5** Federal Rule of Civil Procedure 17(a)(1) requires that a civil action "be prosecuted in the name of the real party in interest," and under Rule 10(a), the complaint must "name all the parties." "Public access to this information is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." *Doe v. Stegall,* 653 F.2d 180, 185 (5th Cir. 1981). But pseudonyms can be allowed when "prosecution of the suit compelled plaintiffs to disclose information of the utmost intimacy." *Id.*

The Court has examined the few § 6851 cases addressing this issue, and none denied the request to proceed under a pseudonym. Section 6851's very purpose is to protect against one's intimate matters being publicized, meaning that "revealing plaintiff's identity plainly will incur, and thus compound, the very harm [s]he already allegedly has suffered as a result of defendants' alleged disclosures." *Doe v. Willis,* No. 23-CV-2171, 2023 WL 6907100, at *2 (D. Colo. Sept. 22, 2023). *Accord Doe v. McCoy,* No. 1:23-CV-3169, 2024 WL 843908, at *9 (N.D. Ga. Feb. 28, 2024) (noting "VAWRA seeks to protect significant privacy interests"). And there is no evident public interest in knowing a § 6851 plaintiff's name. *Id.* at *9; *Willis,* 2023 WL 6907100, at *2.

Defendants cite no authority suggesting that these interests are nullified by a single state-court filing in a plaintiff's real name. Still, their argument would have some logical appeal if, as they say, "[t]he proverbial 'cat' is already 'out of the bag.' " McLendon Resp. [15] at 1. But we don't know that to be true. Defendants offer no evidence suggesting that Doe's identity has been publicly linked to this dispute. The Court also lacks information explaining why Doe's state-court attorneys (who don't represent her here) filed the petition under her real name or whether they made any efforts to protect her identity after that. Perhaps they sought leave to file anonymously and were denied. Perhaps it was filed under seal. Such facts could speak to the suggested waiver.

In any event, if Doe has been fortunate enough to avoid wide public notice thus far, then there is no reason to disturb that situation. The Court will therefore grant Doe's motion, for now. Depending on how the case proceeds, it may be necessary to revisit the issue.

IV. Conclusion

The Court has considered all arguments presented. Any not specifically addressed here would not change the outcome. The Court denies both McLendon's motion to dismiss [13] and Williams's motion to dismiss [18]. Doe's motion for leave to proceed under a pseudonym [20] is granted; her earlier motion [3] is moot.

**SO ORDERED AND ADJUDGED** this the 31st day of May, 2024.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2805642

## Footnotes

[1] Though Doe never mentions this, § 230(c)(1) is generally considered an affirmative defense. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023); *Force v. Facebook, Inc.*, 934 F.3d 53, 57 (2d Cir. 2019). And an affirmative defense cannot support a Rule 12(b)(6) motion unless the facts supporting it are evident from the complaint itself. *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020). Those facts are not evident here.

[2] This motion is in an odd procedural posture because Doe first sought this relief in an ex parte motion [3] but then refiled it [20] after the Court instructed her to. Defendants responded to the original motion but not the final, and Williams addressed the issue in the memorandum [19] she filed to support her own motion. *See* L.U. Civ. R. 7(b)(3). Regardless, all parties have been heard.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8435143
Only the Westlaw citation is currently available.
United States District Court, W.D. Michigan, Southern Division.

MAD MOBILE, INC., Plaintiff,
v.
MEIJER GREAT LAKES LIMITED PARTNERSHIP, Defendant.

Case No. 1:23-cv-1020
|
Signed October 6, 2023

**Attorneys and Law Firms**

Daniel J. Hatch, Butzel Long, Grand Rapids, MI, David Vogel, Cooley LLP, Reston, VA, John Paul Oleksiuk, Cooley LLP, New York, NY, Luke Thomas Cadigan, Michael J. McMahon, Cooley LLP, Boston, MA, Michael L. Gutierrez, Lee T. Silver, Butzel Long, Grand Rapids, MI, for Plaintiff.

Athena Diane Dalton, Brianne Straka, Daniel R. Lombard, Jonathan C. Bunge, Marc Kaplan, Terrence George, Quinn Emanuel Urquhart & Sullivan, LLP, Genevieve Carter, Chicago, IL, Perrin Rynders, Varnum Riddering Schmidt & Howlett LLP, Grand Rapids, MI, for Defendant.

## OPINION AND ORDER

ROBERT J. JONKER, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

**\*1** Lawsuits between contractors and customers are routine grist for the commercial litigation mill. When the contracts at issue are for software development and licensing, or other similar intellectual property, there must obviously be a mechanism to protect legitimate trade secrets from public disclosure. But that does not mean that all information about normal business negotiations, performance disputes, and product capability is subject to seal just because the business involved is software.

This case involves allegations of trade secret theft in the software market for retail checkout terminals and other point of sale devices. Mad Mobile Inc. initiated this civil action alleging breach of contract and misappropriation of trade secrets under federal and state law. Mad Mobile seeks preliminary injunctive relief here against Meijer Great Lakes Limited Partnership while it pursues its substantive claims in arbitration, (ECF No. 5), and it moves under 18 U.S.C. § 1836 and Local Rule 10.6 to seal certain portions of declarations and exhibits filed in support of the preliminary injunction motion, (ECF No. 8). Before obtaining the privilege of a sealed filing in a presumptively public litigation arena, a party must make the demanding showing of how a particular disclosure will lead to particular harm. Mad Mobile has not yet made that showing.

## LEGAL STANDARDS

Under W.D. Mich. LCivR 10.6, when a party seeks to file a brief or exhibit under seal, it must seek leave from the Court. As Local Rule 10.6(a) makes clear, "[t]o preserve the qualified, common-law presumption of public access to judicial files in civil cases, the filing of documents under seal should be the exception," limited to cases that involve information "that is truly proprietary or confidential." Documents may be sealed "only if authorized by statute or by the Court for good cause shown." W.D. Mich. LCivR 10.6(b).

"When a district court relies upon a document 'in determining the litigants' substantive rights, and in performing its adjudicatory function ... [t]he common law presumption of public access' attaches to the document." *Picard Chem, Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 690 (W.D. Mich. 1996) (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (alteration in original)). A court's decision to seal a record is governed by a balancing test that generally favors public availability. *See In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983) (holding that only the most compelling reasons justify nondisclosure of judicial records).

To determine whether the parties have overcome the presumption of access, the Court balances the public's interest against the parties' interest in confidentiality. *Picard*, 951 F. Supp. at 691 (citing *Matter of Continental*, 732 F.2d 1302, 1313 (7th Cir. 1984)). This "preference for public access is rooted in the public's First Amendment right to know about the administration of justice." *Id.* (quoting *in re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994)). Public access "helps safeguard 'the integrity, quality and respect in our judicial system' and permits the public to 'keep a watchful eye on the workings of public agencies.' " *Id.* (quoting *Orion*, 21 F.3d at 26). The mere desire to maintain the confidentiality of sensitive information is generally not enough to justify a seal. *See Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983) (The "natural desire of parties to shield prejudicial information contained in judicial records from competitors and the public" is insufficient to justify seal where public access would not reveal legitimate trade secrets). A particularized showing of serious harm is necessary. *See Tinman v. Blue Cross & Blue Shield of Michigan*, 176 F. Supp. 2d 743, 745-46 (citing *Waelde v. Merch, Sharp & Dohme*, 94 F.R.D. 27, 28 (E.D. Mich. 1981)).

**\*2** To overcome the presumption in favor of public access in the trade secrets context, the party requesting to seal documents must show 1) a compelling interest in sealing the records; 2) that the interest in sealing outweighs the public's interest in accessing the records; and 3) that the request is narrowly tailored. *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019). This stringent standard must be demonstrated "on a document-by-document, line-by-line" basis. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 308 (6th Cir. 2016). "[T]he existence of a trade secret will generally satisfy a party's burden of showing a compelling reason for sealing documents, but even if ... a district court finds that a trade secret exists, it must still determine whether public interest outweighs the moving party's interests in protecting their trade secret." *Kondash*, 767 F. App'x at 638.

## DISCUSSION

The Court has reviewed the materials proposed for sealing and finds that Mad Mobile has made an insufficient showing of good cause. The Court does not doubt that this case involves cutting edge and lucrative software development. But the information that may qualify for sealing is not that Mad Mobile believes it has a superior product and unique approach for the retail market, or that it has had success building software solutions that allow legacy systems to stay in place, or even the generic building blocks Mad Mobile uses to solve these problems. Mad Mobile has already made this kind of information public on its website and in YouTube fora to tout its success and attract new business opportunities. What may qualify for sealing are the bits and bytes details of exactly how Mad Mobile used its expertise for Meijer or some other specific customer. How Mad Mobile codes, rather than its general architectural approach, is potentially something to seal. But Mad Mobile has not made a convincing showing that what it seeks to seal here comes close to disclosure or anything else that poses a legitimate threat of serious competitive harm.

Mad Mobile supports its request for emergent relief with three declarations, most of which Mad Mobile seeks to file under seal.

But even a cursory review of the materials demonstrates that Mad Mobile has a long ways to go to justify the wholesale sealing it seeks. For example, the Declaration of Thomas Coppick is thirteen paragraphs, and Mad Mobile seeks to seal some or all of ten of those paragraphs. The information it seeks to seal includes basic biographical information about people involved in routine contractual negotiations. Some of the biographical information is readily available to anyone who may be interested in looking on broadly accessible services like LinkedIn. Most of the rest of the information Mad Mobile seeks to seal in the Coppick Declaration simply describes basic information about the number of people involved in certain business meetings, the roles of certain principal players at those meetings, and the declarant's personal assessment of motives and goals of some participants. There is nothing about that information that meets the good cause standard for sealing.

The second declaration is from Jack Kennedy, Mad Mobile's Executive Vice President of Platform Solutions. Mad Mobile seeks to seal some or all of sixty-two of the eighty paragraphs of this declaration. Some of the information Mad Mobile wants to seal simply describes general descriptions of how Mad Mobile viewed Meijer, both initially and as the relationship developed and ultimately soured, and basic contract information like when the companies signed their first agreement. That is not the kind of information normally subject to seal.

The Kennedy Declaration does include information that provides an overview of Mad Mobile's overall approach to its Customer Commerce Operating System and some details about the particular elements or building blocks that go into its design. Yet much of this information seems readily available on Mad Mobile's own website, and in a series of publicly available YouTube videos describing how and why Mad Mobile is better than other options for retailers and restaurants that want to elevate their digital performance. *See, e.g.*, Mad Mobile Home Page, https://madmobile.com/ (last visited Oct. 6, 2023)[1]; Amani Naeemullah, *Guide to Connective Commerce*, Mad Mobile (Apr. 27, 2023), https://madmobile.com/blog/guide-to-connected-commerce/; Mad Mobile, *An Inside Look at Mad Mobile's Retail Technology*, YouTube (Oct. 22, 2021), https://www.youtube.com/watch?v=6qk2tK4D4QE. Maybe a sophisticated competitor would learn something dramatically new and otherwise unavailable from these descriptions, but it is not readily apparent to the Court. There is nothing in the Kennedy Declaration that describes precisely how Mad Mobile built particular software solutions for specific situations for particular clients—whether Meijer or someone else—and there is no source code disclosure for anything Mad Mobile has developed. If there is a genuine risk of serious competitive harm to Mad Mobile in public disclosure of the Kennedy Declaration, Mad Mobile will have to make a more persuasive case to the Court to justify sealing, especially in light of all the information already in the public domain about these topics.

**\*3** The third declaration is from Thomas Lichtwerch, Mad Mobile's Vice President for Global Retail Sales. This declaration includes a general description of the competitive market in which Mad Mobile operates, and what other options its clients and target clients may have available. It also includes a description of Mad Mobile's relationship with Meijer and attaches fourteen exhibits, including the underlying transactional documents and legal correspondence regarding disputed issues. Mad Mobile seeks to seal all fourteen of the exhibits generally described in paragraphs 8, 10, 14, 18, 23, and 29 to 37 of the Declaration. Of the remaining twenty-three paragraphs, Mad Mobile seeks to seal some or all of about half of them. Yet, much of the factual material simply describes general business discussions and Mad Mobile's perceptions of goals and intentions of key participants. That is not information that is ordinarily subject to seal.

The transactional documents and other attachments present potentially different issues, particularly as to pricing information. But even here, there are some things that even on cursory review do not appear subject to seal. Exhibit 1, for example, is the Mad Mobile Services and Support Agreement effective April 19, 2019. It includes no pricing information. It includes key contract terms, including some directly at issue in the underlying dispute. And many of those terms appear similar to what Mad Mobile posts on its website as standard Operator POS Terms and Conditions, https://madmobile.com/products/cake/operator-pos-terms-and-conditions/ (last updated June 10, 2023).[2] The remaining exhibits involve correspondence about the brewing dispute and proposed resolutions. They do illuminate what is likely to be a key fight over source code, but they certainly do not reveal any actual code, or even critical coding decisions. Nor is it clear to the Court they disclose anything else that is properly subject to seal.

For all these reasons, the Court concludes that Mad Mobile has not made the showing necessary to overcome the strong presumption favoring public access to judicial records.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that the Motion to Seal, (ECF No. 8), is **DENIED** on the present record. For now, the Court will evaluate the motion for emergent relief, and any other issue presented by the parties, based only on the information on the public record.

The Court will make its decision based only the public record, and will not make the proposed sealed documents public at this time, so both parties can assess what additional information, if any, they believe is essential for the Court to have in considering the motions. If a party is satisfied with what is already public, so be it. Or if a party believes it can, upon further consideration, make additional information public that it once proposed for sealing, the party may supplement the record accordingly with public disclosures. A party that believes some information that it proposed for sealing is essential, and that there is a proper basis for sealing the Court has missed, may make that case for sealing again to the Court, focusing on a particularized showing sufficient to overcome the presumption of public access that demonstrates how disclosure of specific information would lead to specific and concrete competitive harm. The Court encourages the parties to consult on this and to prepare, if possible, a joint submission of exhibits for public filing, and a joint submission seeking and supporting any requests for sealing of any specific information.

**\*4 IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 8435143

## Footnotes

[1]   Mad Mobile's website contains a wealth of resources about its products and customers. The content accessible from the landing page includes detailed descriptions of Mad Mobile's products, a frequently-updated blog that explains industry trends and how Mad Mobile's products can streamline business operations in different industries, case studies naming specific customers and explaining how Mad Mobile's products improved their businesses, and an order form to schedule a free demonstration of Mad Mobile's products.

[2]   There is significantly more detailed information, including some pricing, in Exhibits 2, 3 and 4. It is not clear to the Court at this point how much, if any, will be essential to deciding the emergent relief issue—the only question for this Court—as opposed to contractual performance disputes at issue in the underlying arbitration. In any event, even this detailed information and backward-looking pricing is not automatically subject to seal without a proper and detailed showing of particularized harm, which Mad Mobile has not demonstrated.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 6684706
United States District Court, W.D. Michigan, Southern Division.

PERRIGO COMPANY and Subsidiaries, Plaintiff,
v.
UNITED STATES of America, Defendant.

Case No. 1:17-CV-737
|
Signed 12/06/2018

**Attorneys and Law Firms**

James Walker Johnson, Steptoe & Johnson LLP, Drew Alexander Cummings, Daniel Malcolm Sosna, Alex Edmund Sadler, John Benjamin Magee, Morgan Lewis & Bockius LLP, Washington, DC, Jason D. Dimopoulos, Thomas V. Linguanti, Morgan Lewis & Bockius LLP, Chicago, IL, William F. Colgin, Jr., Morgan Lewis & Bockius LLP, Palo Alto, CA, Edward J. Bardelli, Warner Norcross & Judd LLP, Grand Rapids, MI, for plaintiff.

Arie M. Rubenstein, James E. Weaver, Richard Jeremy Hagerman, Steven Dean, U.S. Department of Justice, Tax Division, Washington, DC, Ryan D. Cobb, U.S. Attorney, Grand Rapids, MI, for Defendant.

**OPINION AND ORDER**

ROBERT J. JONKER, CHIEF UNITED STATES DISTRICT JUDGE

**INTRODUCTION**

**\*1** This is a tax refund lawsuit. The Government denies that Plaintiff Perrigo Company is entitled to a refund and seeks the Court's assistance (via the issuance of a Letter Rogatory) in obtaining certain information from an arm's-length business partner of Perrigo in Israel. It says the requested information will lend support to its argument that Perrigo engaged in sham transactions with sham entities. The Court previously denied an earlier, and more sweeping, request. The Government has now trimmed back the number of witnesses it seeks to depose as well as the subject areas on which it seeks to question those witnesses. It also has pared back its document requests. It contends that the Rule 26 proportionality considerations, and all other relevant factors now weigh in favor of its more targeted request. (ECF No. 116). Perrigo opposes the motion, asserting that nothing in the calculus has changed to disturb the Court's previous decision. (ECF No. 120). The proposed Letter has been narrowed in focus, but the Court continues to believe that it will inevitably add time, expense, and complication to this case with little likelihood of generating probative material. Accordingly, the Court DENIES the motion.

**LEGAL STANDARDS AND DISCUSSION**

A letter rogatory is "the request by a domestic court to a foreign court to take evidence from a certain witness." *Intel Corp. v.*

*Advanced Micro Devices, Inc.*, 542 U.S. 241 247 n.1 (2004) (internal citation and quotation marks omitted). Courts have "inherent power to issue and respond to letters rogatory." *In re Letter Rogatory from Justice Court, Dist. of Montreal, Canada*, 523 F.2d 562, 564 (6th Cir. 1975). As the Court indicated in its earlier order, courts faced with a motion for issuance of such a letter often apply the proportionality considerations applicable to all discovery under FED. R. CIV. P. 26. *See also Naiad Maritime Co v. Pacific Gulf Shipping Co.*, No. 16-4006, 2017 A.M.C. 362, 366 (D. Md. Feb. 8, 2017) (collecting cases and stating that "United States courts reviewing applications for letters of request and letters rogatory routinely apply the discovery principles contained in Rule 26 of the Federal Rules of Civil Procedure").

Rule 26(b)(1) of the Federal Rules of Civil Procedure states in relevant part that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1).

After a review of the Government's renewed motion, the Court continues to believe the relevant factors weigh against even the more limited request. To be sure, there is a large dollar amount at issue. But both in the administrative audit process, and the litigation discovery process, the government has had broad access to Perrigo documents and witnesses, as well as other domestic third parties. It has also had some access to the foreign parties through the tax treaty. All this information combined should provide sufficient basis to defend Perrigo's claims, each of which requires Perrigo—not the government—to carry the burden of proof.

**\*2** In expanding discovery to request the assistance of foreign sources in Israel, the only certainty would be the burden of time and expense that would be added to this case and on the third-party Dexcel. To be sure a narrower request would likely reduce the burden on Dexcel, but not to the point where the burden is inconsequential. Moreover, even under the most optimistic timing scenarios, there is no way the information would be available before the dispositive motion deadline, just a few months away.

Equally important, it remains hard to see the prospect of much, if any, return on the investment of the time and expense spent to acquire the information. It's possible that Israel and Dexcel will not honor the request at all. Moreover, the requests in the modified letter are still largely duplicative of what has already been requested and produced by Perrigo, or requested and received from Dexcel under the tax treaty. Presumably the Government requested under the treaty what it thought was most necessary. And after receiving it, the agency declared the matter litigation ready on May 5, 2015. (See Gov't Answer, ECF No. 115, PageID.960). Even the agency's trial attorneys declared as recently as July that this case would be ready for trial in January of 2019—only a few weeks from now. (ECF No. 72, PageID.692). Moreover, to the extent that the Government desires to use the letters rogatory as a basis for letting this Court observe Israeli witnesses' credibility, the juice isn't worth the squeeze. Video is never as good as live testimony for evaluating credibility, and that is especially true with the added filter of translation between Hebrew and English. Finally, even though what Dexcel has to say might be probative of Dexcel's intent and state of mind, it's hard to see that providing much illumination on Perrigo's intent and state of mind. And in assessing the sham entity and transaction theories, Perrigo's intent is much more important than Dexcel's intent. For these reasons, the Rule 26 proportionality considerations and other factors still weigh against the government's renewed request.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that the Government's renewed Motion for Issuance of Letters Rogatory (ECF No. 116) is **DENIED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 6684706, 122 A.F.T.R.2d 2018-6861

**End of Document**                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 723606
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey,
Camden Vicinage.

Sara ROE, et al., Plaintiffs,
v.
PENNS GROVE-CARNEY'S POINT REGIONAL SCHOOL DISTRICT, et al., Defendants.

Civil No. 24-10827 (CPO)(EAP)
|
Signed March 5, 2025

**Attorneys and Law Firms**

Christina Vassiliou Harvey, Lomurro, Munson, Comer, Brown & Schottland, LLC, Freehold, NJ, for Plaintiffs.

Katherine Ellen Chrisman, Matthew J. Behr, Marshall Dennehey Warner Coleman & Goggin, P.C., Mount Laurel, NJ, for Defendants Penns Grove-Carney's Point Regional School District, Zenaida Cobain, Abner Mendoza, Anwar Golden, Jason Brice.

[ECF No. 3]

**MEMORANDUM ORDER**

ELIZABETH A. PASCAL, United States Magistrate Judge

**\*1** This matter having come before the Court by way of Plaintiff's Motion to Seal and to Proceed with Use of Pseudonyms, ECF No. 3; and Defendants having filed no opposition; and the Court deciding this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1; and for good cause shown, the Court finds the following:

**A. Factual Background**

1. According to the Complaint, Plaintiff Christine Roe and her siblings Michael, Gina, and Andrea Roe, were students at Defendant Penns Grove-Carney's Point Regional School District ("Penns Grove") in December 2022. ECF No. 1 (Compl.) ¶¶ 5-6. Plaintiffs Sara and Roland Roe are their parents. *Id.* ¶ 5.

2. Plaintiffs allege that two other students, Defendants Edward Doe and Liam Doe, gained access to an unoccupied classroom and forced Plaintiff Christine Roe to perform intimate sexual acts while recording her without consent or knowledge. *Id.* ¶¶ 34-36. The video was then broadcast over the internet, resulting in Christine Roe's mental breakdown and attempted suicide. *Id.* ¶¶ 38-41.

3. As a result of the video, other members of Christine Roe's family—Plaintiffs Sara Roe, Roland Roe, Michael Roe, Andrea

Roe, and Gina Roe—suffered psychological harm and were harassed by other students at Penns Grove. *Id.* ¶¶ 46-50.

4. Plaintiffs sought assistance from the Defendant employees of Penns Grove, but according to the Complaint, Defendants failed to take action to protect the family. *Id.* ¶ 51.

5. Plaintiffs allege that Defendants Abner Mendoza, Principal at Penns Grove; Anwar Golden, Assistant Principal at Penns Grove; and Jason Brice, Guidance Counselor at Penns Grove, began a campaign to harass Michael Roe, Christine Roe's brother, in retaliation for Plaintiffs' requests, and they failed to take action to protect the Roe children from further harassment and bullying. *Id.* ¶¶ 11, 13, 15, 52-53. These actions allegedly led to physical assaults of Michael Roe. *Id.* ¶ 54.

6. Additionally, according to Plaintiffs, Defendants Edward Doe and Liam Doe continued to subject the Roe family to social media harassment, physical abuse, and verbal harassment. *Id.* ¶ 55.

7. The Roes complained to teachers and administrators at Penns Grove to stop the harassment, but Defendants allegedly did nothing. *Id.* ¶ 57. The Complaint further alleges that Defendant Superintendent Zenaida Cobain was aware of the other Defendants' conduct but "did not appropriately respond." *Id.* ¶¶ 17, 58.

8. Although parents Sara and Roland Roe demanded accommodations for their children, Christine Roe, Michael Roe, Gina Roe, and Andrea Roe continued to be harassed and were unable to continue in public school. *Id.* ¶¶ 65-66.

9. Plaintiffs allege that under Superintendent Cobain's leadership, Penns Grove has "fostered a hostile learning environment towards persons of biracial background" and "persons of child sexual abuse." *Id.* ¶¶ 68-69.

10. On November 29, 2024, Plaintiffs filed a Complaint against Defendants Penns Grove, Zenaida Cobain, Abner Mendoza, Anwar Golden, Jason Brice, Edward Doe, Liam Doe, and various other Doe Defendants, alleging the following causes of action: (1) violation of 15 U.S.C. § 6851, civil action relating to disclosure of intimate images (Count Two),[i] *id.* ¶¶ 89-99; (2) sexual abuse/battery (Count Three), *id.* ¶¶ 100-102; (3) "extreme and outrageous conduct" that "shocked the conscious" (Count Four), *id.* ¶¶ 103-109; (4) negligence/gross negligence (Count Five), *id.* ¶¶ 110-14; (5) failure to monitor and supervise children (Count Six), *id.* ¶¶ 115-22; (6) gender/sex-based harassment (Count Seven), *id.* ¶¶ 123-41; (7) violation of the New Jersey Law Against Discrimination, 42 U.S.C. § 1983, Title IX, the New Jersey Constitution, and common law against harassment and bullying in a place of public accommodation (*i.e.*, a public school) (Count Eight), *id.* ¶¶ 142-45; (8) violation of the Equal Protection Clause of the Fourteenth Amendment (Count Nine), *id.* ¶¶ 146-52; (9) violation of 20 U.S.C. § 1681(a), Title IX, (Count Ten), *id.* ¶¶ 153-64; (10) violation of procedural and substantive rights guaranteed under N.J.S.A. 18A:46-1, *et seq.* and the New Jersey Department of Education's Special Education regulations at N.J.A.C. 6A:14-1.1, *et seq.* (Count Eleven), *id.* ¶¶ 165-73; and (11) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2), *id.* ¶¶ 174-80.

**\*2** 11. On December 2, 2024, Plaintiff moved for an order to seal the verification in support of the Complaint and proceed with the use of pseudonyms. *See* ECF No. 3. Defendants did not oppose the motion but "because a motion for leave to proceed under pseudonym intrudes on the public's right of access to judicial proceedings, the Court cannot grant the motion as unopposed without further analysis." *Doe v. Drexel Univ.*, No. 23-3555, 2023 WL 8373166, at \*1 (E.D. Pa. Dec. 4, 2023).

**B. Legal Standard**

12. " '[O]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public.' " *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quoting *Daubney v. Cooper*, 109 Eng. Rep. 438, 441 (K.B. 1829); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)). Federal Rule of Civil Procedure 10(a) encompasses that principal by "requir[ing] parties to a lawsuit to identify themselves in their respective pleadings." *Id.* at 408 (citing Fed. R. Civ. P. 10(a); *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992)). "[A] plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings.' " *Id.* (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000)).

13. Nonetheless, courts have recognized that "in exceptional cases," a party may proceed anonymously. *Id.* "Examples of areas where courts have allowed pseudonyms include cases involving 'abortion, birth control, transexuality, mental illness, welfare

rights of illegitimate children, AIDS, and homosexuality,' " *id.* at 408 (quoting *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990)), as well as "cases involving victims of sexual assault," *Doe v. Princeton Univ.*, No. 20-4352, 2020 WL 3962268, at *2 (D.N.J. July 13, 2020) (citations omitted).

14. The Third Circuit Court of Appeals has set forth a "non-exhaustive, multi-factor test" to be employed in determining whether a plaintiff's "reasonable fear of severe harm" merits an exception to " 'the public's common law right of access to judicial proceedings.' " *Doe v. Coll. of N.J.*, 997 F.3d 489, 495 (3d Cir. 2021) (quoting *Megless*, 654 F.3d at 408). The factors in favor of anonymity include:

> (1) The extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Coll. of N.J.*, 997 F.3d at 495 (quoting *Megless*, 654 F.3d at 409).

15. The factors advising against anonymity include:

> (1) The universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

**\*3** *Id.* (quoting *Megless*, 65 F.3d at 409).

16. Ultimately, "[t]he *Megless* factors require a fact-specific, case-by-case analysis." *Id.* "Decisions regarding whether to allow a party to proceed under a pseudonym are consigned to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Homesite Ins. Co. of the Midwest v. Ewideh*, No. 22-1664, 2023 WL 426923, at *2 (M.D. Pa. Jan. 26, 2023).

## C. Analysis

17. Applying the above standard, the Court finds that the *Megless* factors substantially weigh in favor of granting Plaintiff's Motion to Proceed Anonymously.

18. Turning initially to the factors advising in favor of anonymity, the Court must <u>first</u> consider the extent to which the identities of the Plaintiffs have been kept confidential. *Megless*, 654 F.3d at 409. Plaintiffs contend that they "have gone through great lengths to maintain confidentiality by filing the Complaint with pseudonyms to protect the identities of all minors involved in the action." ECF No. 3-1 (Pls.' Mem.) at 4. Nothing in the record before the Court suggests that Plaintiffs have ever publicly disclosed their identities in connection with this matter. As such, this factor weighs in favor of Plaintiffs' requested relief.

19. <u>Second</u>, Plaintiffs have established a reasonable fear of harm from the public disclosure of their names. Courts in the Third Circuit have repeatedly allowed victims of sexual assault to proceed under a pseudonym due to a reasonable fear of harm from

disclosure of their identities. *See, e.g.*, *Doe v. Phila.*, No. 23-0342, 2023 WL 4110064, at *3 (E.D. Pa. June 21, 2023) (holding that plaintiff's "fear of substantial public stigmatization and backlash ... given her detailed allegations of sexual assault at the hands of a law enforcement agent" weighed in favor of anonymity); *Doe v. Schuylkill Cnty. Courthouse*, No. 21-477, 2022 WL 1424983, at *8 (M.D. Pa. May 5, 2022) (finding that fear of stigmatization and ongoing embarrassment and humiliation is "a consideration which has been held to weigh in favor of anonymity for plaintiffs who have alleged they were sexually harassed or assaulted"); *Doe v. Lund's Fisheries, Inc.*, 2020 WL 6749072, at *2 (D.N.J. Nov. 17, 2020) (finding that plaintiff's status as an alleged victim of sexual assault demonstrates "substantial grounds to support his fear of public disclosure"); *Princeton Univ.*, 2020 WL 3962268, at *3 (granting motion to proceed under a pseudonym where plaintiff was alleged victim of sexual assault and noting that "victims of sexual assault have been deemed members of a vulnerable class worthy of protected status"); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (granting motion to proceed under pseudonym where plaintiff claimed to have been sexually assaulted by defendant state trooper).

20. Here, Plaintiffs have alleged that Christine Roe, a minor, was the victim of a sexual assault that was surreptitiously recorded. Compl. ¶¶ 34-37. The video was then broadcast over the internet, causing Christine Roe to have a mental breakdown and attempt suicide. *Id.* ¶¶ 38-41. After the broadcast, Christine Roe's family members, including her parents Sara and Roland Roe, and siblings, Michael, Gina, and Andrea Roe, were harassed by other students at Penns Grove High School. *Id.* ¶¶ 47-50, 65-66. Plaintiffs further allege that Defendants' campaign to harass Plaintiffs led to the physical assault of Michael Roe. *Id.* ¶ 54. Given the reasonable and well-founded fear of ongoing stigmatization, embarrassment, and humiliation to Christina Roe, her siblings, and her parents, anonymity is appropriate.

**\*4** 21. Third, the Court must consider the "magnitude of the public interest in maintaining the confidentiality of the litigant's identity[.]" *Megless*, 654 F.3d at 409 (quotation omitted). This factor supports anonymity if "other similarly situated litigants [would] be deterred from litigating claims that the public would like to have litigated[ ]" if they could not proceed pseudonymously. *Id.* There is a "public interest in preserving the courage to sue." *Del. Valley Aesthetics, PLLC v. Doe 1*, No. 20-456, 2021 WL 2681286, at *2 (E.D. Pa June 30, 2021); *see also Doe v. Rutgers*, No. 18-12952, 2019 WL 1967021, at *3 (D.N.J. Apr. 30, 2019) ("There is a recognized public interest in ensuring that victims of sexual assault can vindicate their claims and that the fear of public humiliation does not discourage these plaintiffs."); *Doe v. Oshrin*, 299 F.R.D. 100, 104 (D.N.J. May 28, 2014) (citing *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (finding that "the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights")).

22. According to the present Complaint, as a result of the broadcast of the surreptitiously recorded sexual assault, Christina Roe suffered mental breakdown, her parents and siblings were subject to harassment, and her brother Michael Roe was physically attacked. *Id.* ¶¶ 47-50, 54, 65-66. Absent an ability to proceed anonymously, other similarly-situated victims of sexual assault may be discouraged from pursuing lawsuits. Therefore, this factor also weighs in favor of anonymity.

23. Fourth, the Court must examine the public's interest, if any, in ascertaining Plaintiffs' identities. *See Megless*, 654 F.3d at 409 (quotation omitted). Plaintiffs here are private citizens litigating highly-sensitive issues. Although some of the Defendants—*i.e.*, the School District and its employees—may be public figures, the public's ability to monitor the litigation will remain unimpeded. Plaintiffs' Motion only seeks to (1) allow Plaintiffs to maintain confidentiality over their own identities, and (2) permit Plaintiffs to file the verification under seal. *See generally* Pls.' Mot. The remainder of the docket will remain public. As such, the use of a pseudonym will "not interfere with the public's right or ability to follow the proceedings." *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997).

24. Fifth, the Court must consider the "undesirability of an outcome adverse to the pseudonymous party and attributable to [the party's] refusal to pursue the case at the price of being publicly identified[.]" *Megless*, 654 F.3d at 409 (quotation omitted). Here, Plaintiffs have proffered that if their request to proceed anonymously is denied, "Plaintiffs will not be able to pursue their remedy in this forum because CHRISTINE ROE is a childhood sexual assault survivor who has legitimate concerns for her safety and mental well-being if the matter is public." Compl. ¶ 81. Giving credence to this allegation, the Court finds the fifth factor favors anonymity. *See Oshrin*, 299 F.R.D. at 104 (finding fifth *Megless* factor satisfied by a complaint's proffer that plaintiff's willingness to pursue her claims would be inhibited by denial of anonymity).

25. Finally, the last *Megless* factor in favor of anonymity asks, "whether the party seeking to sue pseudonymously has illegitimate ulterior motives." *Megless*, 654 F.3d at 409 (quotation omitted). The Complaint alleges that, "Plaintiffs do not have any illegitimate or ulterior motive to proceed confidentiality; their desire is consistent with Congress' recognition that sexual

abuse survivors [as set forth in 15 U.S.C. § 6851] should be able to litigate their claims of abuse confidentially." Compl. ¶ 82. As Plaintiffs have provided the Court with valid reasons in support of their request to proceed anonymously, and Defendants have put forth no allegations or evidence of any nefarious motives, this factor has no bearing on the Court's analysis.

**\*5** 26. Turning next to the *Megless* factors that weigh against anonymity, the Court finds that these factors "do not tip the balance" against Plaintiffs' Motion. *Rutgers*, 2019 WL 1967021, at \*4.

27. First, although there is a "universal public interest in access to the identities of litigants," *Megless*, 654 F.3d at 411, "this interest exists in some respect in all litigation and does not outweigh the strength of the factors in favor of Plaintiff's use of a pseudonym." *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 551 (D.N.J. July 14, 2006).

28. Second, the Court must consider "whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained[.]" *Megless*, 654 F.3d at 409 (quotation omitted). There is not. "[T]he subject matter of this litigation [sexual assault] is common ... [and] Plaintiffs [are] not [ ] public figure[s]," thus creating no heightened public interest. *Doe v. New Jersey*, No. 24-9531, 2024 WL 4880260, at \*4 (D.N.J. Nov. 25, 2024).

29. Finally, the Court notes that neither the Defendants, the public, nor the press have expressed opposition to Plaintiffs' Motion. Therefore, this factor has no bearing on the analysis.

30. Overall, the Court finds that the balance of the *Megless* factors weighs heavily in favor of allowing Plaintiffs to proceed through use of pseudonyms and sealing the verification of the Complaint. The delicate factual circumstances alleged in this case, combined with the lack of any particularly enhanced public interest in the litigants, outweigh the importance of fully open judicial proceedings. Therefore,

**IT IS** this **5th** day of **March 2025**,

**ORDERED** that Plaintiffs' Motion to Proceed by Pseudonym and to permit the filing of the verification under seal, ECF No. 3 is **GRANTED**.

**All Citations**

Slip Copy, 2025 WL 723606

**Footnotes**

1    Count One is a request for leave to proceed by way of pseudonym, which is not an independent cause of action. *Id.* ¶¶ 71-88.

2024 WL 4800083
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

John SMITH
v.
Jane DOE, et al.

Case No. 2:23-cv-05033-WLH-RAO
|
Filed September 9, 2024

**Attorneys and Law Firms**

Samantha Jaqueline Aceves, Alexander Maximilian Kargher, Andrew Hale Steinberg, Dean Bradley Solomon, Lara M. Kruska, Sinclair Braun Kargher LLP, Sherman Oaks, CA, for John Smith.

**Proceedings: (IN CHAMBERS) ORDER RE ORDER TO SHOW CAUSE WHY SANCTIONS AGAINST DEFENDANT JANE DOE SHOULD NOT ISSUE [49]**

WESLEY L. HSU, United States District Judge,

**\*1** The Court issued an Order to Show Cause in writing why sanctions against defendant Jane Doe should not issue for her "continued failure to comply with this Court's August 23, 2023, Order regarding Motion to Proceed Under Pseudonym." ("OSC," Docket No. 49). Defendant Jane Doe ("Defendant") responded to the Order to Show Cause. (Doe Decl., Docket No. 58). The Court hereby **ORDERS** that Defendant is sanctioned in the amount of $100.

## I. BACKGROUND

Plaintiff John Smith ("Plaintiff") filed a complaint against Defendant, his ex-wife, and Does 1–25, alleging a federal non-consensual disclosure of sexually explicit intimate images claim (15 U.S.C. § 6851), a parallel state law cause of action and related torts including invasion of privacy. (Compl., Docket No. 1). At the litigation's outset, Plaintiff filed a motion to proceed under pseudonym. (Mot., Docket No. 9). The Court granted the motion and ordered that Plaintiff and Defendant must proceed under the names John Smith and Jane Doe, respectively. ("Pseudonym Order," Docket No. 14 at 3–4 ("Because Defendant Jane Doe is Plaintiff's former spouse, were she not required to proceed in this action under a pseudonym, Plaintiff's identity would immediately become known to the public.")). In addition to requiring the use of pseudonyms for both named parties, the Court ordered that

All court decisions, orders, petition, and other documents, including motions and papers filed by the parties, *be worded so as to protect the name and other identifying characteristics of the Plaintiff and Defendants from public revelation*, including, but not limited to, the name of Plaintiff's company and the URLs of the websites on which Defendants shared the Video; and[;]

All declarations, evidence, or other documentation or submissions to the Court that cannot be reworded in accordance with the above and that contain *any identifying information or characteristics* about Plaintiff, Defendant, Plaintiff's business, or the websites where the disputed Video is or was posted *be redacted and/or filed under seal*, and that no such information is

disclosed in any public filing or record, or any attachment to any public filing or record.

(*Id.* at 5 (emphasis added)).

Despite the plain language of the Pseudonym Order, Defendant filed an answer and counterclaim with her full name, phone number, email address, and address—unredacted—on the public docket. The Court *sua sponte* sealed the counterclaim, ordered the *pro se* Defendant to "review the Order Regarding Motion to Proceed Under Pseudonym," and "directed...[Defendant] to re-file her answer and counterclaim by December 15, 2023, using pseudonyms for both parties as further explained in the [Pseudonym Order]." (Order, Docket No. 26). Defendant never filed the required redacted version of the answer and counterclaim.

Instead, on December 14, 2023, Defendant re-filed her answer and counterclaim—again with no redactions. (Answer, Docket No. 31). Defendant correctly used a pseudonym that second time, but she included her unredacted physical address, email address, and phone number on the public docket, as well as case numbers for state court actions involving Plaintiff and Defendant that could easily be used to identify both of them. (*Id.* at 1, 6).

**\*2** Defendant then "refus[ed] to meet-and-confer" with Plaintiffs' counsel in advance of the Federal Rule of Civil Procedure 26(f) scheduling conference (Steinberg Decl., Docket No 36 ¶ 7). The Court continued the scheduling conference to facilitate the meet-and-confer and reminded the parties that the federal rules require " 'attorneys of record and all unrepresented parties' " to "attempt[ ] in good faith to agree on the proposed discovery plan....' " (Order, Docket No. 38 (quoting Fed. R. Civ. P. 26(f)(2); *see also* Notice to Pro Se Litigants, Docket No. 40 ("Although Defendant is proceeding pro se, i.e., without legal representation, she nonetheless is required to comply with Court orders, the Local Rules, and the Federal Rules of Civil Procedure.")).

The morning of the scheduling conference on April 12, 2024, Defendant emailed the Court's clerk stating that she could not attend the mandatory scheduling conference because she had not known about it until recently. The Court nonetheless required Defendant's remote attendance, and at the scheduling conference, the Court expressed its concern that Defendant had been unaware of the mandatory proceeding. The Court also expressly warned Defendant that, if she does not file her answer and counterclaim in compliance with the Pseudonym Order, the Court may strike the answer or issue other sanctions. The Defendant acknowledged that she understood.

Defendant nevertheless filed another document that, although it used a pseudonym, once again improperly contained her unredacted address and phone number (Ex Parte Application, Docket No. 42 at 1). The Court issued an Order to Show Cause why sanctions should not issue against Defendant for her repeated non-compliance with the Pseudonym Order. (Order, Docket No. 49).

In response to the Order to Show Cause, Defendant wrote that she is "unable to afford an attorney to represent [her] in this matter," that the Pro Se Clinic had a long wait time that "delayed [her] ability to address the Court's Order" and that she apologized for her lack of "knowledge and understanding of the legal procedures and requirements." (Response, Docket No. 58 at 1–2). Defendant also, apparently undeterred by the Court's repeated orders and reminders, re-filed her answer and counterclaim with her address and phone number unredacted. (Answer, Docket No. 59).

## II. DISCUSSION

### A. Legal Standard

" '[A]ll litigants, including *pro ses*, have an obligation to comply with court orders, and failure to comply may result in sanctions....' " *Boyd v. Guilford*, EDCV 11-2071-JV-DT, 2014 WL 12966092, at *1 (C.D. Cal. May 5, 2014) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). "[D]istrict courts have 'inherent power to levy sanctions...for

willful disobedience of a court order.' " *Konarski v. City of Tuscon*, 738 Fed. App'x 468, 469 (9th Cir. 2018) (quoting *Fink v. Gomez*, 239 F.3d 989, 991–92 (9th Cir. 1001)) (affirming a district court's monetary sanctions of $400 against *pro se* parties). Sanctions are available under the court's inherent powers if the party exhibits "recklessness...combined with an additional factor such as frivolousness, harassment, or an improper purpose[ ]" that is "tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see also* L.R. 83–7 (explaining that the failure to file Local Rules may result in monetary sanctions "if the Court finds that the conduct was willful, grossly negligent, or reckless"); *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002) ("Non-compliance may be deemed willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control.") (internal quotations omitted).

**B. Analysis**

**\*3** Defendant's repeated non-compliance with the Pseudonym Order despite its clarity and absence of "legalese" and the Court's repeated admonitions to comply exhibits recklessness and raises the specter that Defendant's non-compliance is willful. *See Handwerker*, 211 F.R.D. at 209 ("Non-compliance may be deemed willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control."). Indeed, Defendant's most recent answer and counterclaims once again contains Defendant's address and phone number (Answer, Docket No. 59), identifying information that this Court has expressly ordered that she redact or file under seal. The answer and counterclaims are accordingly **STRICKEN** (Docket No. 59) for failure to comply with the Pseudonym Order, as the Court expressly warned would occur during the April 12, 2024, scheduling conference if Defendant again failed to follow this Court's orders.

The Court is sympathetic to Defendant's inability to afford counsel for this matter, (Response, Docket No. 58 at 1–2), but it does not take a lawyer to do exactly as this Court has directed in plain terms multiple times—that Defendant must, in addition to using a pseudonym, "redact[ ]" in the answer and counterclaim "identifying information about Defendant[,]" "namely [her] address and case numbers related to other court actions between Plaintiff and Defendant." (Order, Docket No. 32; *see also* Pseudonym Order, Docket No. 14 at 5 (requiring all parties to use pseudonyms, redactions, or sealing to protect from "public revelation" "the name and other identifying characteristics of the Plaintiff and Defendant...")). Defendant has repeatedly failed to do so, (*see* Answer, Docket No. 24 (containing Defendant's full name, address, and case numbers of other state court actions between Plaintiff and Defendant); Answer, Docket No. 31 (containing Defendant's unredacted address and case numbers of other state court actions between Plaintiff and Defendant); Answer, Docket No. 59 (containing Defendant's address)), even after she expressly acknowledged in open court at the April 12, 2024, scheduling conference that she understood the need to comply with the Pseudonym Order or else risk sanctions. Defendant's continued disregard for the Court's straightforward orders to keep private information that could identify either her or Plaintiff reflects recklessness and an apparent intent to file on the public docket information that could potentially identify Defendant's ex-husband—like her address, name, and court cases between them. *See Fink*, 239 F.3d at 994 (providing that sanctions are warranted, pursuant to the Court's inherent power, upon a finding of recklessness...combined with an additional factor such as frivolousness, harassment, or an improper purpose[ ]" that is "tantamount to bad faith").

The Court finds that sanctions in the amount of $100.00 are appropriate to compel Defendant's compliance with the Pseudonym Order. That Defendant proceeds in this action *pro se* is not dispositive. *See Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) ("The district court is not at liberty to exempt automatically...[pro se parties]" from sanctions.) Again, the Court is aware of Defendant's statement that she is unable to afford counsel, but the Court observes that Defendant is not litigating this action *in forma pauperis.* The Court imposes only what is necessary to compel Defendant's compliance with the Pseudonym Order when she files the answer and counterclaim because the Court's many verbal and written orders have fallen on deaf ears, and Defendant's non-compliance with the rules has caused this case to linger on the docket since June 24, 2023, without even an operative answer on file.

### III. CONCLUSION

Defendant, due to her repeated failure to follow court orders, is **ORDERED** to make payable $100.00 to the Clerk of the Court for the Central District of California within thirty days of the filing of this Order. Defendant must also file, within fourteen days of this order, a response to the First Amended Complaint that complies with the Pseudonym Order. The Court expressly warns Defendant that her failure to comply with this Order will result in the Court striking her forthcoming answer and directing the clerk to enter default against her.

**\*4 IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4800083

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1189759
Only the Westlaw citation is currently available.
United States District Court, W.D. Michigan, Southern Division.

STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
John DOE Subscriber Assigned IP Address 68.60.169.181, Defendant.

Case No. 1:24-cv-1327
|
Signed April 8, 2025

**Attorneys and Law Firms**

Joel Alexander Bernier, Boroja Bernier & Associates PLLC, Shelby Township, MI, for Plaintiff.

**ORDER**

ROBERT J. JONKER, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is plaintiff's motion for leave to file unredacted versions of plaintiff's first amended complaint, proposed summons and return of service under seal. (ECF No. 8). A document filed with the Court becomes a judicial record. *Pansy v. Stroudsburg*, 23, F.3d 772, 781 (3d Cir. 1994). "When a district court relies upon a document 'in determining the litigants' substantive rights, and in performing its adjudicatory function ... [t]he common law presumption of public access' attaches to the document." *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 690 (W.D. Mich. 1996) (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (alteration in original)). A court's decision to seal a record is governed by a balancing test that generally favors public availability. *See* In re *Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983) (holding that only the most compelling reasons justify nondisclosure of judicial records). To determine whether the parties have overcome the presumption of access, the Court balances the public's interest against the claimed interest in confidentiality. *Picard*, 951 F. Supp. at 691 (citing *Matter of Continental*, 732 F.2d 1302, 1313 (7th Cir. 1984)). The "preference for public access is rooted in the public's first amendment right to know about the administration of justice." Id. (quoting *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994)). Public access "helps safeguard 'the integrity, quality and respect in our judicial system' and permits the public to 'keep a watchful eye on the workings of public agencies.' " *Id.* (quoting *Orion*, 21 F.3d at 26).

Plaintiff filed a First Amended Complaint that redacts certain personally identifying information of the defendant. (ECF No. 7). In the instant motion it states that the identity of the defendant is known to Plaintiff, but that to avoid embarrassment, it requests leave of Court to provide personally identifying information of the defendant under seal. (ECF No. 8). The Court is not persuaded that the exacting standards for filings under seal are met. Litigation is a public matter, and transparency of proceedings is presumptively appropriate. *See, e.g.*, FED. R. CIV. P. 10(a) (requiring that a complaint state the names of all parties); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). Simply being named in a lawsuit does not warrant anonymity. Virtually every case includes allegations that one party or another may find problematic or embarrassing. The remedy is not to keep identities secret until the matter is adjudicated, but to litigate the case on the merits. Here, the Court does not find good cause to keep the identity of Defendant John Doe off the record.[1]

**\*2 ACCORDINGLY, IT IS ORDERED**D that Plaintiff's motion for leave to file unredacted versions of plaintiff's first

amended complaint, proposed summons and return of service under seal (ECF No. 8) is **DENIED**.

**All Citations**

Slip Copy, 2025 WL 1189759

**Footnotes**

1    The Court notes that this issue is a recurring one and that its approach here is consistent with how it has handled these cases in the past. *See, e.g.*, Order, *Malibu Media, LLC v. Doe*, Case No. 1:14-cv-258 (W.D. Mich. May 15, 2014), ECF No. 13; Order Denying Defendant's Motion to Quash Subpoena, *Malibu Media, LLC v. Doe*, Case No. 1:12-cv-621 (W.D. Mich. Aug. 9, 2013), ECF No. 14; Order, *Malibu Media, LLC v. Doe*, Case No. 1:12-cv-621 (W.D. Mich. Oct. 18, 2012), ECF No. 13.

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4796621
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

T.K., Plaintiff,
v.
K.N., Defendant.

23 CV 5441 (ARR)(LB)
|
Signed June 26, 2024

**Attorneys and Law Firms**

Daniel Szalkiewicz, Daniel Szalkiewicz & Associates, P.C., New York, NY, for Plaintiff.

Oscar Michelen, Cuomo LLC, Mineola, NY, for Defendant.

**ORDER**

BLOOM, United States Magistrate Judge:

**\*1** Plaintiff brought this action pursuant to 15 U.S.C. § 6851, a federal privacy law regarding disclosure of intimate images, as well as New York's nonconsensual pornography statute, N.Y. C.L.S. Civ. R. § 52-b. Plaintiff alleged that defendant captured intimate images of her without her consent and distributed them to individuals in plaintiff's community. The Court granted plaintiff leave to proceed anonymously, and the parties quickly reached a settlement in Court-annexed mediation. The parties have filed a stipulation discontinuing this matter and the case is closed. However, with plaintiff's consent, defendant seeks an Order "sealing the docket and complaint in this action and/or [an Order] allowing defendant to proceed anonymously." ECF No. 21 at 4. For the reasons set forth below, the motion to seal is denied, but defendant's motion to proceed anonymously is granted.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, a Louisiana resident, alleged that she met defendant, a New York resident, on an online chat website while visiting New York in December 2021. ECF No. 1 ¶¶ 1-2, 13-14. Plaintiff continued to communicate with defendant after she returned home, and their conversations became sexual. Id. ¶ 5. Plaintiff and defendant communicated via FaceTime, and plaintiff removed her clothing during several of their video calls. Id.; ECF No. 2-2 ¶ 5.

Defendant took screenshots of plaintiff during these calls without her knowledge. ECF No. 1 ¶ 35. When plaintiff attempted to cut ties with defendant, he sent her the intimate screenshots he had taken and threatened to send them to her family members. Id. ¶ 6. After plaintiff told defendant that his threats made her suicidal, defendant agreed to delete the intimate images and sent plaintiff a screen recording of him doing so. Id. ¶ 8. However, a year later, defendant sent one of the intimate images to plaintiff's cousin's fiancé, and five months after that, to a teenage girl on an online chat website. Id. ¶ 9-10. The teenage girl was a friend of plaintiff's family. ECF No. 2-2 ¶ 18. Plaintiff is clearly identifiable in the images, and defendant informed both

third parties that plaintiff was the individual depicted. ECF No. 1 ¶ 50. Plaintiff alleged that defendant sent these images "for the sole purpose of harming [plaintiff's] standing in the Palestinian community and interfering with her relationship with her family and husband." Id. ¶ 71.

Plaintiff brought this action under a pseudonym and moved for leave to proceed anonymously on July 18, 2023. ECF Nos. 1, 2. The Court provisionally granted plaintiff's request, directed plaintiff to serve defendant with the summons and complaint, and ordered defendant to respond to plaintiff's motion to proceed anonymously as well as to the complaint. See ECF Order dated July 25, 2023. Defendant answered the complaint and did not object to plaintiff proceeding anonymously. ECF Nos. 11, 12. The Court granted plaintiff's motion to proceed anonymously on September 28, 2023. ECF No. 13. The Court held the initial conference in October 2023 and referred the case to Court-annexed mediation. See ECF Order dated October 19, 2023. On April 1, 2024, the parties reported reaching a settlement in principle. ECF No. 16. The Court directed the parties to file a stipulation discontinuing this matter by April 12, 2024.

**\*2** On April 4, 2024, the parties moved to seal the entire docket upon filing the stipulation of discontinuance. ECF No. 17. The Court denied the request and directed the parties to move for more narrowly tailored relief, such as moving to seal the complaint for parties' eyes only, by April 30, 2024.[1] See ECF Order dated April 16, 2024.

On May 2, 2024, the parties moved to have the "entire docket marked 'for parties' eyes only' and to amend the caption to only show the initials of the defendant." ECF No. 18. The Court denied the request because it again sought to seal the entire docket. Moreover, the parties' two-page letter did not provide a factual or legal basis for the requested relief, nor did it address the Second Circuit's standards for sealing or permitting a party to proceed anonymously. In the Order denying relief, the parties were directed that any new motion must be filed by June 3, 2024 and must set forth a basis for such relief consistent with this Circuit's precedent.[2]

The parties filed the instant motion on May 22, 2024. ECF No. 19. Defendant also moves to file an affidavit in support of the instant motion under seal. ECF No. 21 at 4. The parties filed the stipulation discontinuing this action on June 7, 2024. ECF No. 22. The Court so-ordered the stipulation on June 10, 2024 and the case was closed.

## DISCUSSION

### I. Legal standard

The public has a right to access judicial documents under both the common law and the First Amendment. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 121 (2d Cir. 2006). This presumption of public access to judicial documents is "based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." Id. at 119 (quoting United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995)).

Courts employ a three-step analysis in reviewing a request to seal a document under the common law presumption of access. Mirlis v. Greer, 952 F.3d 51, 59 (2d Cir. 2020) (citing Lugosh, 435 F. 3d at 119-20). The Court first determines whether the document sought to be sealed "is a judicial document ... to which the presumption of public access attaches," and if it is, the Court must "determine the weight of the presumption of access to that document." Id. (internal quotation marks omitted). The Court must then "identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." Id. "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997).

The Second Circuit has articulated two approaches for determining whether the public also has a First Amendment right to access a judicial document: (1) the "experience and logic" approach, which looks to whether the documents "have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the

particular process in question"; and (2) "the extent to which the judicial documents are derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." Lugosch, 435 F.3d 110 at 120 (internal quotations and citations omitted). If the Court finds that the public has a qualified First Amendment right to access a judicial document, it may seal the document if it makes "specific, on the record findings ... that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (citing In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)).

## II. Sealing

**\*3** This is the parties' third sealing request. The parties' first two motions sought to seal the entire docket. The Court denied both requests because sealing an entire case is a drastic measure reached only as a "last resort," such as "when sealing is 'required by statute or rule or justified by a showing of extraordinary circumstances and the absence of narrower feasible and effective alternatives[.]' " Doe v. Berg, No. 15-CV-9787, 2016 WL 11597923, at *1 (S.D.N.Y. Feb. 10, 2016) (quoting In re Platinum & Palladium Commodities Litig., 828 F. Supp. 2d 602, 603-04 (S.D.N.Y. 2011) and Century Indem. Co. v. Equitas Ins. Ltd., No. 11-CV-1034, 2011 WL 4526672, at *2 (S.D.N.Y. Sept. 27, 2011)). As sealing a docket triggers First Amendment scrutiny, the Court must make "specific, rigorous findings that sealing the entire case is 'necessary to preserve higher values' and 'narrowly tailored' to protect this interest." Next Caller Inc. v. Martire, 368 F. Supp. 3d 663, 667 (S.D.N.Y. 2019) (quoting Newsday LLC v. County of Nassau, 730 F.3d 156, 165 (2d Cir. 2013)). While the parties raised compelling privacy concerns,[3] they presented neither extraordinary circumstances nor the absence of narrower alternatives.

In denying the parties' first two requests, the Court noted that the parties failed to clearly state the relief sought. The instant motion suffers from the same lack of clarity. While the notice of motion seeks an Order sealing the complaint, ECF No. 19, the memorandum of law seeks an Order "sealing the docket and complaint in this action and/or allowing defendant to proceed anonymously." ECF No. 21 at 4. The parties oscillate, with no discernable logic, between requesting sealing the complaint and sealing the entire docket. Compare "Point I," ECF No. 21 at 4-5 (arguing that the Lugosch factors warrant sealing the complaint) with "Point II," id. at 7 (arguing that if the Court does not seal the docket, defendant should be allowed to proceed anonymously); see also id. at 6 (stating that "the docket and/or complaint should be sealed"). These requests are not interchangeable. To the extent that the parties again seek to seal the docket, the request is denied for the reasons set forth in the Court's April 16 and May 6, 2024 Orders. The instant motion presents no additional information that warrants sealing the entire docket.

The request to seal the complaint is also denied. A complaint is a judicial document that is subject to a strong presumption of public access under both the common law and the First Amendment. Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 139-143 (2d Cir. 2016). "The fact that a suit is ultimately settled without a judgment on the merits does not impair the 'judicial record' status of pleadings." Id. at 140. Nor does it weaken the presumption of public access. See id. at 140-143 (explaining that a strong presumption of public access attaches to a complaint in an action resolved by settlement). Although the parties emphasize that their sealing request is made on consent, their agreement does not change the Court's analysis. "The parties cannot control by private agreement the public's access to judicial proceedings." Next Caller, 368 F. Supp. 3d at 667.

The parties contend that their privacy concerns weigh against disclosure, but they do not show how sealing the complaint mitigates their concerns. The parties primarily contend that because the complaint contains defendant's unique name, members of the parties' tight-knit community[4] may trace the events in the complaint back to plaintiff, undermining her anonymity in this action. For example, the parties contend—purportedly in support of sealing—that "due to the tight-knit nature of the community the parties are part of, [ ] exposing defendant's name could lead back to identifying the plaintiff." ECF No. 21 at 5. But the parties employ this exact reasoning in support of their request to allow defendant to proceed anonymously: "[I]f the complaint is findable online due to defendant's name being attached to it, it is foreseeable that other members of plaintiff's community may become aware of the allegations and may be able to divine her involvement." Id. at 9.

**\*4** The parties do not contend that the complaint or any of its contents—other than defendant's name—pose risks to plaintiff's anonymity. Plaintiff "joins in this request to seal the complaint and docket and for anonymity in the alternative as she and her counsel feel it reduces the risk of these events being traced back to her," but plaintiff does not state how sealing the complaint is more effective at reducing this risk than removing defendant's full name from the pleadings. Id. at 10. As such, the parties

do not establish that sealing the complaint is necessary to protect their privacy interests. Those interests may be addressed by more narrowly tailored relief and are outweighed by the strong presumption of public access to the complaint.

### III. Defendant's request to proceed anonymously
The Federal Rules of Civil Procedure require that pleadings name all the parties. Fed. R. Civ. P. 10(a). This requirement "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 188-189 (2d Cir. 2008). "[P]seudonyms are the exception and not the rule." United States v. Pilcher, 950 F.3d 39, 45 (2d Cir. 2020); see also Rapp v. Fowler, 537 F. Supp. 3d 521, 526 (S.D.N.Y. 2011) ("Federal court proceedings and records presumptively are public absent a showing of exceptional circumstances.").

To determine whether a party should be allowed to proceed anonymously, courts must balance the party's "interest in anonymity" against "both (a) the public interest in disclosure and (b) the potential prejudice to [the opposing party]." Sealed Plaintiff, 537 F.3d at 186-187. The Second Circuit has set forth a non-exhaustive list of ten factors relevant to this determination:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

Id. at 189-190 (quotation marks and citations omitted). "District courts have discretion to grant an exception to Rule 10(a) only where the litigant seeking to proceed anonymously has a substantial privacy interest that outweighs any prejudice to the opposing party and 'the customary and constitutionally embedded presumption of openness in judicial proceedings.' " Rapp, 537 F. Supp. 3d 521 at 526-27 (quoting Sealed Plaintiff, 537 F.3d at 189). Courts need not consider all ten factors or "use any particular formation," as long as the Court "balance[s] the interests at stake in reaching its conclusion." Sealed Plaintiff, 537 F.3d at 191 n.4.

**\*5** The Sealed Plaintiff factors weigh in favor of permitting defendant to proceed anonymously here. As both parties seek defendant's anonymity, there is no prejudice to an opposing party. Moreover, the parties have identified privacy interests that outweigh the presumption of public access. This case involves sensitive, personal matters. Plaintiff brought this case to vindicate a privacy right pursuant to Section 1309 of the Violence Against Women Reauthorization Act of 2022, 15 U.S.C. § 6851, the "very purpose" of which is to "protect against one's intimate matters being publicized." Doe Williams v. Williams, No. 24-CV-165, 2024 WL 2805642, at \*5 (S.D. Miss. May 31, 2024). Although the statute only explicitly authorizes the preservation of plaintiff's anonymity, 15 U.S.C. § 6851(b)(3)(B), and plaintiff has already been granted leave to proceed anonymously, the parties argue that defendant's anonymity is necessary to ensure that the allegations are not traced back to plaintiff given the parties' "tight-knit community." Plaintiff's own request to proceed anonymously alleged that news of defendant's conduct subjected her to physical abuse from her husband's family and that fear of news of the events spreading further within her community led her to contemplate suicide. ECF No. 2-2 ¶¶ 10, 22. As such, identifying defendant poses a risk of further harm to plaintiff.

Defendant also states that he continues to suffer "mental harm by virtue of his name being attached to the complaint" because he is a young man "just starting out to establish a career," and that a Google search of his "unique" name brings up this action as a top result. ECF No. 21 at 9-10. Although defendant provides no other evidence of harm to his reputation, under the circumstances of this case, the Court finds that "the chance he would suffer reputational harm is significant." Doe v. Doe, No. 20-CV-5329, 2020 WL 6900002, at *3 (E.D.N.Y. Nov. 24, 2020) (granting defendant leave to proceed anonymously due to, *inter alia*, risk of reputational harm where defendant was "accused of meeting plaintiff through a website that caters to potential 'sugar dadd[ies],' " paying plaintiff for sex, transmitting sexually transmitted diseases to her, and sexually assaulting her). Plaintiff's allegations that defendant captured intimate images of her without her knowledge or consent and then distributed those images to third parties, including a teenage girl, "carry with them the clear potential for reputational harm." Id. (noting that Courts have recognized the "obvious reputational harm to a defendant who is accused of downloading pornography").

This action is between private parties who are not public figures, and thus the public's interest in the litigation is not furthered by disclosing defendant's identity. See id. ("[T]here is no special or heightened interest in the identities of parties who are not public figures."). Finally, although defendant's name has already appeared on the docket, this case has settled at an early stage in litigation and defendant's name has not "otherwise been associated with these allegations in the public media, as far as the court is aware." Id. As such, the Court finds that both plaintiff and defendant's privacy interests outweigh the public's interest in disclosure of defendant's identity, and defendant's motion to proceed anonymously is granted.[5]

## CONCLUSION

The two young people involved in this action both want to put this incident behind them. Nonetheless, this case was filed in federal Court and is subject to the presumption of public access to judicial proceedings. The parties' privacy concerns, while sympathetic, are insufficient to warrant sealing of the docket and the complaint. Defendant's anonymity accomplishes the parties' goal of ensuring that the "docket and complaint cannot be located by friends, families, and employers." ECF No. 21 at 12.

The Clerk of Court is respectfully directed to amend the caption as set forth above and to redact defendant's name to only his initials from the text of the docket entries in this action and from the Court's September 13, 2023 Order at ECF No. 13.

**\*6** Defendant's full name also appears within numerous documents filed by the parties in this action. See, e.g., ECF Nos. 1, 2, 5, 7, 9. By July 12, 2024, the parties shall redact defendant's name from their filings wherever his name appears, and shall email the redacted versions of the filings to my chambers at Bloom_Chambers@nyed.uscourts.gov. Once the redacted documents are received, I direct the Clerk of Court to seal the original filings containing defendant's name and to publicly file the redacted versions.

SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 4796621

## Footnotes

When the parties did not file the stipulation of discontinuance by the April 12, 2024 deadline, the Court ordered the parties to file the stipulation by April 30, 2024.

2  As the parties had again not filed the stipulation of discontinuance, the Court directed them to do so by this date.

3  Specifically, the parties allege that "defendant is a young adult just starting his career as an engineer," and a Google search of his "unique and identifiable name" "pulls up only items referring to this action." ECF No. 17 at 2. Moreover, although plaintiff has proceeded anonymously, ECF No. 13, the parties assert that "entirely sealing the docket protects plaintiff from anyone ascertaining her identity if rumors of this matter have circulated within [the parties'] tight-knit community." Id.

4  The parties do not allege any further detail about this community in the instant motion. However, in her complaint, plaintiff alleges that she lives in a "sizeable but tightknit Palestinian community." ECF No. 1 ¶ 56.

5  Defendant's request to file an affidavit in support of his motion to proceed anonymously is denied as unnecessary. ECF No. 21 at 4.

---

**End of Document**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.